UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **FAIRVIEW HOSPITAL**<br>29 Lewis Avenue<br>Great Barrington, Massachusetts 01061-1230 | : <br> : <br> : <br> : |
| **MOUNT AUBURN HOSPITAL**<br>330 Mount Auburn Street<br>Cambridge, Massachusetts 01842-2138 | : Case No:<br> : <br> : <br> : |
| **TUFTS-NEW ENGLAND MEDICAL CENTER**<br>750 Washington Street<br>Boston, Massachusetts  02111 | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : <br> : |
| **MICHAEL O. LEAVITT, Secretary of the United States Department of Health and Human Services**<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | : <br> : <br> : <br> : <br> : |
| Defendant. | : |

---

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, state the following by way of complaint against Michael O. Leavitt, Secretary of the Department of Health and Human Services ("the Secretary"):

## NATURE OF THE CASE

1. This action arises from the Secretary's failure to reopen certain of Plaintiffs' cost reports, reclassify payments made by Plaintiffs under the Massachusetts Uncompensated Care Pool as reimbursable costs, and to make such payments as called for by the reclassification, either directly or through the Secretary's intermediary. These payments are due and owing under the Medicare statute. Plaintiffs bring this action for mandamus to compel the Secretary to perform his non-discretionary duty to reopen Plaintiffs' cost reports in order to recalculate and issue those payments.

## JURISDICTION

2. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq. (the "Medicare statute"). The United States District Court for the District of Columbia has jurisdiction in this matter pursuant to 28 U.S.C. §1361 because (i) the plaintiffs have exhausted all available remedies related to this issue within the meaning of the Medicare statute (by either filing the appropriate requests for reopening and/or appeals or because such remedies are either unavailable as a matter of law or futile); and (ii) the Defendant has a clear, non-discretionary duty to act in this case.

## VENUE

3. Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## THE PARTIES

4. Plaintiffs consist of the following hospitals, all of which furnish inpatient and outpatient hospital services to, inter alia, patients entitled to benefits under the Medicare Program:

(a)     Fairview Hospital, a Medicare Provider located at 29 Lewis Avenue, Great Barrington, Massachusetts 01061-1230, assigned provider number 22-0038;

(b)     Mount Auburn Hospital, a Medicare Provider located at 330 Mount Auburn Street, Cambridge, Massachusetts 01842-2138, assigned provider number 22-0002; and,

(c)     Tufts-New England Medical Center, a Medicare Provider located at 750 Washington Street, Boston, Massachusetts 02111, assigned provider number 22-0116.

## FACTS

A.     **Background Facts: Medicare Reimbursement In General**

5.     Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65.

6.     Among the benefits provided under Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis.  42 U.S.C. § 1395f(b).

7.     In 1983, Medicare began reimbursing hospitals using the prospective payments system ("PPS").  42 U.S.C. § 1395www(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

8.	The Secretary (or one or more of his predecessors, hereinafter collectively referred to simply as "the Secretary") has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS").

9.	The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.

10.	In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. §§ 413.20(b), 413.24(f).

11.	The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

12.	A provider dissatisfied with its intermediary's determination may, in certain circumstances, file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination. 42 U.S.C. § 1395oo(a).

13.	In addition to filing appeals, providers may, in certain circumstances, obtain relief through an intermediary's reopening of its cost report, without the involvement of the PRRB. There are three types of re-openings set forth in the regulations.

4

14. Under the first type of reopening, a dissatisfied provider may file a reopening request with the intermediary, asking the intermediary to reopen and revise a settled cost report within three years of the date that the determination was issued. 42 C.F.R. § 405.1885(a). Jurisdiction for reopening a decision under 42 C.F.R. §405.1885(a) rests with the administrative body that rendered the last determination or decision. 42 C.F.R. § 405.1885(c).

15. The second type of reopening is mandatory and occurs when an intermediary's determination is required to be reopened under 42 C.F.R. § 405.1885(b) because CMS, within the three-year period in which reopenings are permitted, notifies the intermediary that the initial determination or settlement was inconsistent with applicable law. The version of 42 C.F.R. §405.1885(b) in effect at all times referenced in this complaint stated that an intermediary's decision "shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services. . . ." See 67 Fed. Reg. 50096 (August 1, 2002).[1]

16. The third type of reopening is also mandatory, and requires that "an intermediary's determination "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." 42 C.F.R. 405.1885(d).

---

[1] All citations to 42 C.F.R. § 405.1885 in this complaint, unless otherwise noted, refer to the version of the regulation that was in effect prior to August 1, 2002 and which applies to the claims in this complaint.

B.     **Reimbursable Tax Payments Under the Medicare Program**

17.    The Medicare statute requires intermediaries to reimburse providers for the reasonable and necessary cost of providing services to Medicare beneficiaries:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . . .

42 U.S.C. § 1395x(v)(1)(A).

18.    The Medicare regulations amplify the Medicare statute, stating that reasonable costs include those costs that are "appropriate and helpful in developing and maintaining the operation of patient care facilities" and that are "common and accepted occurrences in the field of the Provider's activities:"

> (a) All payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries. Reasonable cost includes all necessary and proper costs . . . .
>
> * * *
>
> (b)(2) Necessary and proper costs are costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs that are common and accepted occurrences in the field of the Provider's activities . . . .

42 C.F.R. § 413.9.

19.    The Provider Reimbursement Manual, in accordance with the foregoing principles, contains a general rule stating that all taxes levied by the states upon providers are allowable costs:

> § 2122.1 General Rule
>
> The general rule is that taxes assessed against the provider, in accordance with the levying enactments of the several States and lower levels of government and for which the provider is liable for payment, are allowable costs. Tax expense should not include fines and penalties.

Provider Reimbursement Manual § 2122.1.

C.   **The Massachusetts Uncompensated Care Pool**

20.   The Massachusetts Uncompensated Care Pool (the "UCP") provides access to health care for low income uninsured and underinsured residents of Massachusetts.

21.   The UCP is funded, in part, through an assessment (the "UCP Assessment") against each hospital's private sector charges. Mass. Gen. Laws Ann. Ch. 118G, § 18(e) (West 2004).

22.   The UCP Assessment against the hospital is equal to the product of 1) the ratio of the hospital's private sector charges to all acute hospitals' private sector charges; and 2) the private sector liability to the UCP as determined by law less certain surcharges. Mass. Gen. Laws Ann. Ch. 118G, § 18(e) (West 2004).

23.   Each hospital's total UCP Assessment for a fiscal year is setoff against the UCP's liability to the hospital for uncompensated care during the same period, resulting in either a net liability to the UCP or a net distribution from the UCP.

24.   Thus, the UCP charges the hospital's collective private sector revenue to pay for the hospital's collective burden of uncompensated care, resulting in a net transfer of revenue from those hospitals that provide less uncompensated care (as a proportion to the hospitals' total patient service charges) to those that provide more.

25.   The Secretary, CMS, and/or the intermediary, from 1985 until 2003, took the position that the UCP Assessment was not an allowable cost. Massachusetts Hospitals were strictly forbidden from claiming payments under the UCP.

26. By way of correspondence dated March 18, 2003, CMS completely reversed its prior position, conceding that the UCP Assessment was an allowable cost. A copy of the March 18, 2003 correspondence is attached hereto as Exhibit "A."

27. This is a correct statement of the law because the UCP Assessment is a tax on hospitals which, in accordance with the Medicare statute, is a necessary and proper expense incurred by the hospital for which it should be reimbursed.

28. Plaintiffs' intermediary failed to include the UCP assessment as an allowable cost on Plaintiffs' NPRs for cost report years 1985 through 2001.

29. Furthermore, CMS failed to instruct Plaintiffs' intermediary to reopen cost report years 1985 through 2001 for the purpose of including the UCP assessment as an allowable cost.

30. Because the UCP assessment was not included as an allowable cost for cost report years 1985 through 2001, Plaintiffs have been under-reimbursed.

## COUNT I

31. Plaintiffs incorporate by reference paragraphs 1-30 herein.

32. The Secretary's failure to treat the UCP Assessment payments as an allowable cost during the foregoing periods violates the Medicare statute. The reasonable cost of Medicare services shall be "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." Provider Reimbursement Manual § 2122.1. The classification of such costs as allowable is mandatory and non-discretionary on the part of the Secretary and CMS.

33. The Secretary, CMS, and the intermediary had an affirmative, non-discretionary duty to (i) correctly reimburse Plaintiffs upon the issuance of the initial

8

NPRs, (ii) reopen and revise all determinations and hearing decisions, including but not limited to all NPRs and any amended and/or revised NPRs irrespective of whether Plaintiffs requested reopening, and (iii) thereafter issue payment to Plaintiffs reflecting the reimbursement owed by the intermediary for each of the affected years.

34. As set forth above, the intermediary violated the Medicare statute by issuing initial NPRs and/or corrected NPRs to Plaintiffs that failed to classify the UCP Assessment as an allowable cost and failed to reimburse Plaintiffs for payments under the UCP.

35. Plaintiffs are entitled to mandamus on a number of separate and independent grounds, including but not limited to those which are detailed in the following paragraphs and also alluded to above.

36. First, the Secretary, CMS, and the intermediary have a clear statutory duty to reopen cost report years at issue and reimburse Plaintiffs because the UCP Assessment payments were necessary and proper costs under the Medicare statute and should have, but were not, classified by the Secretary, CMS, and/or the intermediary as allowable. Plaintiffs are therefore entitled to relief under mandamus.

37. Second, the Secretary, CMS and the intermediary have a clear duty to reopen the cost report years at issue and reimburse Plaintiffs under 42 C.F.R. § 405.1885(d) because the Secretary, CMS, and/or the intermediary unlawfully and wrongfully classified the UCP Assessment payments as non-allowable costs and, upon information and belief, passively and/or actively misled Plaintiffs as to whether they were allowable. This is an additional and independent ground upon which Plaintiffs are entitled to relief under mandamus.

38.     Third, the Secretary and CMS wrongfully delayed giving notice that the intermediary's prior interpretation of the law was incorrect, resulting in the retrospective, three year window for reopening prescribed by 42 C.F.R. § 405.1885(b) being too narrow to cover the cost report periods for which the intermediary should have reimbursed Plaintiffs for the UCP Assessment. Thus, to the extent Plaintiffs' administrative remedies were curtailed under the reopening regulations, it was a result of matters not reasonably within their control. This is an additional and independent ground upon which Plaintiffs are entitled to relief under mandamus.

39.     Fourth, Plaintiffs have no remedy available to them, other than mandamus, to obtain reimbursement for payments which they made under the UCP.

**WHEREFORE**, Plaintiffs request that the Court enter an order and issue a writ of mandamus:

(i)     directing the Secretary and/or its intermediary to reopen Plaintiffs' cost reports covering the time periods referenced in Plaintiffs' complaint and to reclassify the payments made under the UCP as allowable costs and pay Plaintiffs the additional amounts determined through the reopening process, together with an award of both pre-judgment and post-judgment interest on the additional amounts determined throughout the reopening process;

(ii)    stating that this Court retains jurisdiction in this matter until the Secretary and/or the intermediary have completed the reopening process, up to and including issuing revised NPRs where applicable;

(iii)    requiring the Secretary to submit for the Court's prior approval any further instructions provided to the intermediary with regard to implementing this Court's ruling;

(iv)    awarding Plaintiffs attorney's fees and costs, as permitted by law; and

(v)    awarding such other monetary and equitable relief as this Court deems just and appropriate or is necessary to effectuate any aspect of the Court's award.

Respectfully submitted,

*Jacqueline E. Bennett*

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for the Plaintiffs

Of Counsel:

Murray J. Klein
**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ  08540
(609) 987-0050

Dated:  May 26, 2005