# Exhibit E

PRRB 04/20/00 2000-D47, St. Joseph Hospital, St. Paul, Minnesota

ADMR(PRRB) 90-D61, Florida Indigent Tax Assessments Group Appeal

---

# PRRB 04/20/00 2000-D47 ST. JOSEPH HOSPITAL ST. PAUL, MINNESOTA

PRRB 04/20/00 2000-D47 ST. JOSEPH HOSPITAL ST. PAUL, MINNESOTA

PROVIDER REIMBURSEMENT REVIEW BOARD HEARING DECISION

2000-D 47

PROVIDER--St. Joseph Hospital St. Paul, Minnesota Provider No. 24-0063 vs.
INTERMEDIARY--Blue Cross and Blue Shield Association/Blue Cross and Blue Shield of
Minnesota

DATE OF HEARING--August 18, 1999

Cost Reporting Period Ended--August 31, 1993

CASE NO. 96-0644

*[handwritten: MCT is allowable – ADMR at guess   didn't overturn   2000-D 47- St. Joseph's   48 – Bethesda Lutheran   49 – Devine Redeemer]*

Issue:

Was the Intermediary's adjustment to disallow the Minnesota Care Tax correct?

Statement of Case and Procedural History:

St. Joseph Hospital ("Provider") is a 336-bed nonprofit urban health facility located in St. Paul,
Minnesota and is part of the HealthEast chain of health care facilities. For the fiscal year ended
August 31, 1993, the Provider incurred $598,695 of MinnesotaCare Tax ("MCT"), which was
included in the Administrative and General ("A&G") cost center. This cost was included in the filed
Medicare cost report for Program reimbursement. The Intermediary excluded all MCT expense from
allowable costs. This resulted in a reduction in Medicare reimbursement of approximately $13,000.

All health care providers in Minnesota, including this provider, are subject to an annual legislated tax
assessment by the state of Minnesota. There are no available exemptions to this tax levy. This tax
money is collected by the state and becomes part of the general fund of the state of Minnesota. This
state-mandated obligated tax is described by the following selected excerpts from the MinnesotaCare
Tax Booklet, which contains instructions for calculation and payment of the MinnesotaCare Tax:[1]

[1]See Provider Exhibit P-11.

1. The MinnesotaCare Tax is a tax on payments received by hospitals and surgery centers for

---

providing health care services to patients. (p. 3). Beginning in 1994, health care providers--other than hospitals and surgery centers--must pay the MinnesotaCare Tax on the receipts from health care services they provide to individuals. (p. 2).

2. The funds raised by this tax are used to help provide health insurance to Minnesotans who do not have it and to reform Minnesota's health care system. (p. 3).

3. The tax is paid on a calendar-year basis, with monthly payments of estimated tax. The tax for the year is determined on an annual return. (p. 3). If you do not have the funds to pay your tax, there is a penalty for late filing of your return and another penalty for late payment of your tax. Also, interest must be paid on the amount of tax and penalty. (p. 34).

The Provider appealed this adjustment to the Provider Reimbursement Review Board ("Board"). The Provider's filing meets the jurisdictional requirements of 42 C.F.R. §§ 405.1835 - .1841. The Provider was represented by Mr. Mitchell A. Dzwonek of Certus Corporation. The Intermediary was represented by Bernard M. Talbert, Esquire, of Blue Cross and Blue Shield Association.

Provider's Contentions:

The Provider contends that the MCT issue hinges on three points.

1. It is an administrative and general cost of doing hospital business in the state of Minnesota.

2. Taxes are directly addressed in Program regulations and these taxes are allowable.

3. Treatment of comparable taxes indicates that the MCT should be allowable.

The Provider contends that the MCT is a specific liability of the hospital. Failure to pay the liability on a systematic ongoing basis would cause irreparable harm to the going concern nature of the hospital. Therefore, payment of this tax obligation enables the hospital to continue operations and provide services for all patients and all payor groups. Because the tax benefits the institution as a whole, irrespective of payor group, the Provider recognizes the MCT expense as a general service cost and includes it in A&G in the general ledger and in the Medicare cost report. This recognition results in the MCT cost being allocated to all supported hospital departments in the cost report.

The Provider argues that the MCT is an annual legislated tax assessment by the state of Minnesota. This tax assessment is applied to all health care facilities based on a methodology that is predetermined by the state using a constant rate and a consistent base for obtaining the tax from all related entities. The facility pays this tax on an ongoing basis. What is important to the state is: (1) the total amount of money it needs to finance the ongoing indigent program and (2) to ensure that a consistent methodology of obtaining the money from the related entities is in place. As long as the methodology is consistent, the allocation of the total assessment among all the parties is impartial. In this singular case the tax rate is applied to a hospital revenue base that is net of Medicare and Medicaid revenue. If the state chose to do so, the revenue base could be total revenue, it could be Medicare and Medicaid revenue only, it could be Medicaid revenue and private revenue, or it could be patient days if that is what the state felt was an equitable way to obtain the necessary funds from all facilities. The base used to allocate the assessment is a historical convenience and as such it is malleable at the whim of the state. Therefore, simply to say that the MCT expense is not allowable

The Provider notes that the Intermediary believes that because the Medicare and Medicaid revenue was excluded from the computation of the tax, the resultant tax should not be allowed for Medicare reimbursement purposes since it relates only to non-Program patient revenue and is therefore a non-Program expense. What the Intermediary is proposing to do is to "direct cost" an item out of allowable reimbursable expense because apparently in their view there was no benefit to the beneficiaries. There have been previous instances in which similar attempts to direct-cost selected items by a provider, such as administrative costs of the cost report, or by an intermediary, such as malpractice insurance. These attempts have been found contrary to the spirit of the Program. In both instances, eventually whether preparing a cost report or incurring malpractice insurance expense, the direct allocation methodology was reversed and the associated cost, which was of general benefit to the facility, was included in allowable A&G cost.

The Provider notes that the Intermediary reads the Minnesota tax law to identify a clear state intent not to burden the Medicare Program with the cost of raising funds for the health care access fund. If the state does not want to burden the Medicare Program with such a cost, there was no need to impose a tax upon the facilities. They might have imposed some other form of tax upon, say, the general population in the form of a sales tax. Providers, however, are dealing with the Medicare cost report. Therefore, the laws of the United States, the Medicare Regulations promulgated by HCFA, and the Program instructions should be the primary controlling framework in which to settle questions of law as they relate to Medicare reimbursement. If these statutes are complied with, there should be no need to seek state legislative intent. Therefore, the MCT expense should be examined strictly in light of the appropriate federal Medicare related statutes.

The Provider notes that the Intermediary believes that the MCT should be disallowed because the collected MCT funds are used to provide health care insurance programs to Minnesotans who do not have it and to reform Minnesota's health care system. In the case of Minnesota, the money that was collected from the MCT went to the state, where, being a sovereign entity, it had the right to dispose of the funds as it deemed proper within the context of state mandates. What is of concern is that the tax was properly levied, and it was an obligation imposed upon the facility. How the state manages the funds is irrelevant.

**Intermediary's Contentions:**

The Intermediary contends that the MCT dispute hinges on three points:

1. The calculation of the MCT liability for the Provider on a hospital revenue base that specifically excludes Medicare and Medicaid payer revenue components.

2. Deference to State legislative intent not to burden the Medicare Program with the cost of raising funds for the health care access implicit in the MCT.

3. The use of the funds collected.

The Intermediary contends that it made the audit adjustment to delete the MCT because it is based on patient revenue and is not consistent among payor types. The regulatory basis for this denial was the general Program principle of reasonable cost § 1861(v)(1)(A) of the Social Security Act which, among other things, states that:

041

because the Medicare and Medicaid Program revenue was not used in some base calculation is improper. There is no relationship of the tax to an individual payor group whether they are Medicare, Medicaid or private. The tax assessment is an obligation of the facility rather than an obligation of an individual beneficiary or payor group.

The Provider further argues that this tax is an obligation of the facility. This tax is a specific cost of doing business in the state of Minnesota. If this tax is not paid, the facility would suffer severe repercussions. It could possibly be closed for the failure to pay the MCT and not be able to provide patient care to any payor group.

The Provider contends that malpractice insurance is another instance of a general service cost that is incurred for the benefit of the institution even though claims may arise from different payor groups or outside entities. Malpractice insurance expense is based on a combination of premiums paid and losses incurred. The losses and the premiums could be for different payor groups and yet the cost is allowed and reimbursed through the cost report mechanism to the Medicare Program. If malpractice insurance is deemed an acceptable cost for Medicare cost report reimbursement, the MCT should also be allowable because it is comparable in nature and scope.

The Provider contends that the general principle of reasonable cost, § 1861(v)(1)(A) of the Social Security Act, should be viewed in concert with the specific Medicare Program instructions regarding the allowability of the claimed tax expense. This broad reasonable cost principle does not directly address the issue of allowability of various taxes. Taxes are addressed in other specific regulatory citations. The Provider believes that the Program tax citations, Provider Reimbursement Manual, HCFA Pub. 15-1 ("HCFA Pub 15-1") §§ 2122.1 and 2122.2 are specific and governing in this instance. When viewed in light of those program instructions, the MCT is an allowable cost of hospital business under the Program.

The Provider notes that whenever exemptions to taxes are legally available, a provider is expected to take advantage of them. If a provider does not take advantage of available exemptions, the expenses incurred for such taxes are not recognized as allowable costs under Medicare. In this case, the Provider was directly liable for the State-mandated tax, and no exemptions were available. Generally, all hospitals in the state were subject to the same tax based upon the same rate and calculated on essentially the same base. Therefore, this tax was applied on a broad and uniform basis for all affected facilities.

The Provider observes that the MCT is not unique to Minnesota and has been implemented in various governmental units across the country. There should be a consistent treatment of same or similar types of tax expense regardless of geographical location. A review of Board decisions (and the HCFA Administrator's affirmation) with respect to this similar type of provider-specific tax seems to indicate that the tax is an allowable operating expense under the Program. In the Florida Group Appeal--Indigent Care Tax v. Blue Cross and Blue Shield Association and Blue Cross and Blue Shield of Florida, Inc., Dec. Nos. 90-D61 and 90-D62, September 20, 1990, Medicare & Medicaid Guide ("CCH") ¶¶ 38934 & 38935. (Florida Group), affirmed by HCFA, the Board recognized the allowability of a similar tax as an operating expense and reimbursable under the Program. This tax was another instance of a provider specific tax that was applied on a uniform rate across a broad spectrum of providers. While the rate and the base differ between states, the overall philosophy and concept are identical. Therefore, the previous Board and HCFA actions support the allowability of the MCT as an allowable expense.

The Medicare Medicaid Library Disc 2  IHS Health Information  www.ihshealth.com  1-800-525-5539

[T]he reasonable cost of any services shall be the cost actually incurred, ... in order that, under the methods of determining costs, the necessary cost of efficiently delivering covered services to individuals covered by the insurance programs established by this title will not be borne by individuals not so covered, and the costs with respect to the individuals not so covered will not be borne by such insurance programs.

Id.

The determination of reasonable cost of services must be based on cost related to the care of Medicare beneficiaries. Reasonable cost includes all necessary and proper expenses incurred in furnishing services, such as administrative costs, maintenance costs, and premium payments for employee health and pension plans. It includes both direct and indirect costs and normal standby costs.

The Intermediary observes that the state of Minnesota imposes an annual tax assessment on all health care providers in Minnesota. Per the Minnesota Revenue Statutes, a 2% tax on a hospital's gross revenues is imposed. Specifically exempt from the revenue base are payments received from the Medicare Program and the Medical Assistance Program. The Provider performs a calculation monthly to determine that month's liability which is subsequently remitted to the state. Also, an annual tax return is mandated for each provider. The Intermediary reads the Minnesota tax law to identify a clear state intent not to burden the Medicare Program with the cost of raising funds for the health care access fund.

## Citation of Law, Regulations & Program Instructions:

1. Law--Title XVIII of the Social Security Act:

   § 1861(v)(1)(A)      --Reasonable Cost

2. Regulations--42 C.F.R.:

   §§ 405.1835 - .1841--Board Jurisdiction

   § 413.9              --Cost Related to Patient Care

3. HCFA Rulings:

   91-1                 --Provider Reimbursement--Cost
                         Apportionment--Adjustment to Hospital--Specific
                         Portion of PPS Rates

4. Program Instructions--Provider Reimbursement Manual, Part I (HCFA
   Pub. 15-1):

   § 2122.1             --Taxes: General Rule

   § 2122.2             --Taxes Not Allowable as Costs

4. Cases:

   Florida Group Appeal--Indigent Care Tax v. Blue Cross and Blue Shield
   Association and Blue Cross and Blue Shield of Florida, Inc., PRRB Dec.
   Nos. 90-D61 and 90-D62, September 20, 1990, Medicare & Medicaid Guide
   (CCH) ¶¶ 38934 & 38935

The Medicare Medicaid Library Disc 2  IHS Health Information  www.ihshealth.com  1-800-525-5539

043

Findings of Fact, Conclusions of Law and Discussion:

The Board, after considering the law, regulations, program instructions, facts, parties' contentions and evidence finds and concludes that the MCT is an allowable cost. The Board finds that this is a tax whose legislative intent was to help providers by creating a pool of revenue to pay for indigents. It is uniformly applied to all providers. It is a cost of doing business, i.e., an ordinary and necessary business expense. It is also subject to severe sanctions if not paid. The Board notes that the calculation of the tax was based on non-Medicare and Medicaid revenue. However, the calculation in and of itself is not relevant. What is relevant is the amount of the tax paid and whether it meets the statutory, regulatory and program instruction requirements.

The tax meets the statute and regulatory requirements of § 1861(v)(1)(A) of the Social Security Act and 42 C.F.R. § 413.9, respectively. The Intermediary misapplies the statute. There is nothing unreasonable about this tax. It is a proper and necessary expense which is related to patient care. Further, the MCT meets the requirement of HCFA Pub. 15-1 § 2122.1. It is a tax that was enacted by a state government (Minnesota) for which the Provider was liable. It also meets the requirements of HCFA Pub. 15-1 §2122.2 which lists various taxes that are not allowable. The MCT is not a specifically listed tax. Further, the nature of the MCT is such that it does not meet the type of taxes listed in the nonallowable cost section. Those taxes are essentially based on income or are collected for special assessments that are capital in nature.

The Board finds that the Provider properly classified the MCT as an A&G expense. Since the tax has an impact on the entire operations of the hospital, it is appropriate to include it in an expense pool which is distributed to all operations of the facility. Further, the MCT is analogous to malpractice insurance expense which HCFA ruled via Ruling 91-1 was an A&G cost. Previous to that ruling, HCFA had attempted to directly assign malpractice insurance costs to Medicare beneficiaries based on a provider's actual Medicare loss experience. The ruling corrected this mistreatment of the malpractice costs.

Decision and Order:

The MCT is an allowable cost under Medicare law, regulations and program instructions. The Intermediary's adjustment is reversed.

Board Members Participating:

Irvin W. Kues
Henry C. Wessman, Esq.
Martin W. Hoover, Jr. Esq.
Charles R. Barker

For The Board

APR 20 2000

Irvin W. Kues
Chairman

The Medicare Medicaid Library Disc 2 IHS Health Information www.ihshealth.com 1-800-525-5539

## ADMR(PRRB) 11/20/90 90-D61 FLORIDA GROUP APPEAL-INDIGENT TAX ASSESSMENTS GROUP APPEAL

*ADMR upholds PRRB 90-D61 + D62*
*Allowing Florida's Indigent Care Tax*
*"FICT"*

Health Care Financing Administration
Decision of the Administrator

In the Case of:
ADMR(PRRB) 11/20/90 90-D61 FLORIDA GROUP APPEAL-INDIGENT TAX
ASSESSMENTS GROUP APPEAL

VS.

BLUE CROSS AND BLUE SHIELD ASSOCIATION/BLUE CROSS AND BLUE SHIELD OF
FLORIDA AND MUTUAL OF OMAHA,
INTERMEDIARY

Claim for:
Provider Cost Reimbursement Determination of Reasonable Costs for Cost
Reporting period(s) Ending, Various 1985

Review of: PRRB Decision No. 90-D61
Dated: September 20, 1990

This case is before the Administrator, for review of the Provider Reimbursement Review Board's (PRRB) decision. The review is during the 60- day period in Section 1878(f)(1) of the Social Security Act, as amended (42 USC 1395oo). The parties were notified of the Administrator's intent to review the Board's decision. Comments were received from the Intermediary, the Bureau of policy Development (BPD) and the Provider. Accordingly, this case is now before the Administrator for final agency review.

ISSUE

The issue is whether the Intermediary properly determined that the assessment was prospective and, accordingly, the assessment was properly the cost of the fiscal year in which the assessment was certified for collection. [1] The State of Florida passed legislation imposing an indigent care tax assessment on all Florida hospitals.[2]

[1] The Florida Hospital Cost Containment Board certified the amount for collection which is then reported to the Florida Department of Health and Human Services for collection in equal amounts beginning the first day of the third quarter after a hospital's prior fiscal year.

The Medicare Medicaid Library Disc 2 IHS Health Information www.ihshealth.com 1-800-525-5539.

Case 1:05-cv-01065-RWR    Document 12-3 SEAL    Filed 09/07/2005    Page 9 of 13

[3] As Section 2305 of the Manual does not apply in this case, the Administrator considers the Board's further comment on that Manual section dicta and not here in adopted by the Administrator.

THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES

Date: 11/20/90                    J .Michael Hudson
                                  Deputy Administrator
                                  Health Care Financing Administration

EXHIBIT 2





MUTUAL of OMAHA INSURANCE COMPANY
Medicare Area
655 Winding Brook Dr.
Glastonbury, CT 06033
t 860 659 4300 f 860 659 8065
mutualmedicare.com
A CMS Contracted Intermediary

October 1, 2002

<u>Notice of Reopening</u>

Darlene Rodowitz
Berkshire Health Systems, Inc.
725 North Street
Pittsfield, MA 01201

RE:    Fairview Hospital
        Provider Number: 22-0038
        FYE: 9/30/97
        Reopening Control No.: 02-02968

Dear Ms Rodowitz:

This is notice of our intent to reopen the cost report referenced above in accordance with the Code of Federal Regulations, Title 42, Chapter IV, Section 405.1885. The Notice of Program Reimbursement was dated September 21, 1999; therefore, this notice is within the three-year period allowed.

We intend to review the following area:

1.    Massachusetts Uncompensated Care Pool Costs

Should you have any questions regarding this letter, please feel free to call me at (860)-659-4300, ext. 239.

Sincerely,

Jeffrey M. Grabowski
Senior Field Auditor
Mutual of Omaha
Medicare Audit and Reimbursement

CC:    Sandy Hoffman, Lead Data Technician (Dbase Coordinator)
        File

        Reopening Code: A

W/P REVIEWED
BY: _____ DATE: _____





Mutual of Omaha Insurance Company
Medicare Area
655 Winding Brook Dr.
Glastonbury, CT 06033
t 860 659 4300 f 860 659 8065
mutualmedicare.com
A CMS Contracted Intermediary

October 1, 2002

<u>Notice of Reopening</u>

Darlene Rodowitz
Berkshire Health Systems, Inc.
725 North Street
Pittsfield, MA 01201

RE:    Fairview Hospital
        Provider Number: 22-0038
        FYE: 9/30/98
        Reopening Control No.: 02-02969

Dear Ms Rodowitz:

This is notice of our intent to reopen the cost report referenced above in accordance with the Code of Federal Regulations, Title 42, Chapter IV, Section 405.1885. The Notice of Program Reimbursement was dated September 26, 2000; therefore, this notice is within the three-year period allowed.

We intend to review the following area:

1.   Massachusetts Uncompensated Care Pool Costs

Should you have any questions regarding this letter, please feel free to call me at (860)-659-4300, ext. 239.

Sincerely,

Jeffrey M. Grabowski
Senior Field Auditor
Mutual of Omaha
Medicare Audit and Reimbursement

CC:    Sandy Hoffman, Lead Data Technician (Dbase Coordinator)
       File

       Reopening Code: A

049





MUTUAL of OMAHA INSURANCE COMPANY
Medicare Area
655 Winding Brook Dr.
Glastonbury, CT 06033
t 860 659 4300 f 860 659 8065
mutualmedicare.com
A CMS Contracted Intermediary

October 1, 2002

<u>Notice of Reopening</u>

Darlene Rodowitz
Berkshire Health Systems, Inc.
725 North Street
Pittsfield, MA 01201

RE:     Fairview Hospital
        Provider Number: 22-0038
        FYE: 9/30/99
        Reopening Control No.: 02-02970

Dear Ms Rodowitz:

This is notice of our intent to reopen the cost report referenced above in accordance with the Code of Federal Regulations, Title 42, Chapter IV, Section 405.1885. The Notice of Program Reimbursement was dated September 25, 2001; therefore, this notice is within the three-year period allowed.

We intend to review the following area:

1.   Massachusetts Uncompensated Care Pool Costs

Should you have any questions regarding this letter, please feel free to call me at (860)-659-4300, ext. 239.

Sincerely,

Jeffrey M. Grabowski
Senior Field Auditor
Mutual of Omaha
Medicare Audit and Reimbursement

CC:     Sandy Hoffman, Lead Data Technician (Dbase Coordinator)
        File

        Reopening Code: A

050