ATTACHMENT 5 OF
EXHIBIT 1

# Massachusetts Division of Health Care Finance and Policy

## CRITERIA FOR DETERMINING ELIGIBILITY FOR FREE CARE AT ACUTE CARE HOSPITALS AND FREESTANDING COMMUNITY HEALTH CENTERS

114.6 CMR 10.00:

Sections

10.01:   General Provisions
10.02:   Definitions
10.03:   Eligibility Categories
10.04:   Eligibility Process
10.05:   Collection Action
10.06:   Patient Rights and Responsibilities
10.07:   Patient Grievances
10.08:   Notification
10.09:   Credit and Collection Policies
10.10:   Documentation and Audit
10.11:   Administrative Information Bulletins
10.12:   Severability

### 10.01:   General Provisions

(1) Scope, Purpose, and Effective Date.

   (a) 114.6 CMR 10.00 implements the provisions of M.G.L. c. 118G, regarding eligibility determination for free care at acute care hospitals and freestanding community health centers.

   (b) The purpose of 114.6 CMR 10.00 is to specify:

   1. the standards and procedures for determining patients' eligibility for free care,

   2. the standards and criteria for notifying patients of the availability of free care and public assistance programs, and

   3. the standards and criteria that credit and collection policies must meet for bad debt and free care accounts.

   (c) 114.6 CMR 10.00 shall be effective on and after October 1, 1998.

(2) Authority: 114.6 CMR 10.00 is adopted pursuant to M.G.L. c. 118G.

### 10.02:   Definitions

Meaning of Terms: As used in 114.6 CMR 10.00, unless the context otherwise requires, terms shall have the meanings ascribed in 114.6 CMR 10.00.

Acute Hospital. Any hospital licensed under M.G.L. c. 111, §51 and the teaching hospital of the University of Massachusetts Medical School, which contains a majority of medical-surgical, pediatric, obstetric, and maternity beds as defined by the Department of Public Health.

Acute Hospital Services. Services listed on an acute hospital's license by the Department of Public Health.

Allowable Medical Expenses. Family medical bills from any provider that, if paid, would qualify as deductible medical expenses for federal income tax purposes. Unpaid bills for which the patient is still responsible, incurred prior to or after the date of a free care application, may be used. Paid bills, incurred after the date of the free care application, may also be included in the allowable medical expenses.

Bad Debt. An account receivable based on services furnished to any patient which:

I

and pursuant to the hospital's or community health center's established Credit and Collection policy, that conforms with 114.6 CMR 10.09;
(b) is charged as a credit loss;
(c) is not the obligation of any federal or state governmental unit; and
(d) is not free care.

CenterCare Program. An ambulatory managed care program that offers primary and preventive health care services to low-income, uninsured adult patients of independently licensed community health centers, administered by the Department of Public Health, pursuant to M.G.L., c.111, §24H.

Charge. The uniform price for a specific service charged by a hospital or community health center.

Children's Medical Security Plan. A program of primary and preventive pediatric health care services for eligible children, from birth to age 18, administered by the Department of Public Health pursuant to M.G.L. c. 111, §24G.

Collection Action. Any activity by which a hospital, community health center or a designated agent requests payment for services from a patient, a patient's guarantor, or a third party responsible for payment. Collection actions include activities such as pre-admission or pretreatment deposits, billing statements, collection follow-up letters, telephone contacts, personal contacts and activities of collection agencies and attorneys.

Commissioner. The Commissioner of the Division of Health Care Finance & Policy or designee.

CommonHealth. A Medicaid program for disabled adults and disabled children administered by the Division of Medical Assistance pursuant to M.G.L. c. 118E.

Community Health Center. A clinic which provides comprehensive ambulatory services and which (a) is licensed as a freestanding clinic by the Massachusetts Department of Public Health pursuant to M.G.L. c.111, §51, (b) meets the qualifications for certification (or provisional certification) by the Division of Medical Assistance and enters into a provider agreement pursuant to 130 CMR 405.000, (c) operates in conformance with the requirements of 42 U.S.C. §254c, and (d) files cost reports as requested by the Division.

Credit and Collection Policy. A statement, in compliance with 114.6 CMR 10.09, of a hospital's or community health center's general policy and the principles that guide its billing and collection practices and procedures, as approved by its governing board.

Deductible. The patient's liability to the provider for partial free care purposes.

Division. The Division of Health Care Finance and Policy established under M.G.L. c. 118G.

Emergency Aid to the Elderly, Disabled and Children (EAEDC). A program of governmental benefits under M.G.L. c. 117A.

Emergency Care. Medically necessary services provided after the sudden onset of a medical condition, whether physical or mental, manifesting itself by acute symptoms of sufficient severity, including severe pain, which a prudent lay person would reasonably believe is an immediate threat to life or has a high risk of serious damage to the individual's health. Conditions include, but are not limited to those which may result in jeopardizing the patient's health, serious impairment to bodily functions, serious dysfunction of any bodily organ or part, or active labor in women. Examination or treatment for emergency medical conditions or any such other service rendered to the extent required pursuant to 42 USC 1395 (dd) qualifies as emergency care for Pool purposes.

Family. The patient, spouse and any minor dependents living in the household, and unborn children.

Family Income. The sum of annual earnings and cash benefits from all sources before taxes, less payments made for alimony and child support.

<u>Federal Poverty Income Guidelines.</u> The Federal Poverty Income Guidelines published annually by the federal Department of Health and Human Services.

<u>Fiscal Year.</u> The time period of 12 months beginning on October 1 of any calendar year and ending on September 30 of the immediately following calendar year.

<u>Free Care.</u> Unpaid hospital or community health center charges for medically necessary services which are eligible for reimbursement from the Pool pursuant to the criteria set forth in 114.6 CMR 10.03. Types of free care include: full free care, partial free care, medical hardship, and emergency bad debt.

<u>Governmental Unit.</u> The Commonwealth, and any department, agency, board, or commission of the Commonwealth, and any political subdivision of the Commonwealth.

<u>Guarantor.</u> A person or group of persons who assumes the responsibility of payment for all or part of a hospital or community health center's charge for services.

<u>Health Insurance Plan.</u> The Medicare program, the Medicaid program, or an individual or group contract or other plan providing coverage of health care services which is issued by a health insurance company, as defined in M.G.L. c. 175, c. 176A, c. 176B, c. 176G, or c. 176I.

<u>Healthy Start.</u> A health care program for pregnant women and infants administered by the Department of Public Health pursuant to M.G.L. c. 111, 24D.

<u>Hospital.</u> An acute hospital.

<u>MassHealth.</u> A Medicaid program administered by the Division of Medical Assistance pursuant to M.G.L. c. 118E and in accordance with Title XIX of the Federal Social Security Act, and a §1115 Demonstration Waiver.

<u>Medicaid Program.</u> The medical assistance program administered by the Division of Medical Assistance pursuant to M.G.L. c. 118E and in accordance with Title XIX of the Federal Social Security Act.

<u>Medical Assistance Program.</u> The Medicaid program, the Veterans Administration health, hospital, and community health programs and any other medical assistance program operated by a Governmental Unit for persons categorically eligible for such program.

<u>Medically Necessary Service.</u> A service that is reasonably expected to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity. Medically necessary services shall include inpatient and outpatient services as mandated under Title XIX of the Federal Social Security Act. Medically necessary services shall not include:
> (a) non-medical services, such as social, educational, and vocational services,
> (b) cosmetic surgery,
> (c) canceled or missed appointments,
> (d) telephone conversations and consultations,
> (e) court testimony,
> (f) research or the provision of experimental or unproven procedures including, but not limited to, treatment related to sex-reassignment surgery, and pre-surgery hormone therapy, and
> (g) the provision of whole blood; provided, however, that administrative and processing costs associated with the provision of blood and its derivatives shall be payable.

<u>Medicare Program.</u> The medical insurance program established by Title XVIII of the Federal Social Security Act.

<u>Pool.</u> The Uncompensated Care Pool established pursuant to M.G.L. c. 118G, s.18.

3

under the laws of the commonwealth to perform or provide health care services.

**Publicly Aided Patient**. A person who receives hospital or community health center care and services for which a Governmental Unit is liable in whole or in part under a statutory program.

**Resident.** A person living in Massachusetts with the intention of remaining in the state indefinitely. A resident is not required to maintain a fixed address.
The following conditions do not meet the requirements for residency:
      (1) confinement in a nursing home, hospital or other medical institution, and
      (2) relocation to Massachusetts for the sole purpose of receiving health care benefits.

**Uninsured Patient.** A patient who does not have a policy of health insurance or is not a member of a health insurance or benefit program. A patient who has a policy of health insurance or is a member of a health insurance or benefit program which requires such patient to make payment of deductibles, or co-payments, or fails to cover certain medical services or procedures is not uninsured.

**Urgent Care**. Medically necessary services provided in a hospital or community health center after the sudden onset of a medical condition, whether physical or mental, manifesting itself by acute symptoms of sufficient severity (including severe pain) that a prudent lay person would believe that the absence of medical attention within 24 hours could reasonably expect to result in:
      a) placing a patient's health in jeopardy
      b) impairment to bodily function, or
      c) dysfunction of any bodily organ or part.
Urgent care services are provided for conditions that are not life-threatening and do not pose a high risk of serious damage to an individual's health.

**10.03    Eligibility Categories**

  (1) **Full Free Care**
      (a) **Eligibility.**
           1. a Massachusetts Resident whose Family Income is equal to or less than 200% of the Federal Poverty Income Guidelines;
           2. a non-Massachusetts Resident who receives Emergency or Urgent Care and whose Family Income is equal to or less than 200% of the Federal Poverty Income Guidelines;
           3. a person who receives benefits from the CenterCare or Emergency Aid to the Elderly, Disabled and Children (EAEDC) programs for Medically Necessary Services not covered by these programs; or
           4. participants in the Children's Medical Security Plan or Healthy Start whose Family Income is equal to or less than 200% of the Federal Poverty Income Guidelines.
      (b) **Payment.** The entire financial liability of a Resident whose income meets these criteria may be billed to the Pool for the period of Free Care eligibility described in 114.6 CMR 10.04. The entire financial liability for Emergency Care or Urgent Care of a non-Resident whose income meets these criteria may be billed to the Pool for the period of Free Care eligibility described in 114.6 CMR 10.04.

  (2) **Partial Free Care**
      (a) **Eligibility.**
           1. a Massachusetts Resident whose Family Income is from 201% to 400% of the Federal Poverty Income Guidelines;
           2. a non-Massachusetts Resident receiving Emergency or Urgent Care whose Family Income is from 201% to 400% of the Federal Poverty Income Guidelines.
           3. participants in the Children's Medical Security Plan whose Family Income is from 201% to 400% of the Federal Poverty Income Guidelines.

Federal Poverty Income Guidelines.

(b) Annual Patient Deductible.

1. The patient's Deductible equals 40% of the difference between the patient's Family Income and 200% of the Federal Poverty Income Guidelines. The following formula must be used in determining the amount of the Deductible:

**|Family Income - (2 x Federal Poverty Income Guidelines)| x 40% = Annual Patient Deductible**

The total amount of a patient's co-payments is capped in any given year at the Deductible amount calculated in 114.6 CMR 10.03 (2)(b)1. The patient will remain responsible for all expenses for Medically Necessary Services that would otherwise be billed to the Pool up to this Deductible amount. There is only one partial Free Care Deductible per Family per eligibility period. If the patient is approved for partial Free Care at more than one Provider, or if additional members of a Family are approved for partial Free Care at the same or another Provider, the Medically Necessary Services from the other Provider(s) or for the additional Family members must be applied to a single partial Free Care Deductible for the Family. Family members must be approved for partial Free Care in order for their expenses for Medically Necessary Services to be applied towards the Deductible. Once a Hospital or Community Health Center has calculated the patient's Deductible pursuant to 114.6 CMR 10.03 (2)(b)1, the Hospital or Community Health Center must track the patient's Free Care expenses until the patient meets the Deductible. If more than one Family member is approved for Free Care, or if the patient or Family members are approved for Free Care at more than one Hospital or Community Health Center, it is the patient's responsibility to track the Deductible and provide documentation to the Hospital or Community Health Center that the Deductible has been reached.

(c) Payment.

1. Hospitals

The patient must incur expenses for Medically Necessary Services to meet the Deductible before receiving partial Free Care. Once the patient has met the Deductible, the remaining balance for Medically Necessary Services may be billed to the Pool for the period of Free Care eligibility described in 114.6 CMR 10.04. Based on the guidelines established in 114.6 CMR 10.05, the Hospital may require a deposit and/or a payment plan.

2. Community Health Centers

A person who is eligible for partial Free Care must pay a percentage of the bill based on a sliding fee scale until the patient meets the Deductible as calculated pursuant to 114.6 CMR 10.03(2)(b)(1). The remaining balance may be billed to the Pool. Once the patient meets the Deductible, the entire visit may be billed to the Pool for the period of Free Care eligibility described in 114.6 CMR 10.04. Community Health Centers must report the co-payment amount as Free Care income, regardless of whether the payment was actually received.

The sliding fee scale appears below:

| Income as a Percentage of Federal Poverty Income Guidelines | Percentage of Rate Paid by Patient |
|---|---|
| 201% to 250% | 20% |
| 251% to 300% | 40% |
| 301% to 350% | 60% |
| 351% to 400% | 80% |

(3) Medical Hardship

(a) Eligibility.

1. A Massachusetts Resident at any income level may qualify for Medical Hardship if Allowable Medical Expenses have so depleted the family's income and resources that he or she is unable to pay for Medically Necessary Services. In order to qualify

5

110

qualifications described below.

2. A non-Massachusetts Resident receiving Emergency or Urgent Care, at any income level, may qualify for Medical Hardship if Allowable Medical Expenses have so depleted the family's income and resources that he or she is unable to pay for Medically Necessary Services. In order to qualify for Medical Hardship, the patient must meet both the expense and the resource qualifications described below.

(b) Patient Contribution

1. Expense Qualification

The patient's Allowable Medical Expenses must exceed 30 percent of his or her Family Income determined as follows:

a. The Hospital or Community Health Center will determine the Family Income. If a member of the Family is temporarily unemployed, the Hospital or Community Health Center will estimate the amount that Family member might reasonably be expected to earn over the next year. This amount plus the gross income of all other Family members shall be considered the Family Income.

b. The Hospital or Community Health Center will multiply the Family Income, as determined in 114.6 CMR 10.03 (3)(b)1.a., by 30%.

c. The Hospital or Community Health Center will determine the patient's Allowable Medical Expenses, as defined in 114.6 CMR 10.02.

d. The Hospital or Community Health Center will compare 30% of the Family Income, determined pursuant to 114.6 CMR 10.03(3)(b)1.b, to the total amount of the patient's Allowable Medical Expenses, determined pursuant to 114.6 CMR 10.03(3)(b)1.c. If the total of Allowable Medical Expenses is greater than 30% of the Family Income, then the patient meets the expense qualification. The Hospital or Community Health Center will subtract 30% of the Family Income from the Allowable Medical Expenses to determine the amount by which the Allowable Medical Expenses exceed the available income, or the "excess medical expenses" for the resource qualification test below.

2. Resource Qualification

The patient's available assets must be insufficient to cover the cost of Allowable Medical Expenses that exceed 30% of the Family Income.

a. The Hospital or Community Health Center will calculate total available Family assets. Available assets do not include the primary residence, the first motor vehicle, and a resource exclusion of the first $4,000 of other assets for an individual, or $6,000 for a Family of two, and $1,500 for each additional Family member.

b. The Hospital or Community Health Center will compare the available assets determined pursuant to 114.6 CMR 10.03(3)(b)2.a. to the excess medical expenses, determined pursuant to 114.6 CMR 10.03(3)(b)1.d. If the available assets are greater than the excess medical expenses, the patient is not eligible for Medical Hardship. If the available assets are less than the excess medical expenses, the patient is eligible for Medical Hardship. The Hospital or Community Health Center will determine the patient's Medical Hardship contribution by adding 30% of the patient's Family Income, determined pursuant to 114.6 CMR 10.03(3)(b)1.b, to the patient's available assets, determined pursuant to 114.6 CMR 10.03(3)(b)2.a. This is the amount of the patient's Medical Hardship contribution. There is one Medical Hardship contribution per Family per eligibility period.

c. The patient will remain responsible for all Allowable Medical Expenses up to this Medical Hardship contribution. The patient is eligible for Free Care for all expenses for Medically Necessary Services in excess of the Medical Hardship contribution for the period of Free Care eligibility described in 114.6 CMR 10.04.

(c) Payment

1. The Hospital or Community Health Center will first apply the Allowable Medical Expenses billed by other Providers to the patient's Medical Hardship contribution. If the Medical Hardship contribution exceeds the Allowable Medical Expenses billed by other Providers, the Hospital or Community Health Center will then apply its

6

111

must pay that portion of the bill that the Hospital or Community Health Center applied to the Medical Hardship contribution.

2. The Hospital or Community Health Center may bill any balance above the patient's Medical Hardship contribution to the Pool.

(4) Emergency Bad Debt

(a) Eligibility

To be eligible for emergency Bad Debt, an account must meet the following conditions.

1. The patient must be uninsured for the services provided.

2. The patient must have received Emergency Care as defined in 114.6 CMR 10.02.

3. The patient's condition must be determined by the responsible physician to require Emergency Care, as defined in 114.6 CMR 10.02 and in the Hospital's Credit and Collection Policy.

4. The Hospital establishes that appropriate collection action was taken pursuant to 114.6 CMR 10.05.

(b) Payment.

1. A Hospital may bill to the Pool all charges resulting from the emergency visit, including any ancillary services, and any charges for an inpatient or observation stay.

2. A Hospital may bill the Pool for Emergency Care screening and services, but not for other services provided to patients determined not to require Emergency Care. If a Hospital cannot distinguish charges for screening services from charges for other Medically Necessary Services, the Hospital may bill the Pool for the amount paid by the Medicaid program for emergency screening services.

## 10.04    Eligibility Process

(1) MassHealth enrollment. If a patient is enrolled in MassHealth on the date that the service is provided, the Hospital or Community Health Center may not bill the Pool for that service. Therefore, for any patient requesting Free Care, Hospitals and Community Health Centers must check Division of Medical Assistance eligibility verification systems to determine the patient's MassHealth enrollment status.

(2) Screening for alternative programs. Hospitals and Community Health Centers must screen patients for other sources of coverage and potential for eligibility in government programs before approving them for Free Care. Hospitals and Community Health Centers are required to document the results of each screening. If an Acute Hospital or Community Health Center determines that a patient is potentially eligible for Medicaid or another government program, said Acute Hospital or Community Health Center shall encourage the patient to apply for such program and shall assist the patient in applying for benefits under such program. A patient who declines to apply for another government program may apply and, if eligible, be approved for Free Care.

(3) Application. Hospitals and Community Health Centers will use the appropriate application form provided by the Division to determine eligibility for Free Care, partial Free Care, and Medical Hardship. Copies of the application forms are attached hereto and incorporated herein by reference. Each application form must be signed by the patient or an authorized representative authorizing the release of information to the Division of Health Care Finance & Policy, and attesting that all information is correct. Hospitals and Community Health Centers may use the Free Care application guide, which contains specific lists of acceptable forms of documentation, to assist with the Free Care application and eligibility determination process.

(a) The Free Care application (DHCFP-FC1)

1. All applicants for Free Care, except those patients who meet the conditions of 114.6 CMR 10.04 (3)(b) or 114.6 CMR 10.04(3)(d), must complete the Free Care application (DHCFP-FC1) and provide the required supporting documentation.

2. Supporting documentation is not required with the application for a single visit to a Hospital or Community Health Center when the total charge is $500 or less, but documentation must be provided in order to receive Free Care for subsequent visits.

7

In order to prevent patients from having to provide duplicative information, patients in the categories described below may apply for Free Care using a condensed Free Care form.

1. Patients eligible for MassHealth, but not yet enrolled.

Any patient determined eligible for MassHealth by the Division of Medical Assistance may complete the condensed Free Care application to receive Free Care for Medically Necessary Services provided before the patient's MassHealth enrollment date. Patients enrolled in the EAEDC program may receive Free Care for Medically Necessary Services provided before the patient's MassHealth enrollment date without signing an application form only if the Hospital or Community Health Center includes a copy of the EAEDC card with the application and verifies EAEDC eligibility.

2. Patients Ineligible for MassHealth

A patient who applied for and was subsequently denied MassHealth may submit a completed Medical Benefit Request (MBR) and a condensed Free Care application, provided that the MBR was submitted to the Division of Medical Assistance within six months of the Free Care application.

3. Members of Children's Medical Security Plan or Healthy Start.

A patient enrolled in any or all of these programs who meets the Free Care income eligibility criteria is eligible for Free Care for those Medically Necessary Services not covered by the program, provided that the patient completes a condensed Free Care application and provides the Hospital or Community Health Center with a copy of his or her valid membership card. With the patient's consent, Providers may obtain verification of enrollment in these programs by mail or fax from the agency that administers the program. If the patient provides a valid program enrollment card, Hospitals and Community Health Centers must include a copy of the card with the patient's signed application form; both sides of the card must be copied if both sides are used.

4. Members of CenterCare

Patients enrolled in the CenterCare program may receive Free Care for Medically Necessary Services not covered by the CenterCare program without signing a condensed Free Care application form only if the Hospital or Community Health Center verifies that the patient has signed the Division's Assignment of Rights statement on the CenterCare application and includes a copy of the CenterCare card (front and back) with the Free Care application. If the patient has not signed the Assignment of Rights, the patient must complete and sign a condensed Free Care application form, and the Hospital or Community Health Center must attach a copy of the card (front and back) to the patient's signed application form.

5. Patients who have been approved for Free Care at another Hospital or Community Health Center.

Patients who have been determined eligible for Free Care at one Hospital or Community Health Center may use the Condensed Free Care Application when applying for Free Care elsewhere. The second Hospital or Community Health Center must obtain a copy of the full Free Care application and supporting documentation from the first Hospital or Community Health Center, and is responsible for making its own eligibility determination and verifying that the shared information is still reflective of the applicant's eligibility status.

(c) The Medical Hardship supplement (DHCFP-FC3)

The Hospital or Community Health Center must use the Medical Hardship supplement to determine the Allowable Medical Expenses and available assets to be used in calculating eligibility for Medical Hardship. The Medical Hardship supplement is a supplement to the Free Care application. Patients applying for Medical Hardship must complete both forms and provide the required supporting documentation in order to be eligible for Medical Hardship assistance.

(d) The Family supplement (DHCFP-FC4)

When one Family member has completed the Free Care application and supplied the necessary documentation, additional Family members may apply for Free Care using the

supplement form will be the same as those for the applicant who completed the Free Care application.

(e) Facility Use Only section

The Hospital or Community Health Center must document the process used to determine Free Care eligibility by completing the Facility Use Only section of each application described in 114.6 CMR 10.04.

(4) Special Circumstances.

(a) Balances after insurance. A copy of the insurance program or policy's Explanation of Benefits (EOB) must be included with the Free Care application. If this is not available, a copy of the bill from the Provider indicating the balance due from the patient, or a copy of the patient's insurance card or policy, may be substituted. A patient may apply for Free Care to cover his or her financial liability after any insurance program or policy has paid the amount for which it is responsible.

(b) Medicare Bad Debt is eligible for payment from the Pool to the extent that:

1. such charges are related to Medicare co-payments and deductibles or to Medically Necessary Services that are not covered by the Medicare program,

2. such charges are for a patient who otherwise qualifies for Free Care pursuant to 114.6 CMR 10.03,

3. such charges were properly submitted for payment to the Medicare intermediary and were rejected by the intermediary as failing Medicare substantive rules. A Hospital need not submit for payment to the Medicare intermediary any charges for services for which Title XVIII of the Federal Social Security Act does not allow payment, and

4. the Hospital establishes that reasonable collection efforts were made pursuant to Title XVIII of the Federal Social Security Act and 114.6 CMR 10.05.

(c) Patients injured in motor vehicle accidents may be eligible for Free Care if the Hospital or Community Health Center documents that it investigated whether the patient, driver, and/or owner of the other motor vehicle had a motor vehicle liability policy and, where applicable, properly submitted a claim for payment to the motor vehicle liability insurer.

(d) Hospitals and Community Health Centers that recover payments for charges which were previously billed to the Pool must report such payments to the Division. These recoveries will be offset against Free Care charges to the Pool.

(5) Time Frame.

(a) Prior to billing the Pool, Hospitals must obtain a completed Free Care application and all supporting documentation from the patient within one year of determining the patient's financial liability, unless the Hospital documents continuous Collection Action or regular patient payments during the intervening time. Patients are eligible to apply for Free Care for an account over one year old if the Hospital can document continuous collection action or patient payments during the intervening time.

(b) Prior to billing the Pool, Community Health Centers must obtain a completed Free Care application and all supporting documentation from the patient within ninety days of determining the patient's financial liability, unless the Community Health Center documents continuous Collection Action or regular patient payments during the intervening time. Patients are eligible to apply for Free Care for an account over ninety days old if the Hospital can document continuous collection action or patient payments during the intervening time.

(c) Hospitals and Community Health Centers must give the patient written notice of an eligibility determination within 30 days of receipt of a complete application.

(d) The patient will remain eligible for Free Care for one year from the date of the eligibility determination, unless over the course of that year the patient's Family Income or insurance status changes to such an extent that the patient becomes ineligible.

**10.05    Collection Action**

(1) Obtaining Information.

114.6 CMR 10.09.

(a) Inpatient Services.

1. Non-Emergency Admissions. A Hospital shall make reasonable efforts to obtain the financial information necessary to determine responsibility for payment of the Hospital bill from the patient or Guarantor prior to the date of the patient admission.

2. Emergency Admission. A Hospital shall make reasonable efforts, after the patient is admitted and as soon as reasonably possible, to obtain the financial information necessary to determine responsibility for payment of the Hospital bill from the patient or Guarantor. If the patient or Guarantor is unable to provide the information needed, and the patient consents, a Hospital shall make reasonable efforts to contact the relatives, friends and Guarantor and the patient for additional information while the patient is in the Hospital.

3. Requirements for Obtaining Additional Information During the Patient's Hospital Stay. A Hospital shall identify the department that is responsible for obtaining the information from the patient, and explain any clinical approval process required in contacting the patient for additional information. If no clinical approval process is required prior to contacting patients, the Credit and Collection Policy must so specify.

4. Requirements for Obtaining Information at the Time of the Patient's Discharge. If a Hospital has not obtained sufficient patient financial information to assess the ability of the patient or the patient Guarantor to pay for Hospital services prior to the date of discharge, the Hospital shall make reasonable efforts to obtain the necessary information at the time of the patient's discharge.

(b) Outpatient Services.

1. Non-Emergency Service. A Hospital or Community Health Center shall make reasonable efforts, prior to treatment, to obtain the financial information necessary to determine responsibility for payment of the bill from the patient or Guarantor.

2. Emergency Service. A Hospital or Community Health Center shall make reasonable efforts, as soon as reasonably possible, to obtain the financial information necessary to determine responsibility for payment of the bill from the patient or Guarantor.

(c) Verification of Patient-Supplied Information.

1. Inpatient. A Hospital shall make reasonable efforts to verify the patient-supplied information prior to the patient discharge. The verification may occur at any time during the provision of services, at the time of the patient discharge or during the collection process.

2. Outpatient. A Hospital or Community Health Center shall make reasonable efforts to verify patient-supplied information at the time the patient receives the services. The verification of patient-supplied information may occur at the time the patient receives the services or during the collection process.

(2) Populations exempt from Collection Action

(a) A Hospital or Community Health Center shall not bill patients receiving governmental benefits under the Emergency Aid to the Elderly, Disabled and Children program, participants in the Healthy Start program, or participants in the CenterCare Program. However, the Hospital or Community Health Center may initiate billing for a patient who alleges that he or she is a participant in any of the programs listed in 114.6 CMR 10.04, but fails to provide proof of such participation, or who fails to sign a condensed Free Care application. Upon receipt of satisfactory proof that a patient is a participant in any of the above listed programs, and receipt of the signed condensed Free Care application, the Hospital or Community Health Center shall cease its collection activities.

(b) Participants in the Children's Medical Security Plan whose Family Income is equal to or less than 200% of the Federal Poverty Income Guidelines are also exempt from collection action. The Department of Public Health (DPH) may issue periodic notices to the Hospitals and Community Health Centers regarding billing of the participants in the Children's Medical Security Plan. However, the Hospital or Community Health Center may initiate billing for a patient who alleges that he or she is a participant in the Children's Medical Security Plan, but fails to provide proof of such participation, or who fails to sign a condensed Free Care application. Upon receipt of satisfactory proof that a patient is a participant in the Children's Medical Security Plan and receipt of the signed condensed Free

10

activities.

(c) If a Hospital or Community Health Center provides inpatient or outpatient services to a person who meets the standard for full Free Care, pursuant to 114.6 CMR 10.03 and 10.04, such person shall be exempt from Collection Action.

(d) If a Hospital or Community Health Center provides inpatient or outpatient services to a person who meets the standard for partial Free Care, pursuant to 114.6 CMR 10.03 and 10.04, such person shall be exempt from Collection Action for the portion of his or her Hospital or Community Health Center bill that exceeds the Deductible.

(e) If a Hospital or Community Health Center provides inpatient or outpatient services to a person who meets the standard for Medical Hardship, pursuant to 114.6 CMR 10.03 and 10.04, the Hospital or Community Health Center shall exempt such person from Collection Action with respect to the amount of the bill that exceeds the Medical Hardship contribution, calculated pursuant to 114.6 CMR 10.03(3).

(3) Deposits and Payment Plans

(a) The Hospital or Community Health Center shall not require pre-admission and/or pretreatment deposits from patients who require Emergency Care or who are determined to be eligible for full Free Care.

(b) Hospitals and Community Health Centers may request a deposit from patients eligible for partial Free Care. Deposits will be limited to 20% of the Deductible amount up to $500. All remaining balances will be subject to the payment plan conditions established in 114.6 CMR 10.05(3)(d).

(c) Hospitals and Community Health Centers may request a deposit from patients eligible for Medical Hardship. Deposits will be limited to 20% of the Medical Hardship contribution up to $1,000. All remaining balances will be subject to the payment plan conditions established in 114.6 CMR 10.05 (3)(d).

(d) Payment Plans. A patient who has a balance of $1,000 or less, after initial deposit, must be offered a one- year payment plan with a minimum monthly payment of $25. A patient who has a balance of more than $1,000, after initial deposit, must be offered at least a two-year payment plan.

(4) Reasonable Collections Efforts

(a) To be considered a reasonable collection effort, in compliance with 114.6 CMR 10.05, a Hospital or Community Health Center must make the same effort to collect accounts for Emergency Care for Uninsured Patients as it does to collect accounts from any other patient classifications. The minimum requirements before writing off an account to the Pool include:

1. an initial bill to the party responsible for the patient's personal financial obligations,

2. subsequent billings, telephone calls, collection letters, personal contact notices, computer notifications, and any other notification method that constitutes a genuine effort to contact the party responsible for the obligation,

3. documentation of alternative efforts to locate the party responsible for the obligation or the correct address on billings returned by the postal office service as "incorrect address" or "undeliverable,"

4. sending a final notice by certified mail for balances over $1,000 where notices have not been returned as "incorrect address" or "undeliverable."

(b) If after reasonable attempts to collect a bill, the debt for Emergency Care for an Uninsured Patient remains unpaid for more than 120 days, the bill may be deemed uncollectible and billed to the Pool.

(c) The patient's file must include all documentation of the Provider's collection effort including copies of the bill(s), follow-up letters, reports of telephone and personal contact, and any other effort made.

## 10.06    Patient Rights and Responsibilities

(1) Patient Rights

Hospitals and Community Health Centers must advise patients of the following rights to:

(a) apply for Free Care within one year of determining the patient's financial liability at a Hospital, or within ninety days of determining the financial patient's liability at a

continuous collection action or patient payments during the intervening time,
(b) a payment plan, as described in 114.6 CMR 10.05, if the patient is determined to be eligible for partial Free Care or Medical Hardship,
(c) a written notice of the eligibility decision within 30 days of completion of a written Free Care application and submission of the required supporting documentation,
(d) notice of the right to file a grievance pursuant to 114.6 CMR 10.07, and
(e) file a grievance as outlined in 114.6 CMR 10.07 of an eligibility or scope of services determination.

(2) Patient Responsibilities
(a) to provide all necessary documentation,
(b) to inform the Provider of changes in Family Income and insurance status,
(c) to track the patient Deductible and provide documentation to the Hospital or Community Health Center that the Deductible has been reached when more than one Family member is approved for Free Care or if the patient or Family members are approved for Free Care at more than one Hospital or Community Health Center.

(3) Other
(a) A Hospital or Community Health Center shall not discriminate on the basis of race, color, national origin, citizenship, alienage, religion, creed, sex, sexual preference, age, or disability, in its policies, or in its application of policies, concerning the acquisition and verification of financial information, pre-admission or pretreatment deposits, payment plans, deferred or rejected admissions, or eligibility for Free Care.
(b) A Hospital or Community Health Center or agent thereof shall not seek legal execution against the personal residence or motor vehicle of a patient or Guarantor without the express approval of the Hospital's or Community Health Center's Board of Trustees. All approvals by the Board must be made on an individual case basis.

## 10.07    Patient Grievances

There shall be an administrative review process for any person aggrieved by a Hospital's or Community Health Center's denial of Free Care. The Division will review cases involving eligibility and covered services. The grievance process must follow these steps:

(1) The person must send a written complaint to the Division. The patient may include supporting documentation with the complaint.

(2) The Division will send a copy of the complaint to the Hospital or Community Health Center and may ask the Hospital or Community Health Center for additional information.

(3) The Hospital or Community Health Center has 30 days to answer the complaint in writing.

(4) When the Division has received all necessary information, it will review the complaint and the Hospital's or Community Health Center's answer. The Division will issue a written decision to the person and to the Hospital or Community Health Center within 30 days of the receipt of all necessary information. The decision will contain a brief explanation of the reasons for the Division's actions.

## 10.08    Notification

Hospitals and Community Health Centers must meet certain criteria regarding notification of the availability of Free Care and other programs of public assistance to patients.

(1) Signs
(a) Hospitals and Community Health Centers shall post signs, in the inpatient, clinic, emergency admissions/registration areas and in business office areas that are customarily used by patients, that conspicuously inform patients of the availability of financial assistance programs and the location at the Hospital or Community Health Center to apply for such programs.

12

117

visiting these areas.

(c) All signs and notices shall be translated into language(s) other than English if such language(s) is primarily spoken by 10% or more of the residents in the Hospital's or Community Health Center's service area.

(d) Signs must notify patients of the availability of financial assistance and of the availability of both Free Care and other programs of public assistance. The following language is suggested, but not required:

> 1. "Are you unable to pay your hospital bills? Please contact a counselor to assist you with various alternatives." or
>
> 2. "Financial assistance is available through this institution. Please contact _____."

(2) Notification Practices

(a) A Hospital or Community Health Center will provide individual notice of availability of Free Care and other programs of public assistance to a patient expected to incur charges, exclusive of personal convenience items or services, that may not be paid in full by third party coverage.

(b) A Hospital or Community Health Center or its designee will include a notice of Free Care availability and other programs of public assistance in its initial bill.

(c) In all other written collection actions, a Hospital or Community Health Center or its designee will include a brief notice of Free Care availability. The following language is suggested, but not required, to meet the notice requirements of this section: "If you are unable to pay this bill, please call (phone #). Financial assistance is available."

(3) Decision letters. Within 30 days of receiving a completed application, a Hospital or Community Health Center must give the applicant written notice of its decision on the application. The decision letter must contain the information that appears below. Samples of decision letters appear in the Free Care application guide.

(a) Free Care approval letters must:

> 1. explain that the person is eligible for full Free Care for all Medically Necessary Services, or only Free Care for Emergency and Urgent Care if the person is not a Massachusetts resident
> 2. include the dates of eligibility
> 3. list the services that Free Care does not cover
> 4. explain how to re-apply for free care at the end of the eligibility period
> 5. include the name and telephone number of a contact person for more information about Free Care
> 6. explain how to file a grievance with the Division
> 7. include the signature of an authorized person.

(b) Partial Free Care approval letters must:

> 1. explain that the person is eligible for partial Free Care for all Medically Necessary Services, or only partial Free Care for Emergency and Urgent Care if the person is not a Massachusetts resident
> 2. include the dates of eligibility
> 3. include the amount of the patient Deductible
> 4. inform the patient of any required deposit for non-emergency services
> 5. include information about written payment plans pursuant to 114.6 CMR 10.05
> 6. explain how to apply for Medical Hardship
> 7. explain how to re-apply at the end of the eligibility period
> 8. list the services that Free Care does not cover
> 9. include the name and number of a contact person for more information
> 10. explain how to file a grievance with the Division
> 11. include the signature of an authorized person.

(c) Medical Hardship approval letters must:

> 1. explain that the person is eligible for Medical Hardship for all Medically Necessary Services, or only for Emergency and Urgent Care if the person is not a Massachusetts resident
> 2. include the dates of eligibility

4. inform the patient of any required deposit for non-emergency services
5. include information about written payment plans pursuant to 114.6 CMR 10.05
6. explain how to re-apply at the end of the eligibility period
7. list the services that Free Care does not cover
8. include the name and number of a contact person for more information
9. explain how to file a grievance with the Division
10. include the signature of an authorized person.

(d) Free Care denial letters must:
1. explain why the patient is not eligible for Free Care or partial Free Care
2. explain how to apply for Medical Hardship
3. include the name and number of a contact person for more information
4. explain how to file a grievance with the Division
5. include the signature of an authorized person.

(e) Medical Hardship denial letters must:
1. explain why the patient is not eligible for Medical Hardship
2. include the name and number of a contact person for more information
3. explain how to file a grievance with the Division
4. include the signature of an authorized person.

## 10.09   Credit and Collection Policies

A Hospital or Community Health Center's Credit and Collection Policy must meet all the requirements specified in this regulation. The Division may deny or withhold reimbursement for Free Care to any Hospital or Community Health Center which fails to comply with the requirements of 114.6 CMR 10.00 until such Hospital or Community Health Center complies with the requirements. The Division will notify Hospitals or Community Health Centers of its intention to deny or withhold reimbursement.

(1) Filing Requirements
Hospitals and Community Health Centers shall file their Credit and Collection Policies with the Division:
a) by October 1, 1998. Hospitals and Community Health Centers are encouraged to submit draft Credit and Collection Policies by August 1, 1998. Hospitals and Community Health Centers may request an extension for cause by submitting a written request to the Division. Hospitals and Community Health Centers may request an extension of no more than 60 days from October 1, 1998. Hospitals and Community Health Centers are subject to the requirements set forth in 114.6 CMR 10.00 during any extension periods.
b) within 90 days of adoption of amendments to this regulation that would require a change in Credit and Collection Policies.
c) when a Hospital or Community Health Center makes changes in its Credit and Collection Policy.
d) when two Hospitals or Community Health Centers merge and request to be paid as a single merged entity.

(2) Content Requirements
(a) Table of Contents noting the location in the document of, at least, the items listed below.
(b) Standard collection policies and procedures
(c) Policies and procedures for collecting financial information from patients
(d) Statement on whether the patient Deductible calculation is based on a calendar year, the Hospital or Community Health Center's fiscal year, the patient's eligibility year, or the Pool Fiscal Year.
(e) Emergency Care Classification
A Hospital must provide a detailed policy on its practices for classifying persons presenting themselves for unscheduled treatment, the urgency of treatment associated with each identified classification, the location(s) at which patients might present themselves, and any other relevant and necessary instructions to Hospital personnel who would see these patients. The policy must include the classifications which qualify as Emergency Care and as Urgent Care, as defined in 114.6 CMR 10.02, and other services including "elective" or "scheduled" services.
(f) The policy on deposits and payment plans for qualified patients as described in section 10.05(3)

14

determinations                                                                    c

(h) Language used in signs notifying patients of the availability of Free Care and other programs of public assistance, the locations of those signs and the size and the type of signs used pursuant to 114.6 CMR 10.08.

(i) Copies of individual notices of Free Care, including billing invoices, award or denial letters, and any other documents used to inform patients of the availability of assistance pursuant to 114.6 CMR 10.08.

**(3) Division Response**
The Division will review amended policies submitted in accordance with this section within 90 days of receipt to determine whether they comply with this regulation.

**(4) Board Approval**
Within 60 days of notification that the Credit and Collection Policy has been accepted by the Division for filing, Hospitals and Community Health Centers must provide to the Division proof that the Credit and Collection Policy has been approved by the Hospital or Community Health Center's governing board.

**10.10    Documentation and Audit**

(1) Hospitals and Community Health Centers must maintain auditable records of their activities made in compliance with the criteria and requirements of regulation 114.6 CMR 10.00, including documentation of Free Care accounts and Free Care applications. Hospitals must also document their activities as required in 114.6 CMR 7.00. Community Health Centers must also document their activities as required in 114.6 CMR 8.00.

(2) The Division may, through various mechanisms, audit Free Care accounts of Acute Hospitals and Community Health Centers to determine compliance with this section and shall deny Pool payment for any audited account that fails to comply. These audit mechanisms may include verification of Free Care eligibility and ensuring that other coverage options are utilized fully before Free Care is granted.

(3) The Division may disallow payment for services covered by MassHealth, another program of public assistance, or other health insurance plan in which the patient is enrolled.

(4) The Division will disallow payment from the Pool for non-Medically Necessary Services.

(5) The Division will determine the level of payment that will be disallowed from the Pool using a methodology to appropriately extrapolate the amount of audited accounts that fail to comply with this regulation as compared to all of the Hospital's or Community Health Center's Free Care accounts.

(6) A Hospital aggrieved by any action or failure to act by the Division may seek a review pursuant to the provisions of 114.6 CMR 7.05.

(7) A Community Health Center aggrieved by any action or failure to act by the Division may seek a review pursuant to the provisions of 114.6 CMR 8.00.

**10.11:   Administrative Information Bulletins**

The Division may, from time to time, issue Administrative Information Bulletins to clarify its policy and understanding of substantive provisions of 114.6 CMR 10.00. In addition, the Division may issue Administrative Information Bulletins which specify the information and documentation necessary to implement 114.6 CMR 10.00.

**10.12:   Severability**

The provisions of 114.6 CMR 10.00 are hereby declared to be severable. If any such provisions or the application of such provisions to any Hospital or Community Health Center or circumstances shall be held to

15

120

of any remaining provisions of 114.6 CMR 10.00 or the application of such provisions to Hospitals or Community Health Centers or circumstances other than those held invalid.

**Regulatory authority:**

**114.6 CMR 10.00:  M.G.L. C. 118G**

16

121

11.01   General Provisions
11.02   Definitions
11.03   Reporting Requirements
11.04   Payments To and From Hospitals
11.05   Surcharge Payments
11.06   Payments to Community Health Centers
11.07   Special Provisions

11.01   General Provisions

(1) Scope, Purpose and Effective Date.  114.6 CMR 11.00 governs the procedures effective October 1, 2001 for administering the Uncompensated Care Pool, including payments to acute hospitals and community health centers and payments from acute hospitals and surcharge payers.

(2) Authority: 114.6 CMR 11.00 is adopted pursuant to M.G.L. c. 118G.

11.02   Definitions

Meaning of Terms:  As used in 114.6 CMR 11.00, unless the context otherwise requires, terms have the following meanings.  All defined terms in 114.6 CMR 11.00 are capitalized.

Allowable Free Care Costs.  A Hospital's total allowable Free Care Charges multiplied by its Cost to Charge Ratio.

Ambulatory Surgical Center.  Any distinct entity that operates exclusively for the purpose of providing surgical services to patients not requiring Hospitalization and meets the Health Care Financing Administration requirements for participation in the Medicare program.

Ambulatory Surgical Center Services.  Services described for purposes of the Medicare program pursuant to 42 USC s.1395k(a)(2)(F)(I).  These services include only facility services and do not include physician fees.

Charge.  The uniform price for a specific service charged by a Hospital or Community Health Center.

Commissioner.  The Commissioner of the Division of Health Care Finance and Policy or designee.

Community Health Center.  A clinic which provides comprehensive ambulatory services and which (a) is licensed as a freestanding clinic by the Massachusetts Department of Public Health pursuant to M.G.L. c. 111, s.51; (b) meets the qualifications for certification (or provisional certification) by the Division of Medical Assistance and enters into a provider agreement pursuant to 130 CMR 405.000; (c) operates in conformance with the requirements of 42 U.S.C. s254(c); and (d) files cost reports as requested by the Division.

Compliance Liability Revenues.  Amounts paid by Hospitals into the Uncompensated Care Trust Fund pursuant to St. 1991, c 495, s. 56.

Cost to Charge Ratio.  A percentage used to reduce Uncompensated Care Charges to costs, calculated pursuant to 114.6 CMR 11.04(4).

Disproportionate Share Hospital.  A Hospital which serves a disproportionate share of low income patients and which meets the criteria set forth in 114.1 CMR 36.04.

Division.  The Division of Health Care Finance and Policy established under M.G.L. c. 118G or its designated agent.

Emergency Bad Debt.  The amount of uncollectible debt for emergency services which meets the criteria set forth in 114.6 CMR 10.00.

Fiscal Year.  The time period of 12 months beginning on October 1 of any calendar year and ending on September 30 of the following calendar year.

Free Care.  Unpaid Hospital or Community Health Center Charges for medically necessary services which are eligible for reimbursement from the Uncompensated Care Pool pursuant to the criteria set forth in 114.6 CMR 10.00.

the Commonwealth, and any political subdivision of the commonwealth.

Gross Patient Service Revenue. The total dollar amount of a Hospital's Charges for services rendered in a Fiscal Year.

Guarantor. A person or group of persons who assumes the responsibility of payment for all or part of a Hospital's or Community Health Center's Charge for services.

Hospital. An acute Hospital licensed under M.G.L. c. 111, s. 51 and the teaching Hospital of the University of Massachusetts Medical School, which contains a majority of medical-surgical, pediatric, obstetric and maternity beds, as defined by the Department of Public Health.

Hospital Services. Services listed on a Hospital's license by the Department of Public Health.

Indirect Payment. A payment made by an entity licensed or approved under M.G.L. c.175, c.176A, c.176B, c.176G, or c.176I to a group of providers, including one or more Massachusetts acute care Hospitals or Ambulatory Surgical Centers, which then forward the payment to member Hospitals or Ambulatory Surgical Centers; or a payment made to an individual to reimburse him or her for a payment made to a Hospital or Ambulatory Surgical Center.

Individual Dental Visit. A face-to-face meeting between a patient and a dentist within the Community Health Center setting, for purposes of examination, diagnosis, or treatment.

Individual Medical Visit. A face-to-face meeting between a patient and a physician, physician assistant, nurse practitioner, nurse midwife, clinical psychologist, or licensed social worker within the Community Health Center setting, for purposes of examination, diagnosis, or treatment.

Individual Payer. A patient or Guarantor who pays his or her own Hospital or Ambulatory Surgical Center bill and is not eligible for reimbursement from an insurer or other source.

Institutional Payer. A Surcharge Payer that is an entity other than an Individual Payer.

Medicare Program. The medical insurance program established by Title XVIII of the Social Security Act.

Patient. An individual who is receiving or has received medically necessary services at a Hospital or Community Health Center.

Payment. A check, draft or other paper instrument, an electronic fund transfer, or any order, instruction, or authorization to a financial institution to debit one account and credit another.

Pool. The Uncompensated Care Pool established pursuant to M.G.L. c.118G, s.18.

Private Sector Charges. Gross Patient Service Revenues attributable to all patients less Gross Patient Service Revenue attributable to Titles XVIII and XIX, other publicly aided patients, Free Care and bad debt.

Public Service Hospital. Any public Hospital or any acute Hospital operating pursuant to St. 1995, c. 147, which has a private sector payer mix that constitutes less than 25% of its Gross Patient Service Revenue (GPSR) and where Uncompensated Care comprises more than 20% of its GPSR.

Publicly Aided Patient. A person who receives Hospital or Community Health Center care and services for which a Governmental Unit is liable in whole or in part under a statutory program.

Registered Payer List. A list of Institutional Payers as defined in 114.6 CMR 11.05(3)(b).

Shortfall Amount. The positive difference between the sum of Allowable Free Care Costs for all Hospitals and the revenue available for distribution to Hospitals as set forth in 114.6 CMR 11.04 (3)(d)

demonstrates to the Division's satisfaction that it is located more than 25 miles from other acute Hospitals in the Commonwealth and that it provides services for at least 60% of its primary service area.

Specialty Hospital. An acute Hospital qualifying as exempt from the Medicare prospective payment system regulations or any acute Hospital which limits its admissions to patients under active diagnosis and treatment of eyes, ears, nose and throat or to children or patients under obstetrical care.

Surcharge Payer. An individual or entity that (a) makes payments for the purchase of health care Hospital Services and Ambulatory Surgical Center Services; and (b) meets the criteria set forth in 114.6 CMR 11.05(1)(a).

Surcharge Percentage. The percentage assessed on certain payments to Hospitals and Ambulatory Surgical Centers determined pursuant to 114.6 CMR 11.05(2).

Third Party Administrator. An entity that administers payments for health care services on behalf of a client plan in exchange for an administrative fee. A Third Party Administrator may provide client services for a self-insured plan or an insurance carrier's plan. Third Party Administrators will be deemed to use a client plan's funds to pay for health care services whether the Third Party Administrator pays providers with funds from a client plan, with funds advanced by the Third Party Administrator subject to reimbursement by the client plan, or with funds deposited with the Third Party Administrator by a client plan.

Uncompensated Care. The sum of reported net Free Care and net Emergency Bad Debt.

11.03  Reporting Requirements

(1) General. Each Hospital, Community Health Center, Surcharge Payer and Ambulatory Surgical Center shall file or make available information which is required or which the Division deems reasonably necessary for implementation of 114.6 CMR 11.00.

(a) Due Date. For any filing requirement without a specified time for filing, the submission is due 15 days from the date of the request of the Division. The Division may, for cause, extend the filing date. Any request for an extension must be made in writing and submitted to the Division in advance of the filing date.

(b) Patient Level Data. Hospitals and Community Health Centers must make Uncompensated Care Pool patient level data available to the Division upon request. These patient level data include but are not limited to cost data, patient diagnoses and types of uncompensated services provided, patient demographics, write-off amounts, unique patient identifiers, and other such data that enable the Division to conduct analyses, verify eligibility, and calculate settlements on a case-by-case basis.

(c) Audit. The Division may audit data submitted under 114.6 CMR 11.03 to ensure accuracy. The Division may adjust reported Free Care to reflect audit findings.

(2) Hospitals.

(a) UC Form. Each Hospital must submit a DHCFP UC-Form monthly within 45 days after the end of the reporting period.

(b) Unmatched Payer Report. Each Hospital must submit an Unmatched Payer Report to the Division every four months, in accordance with a schedule specified by the Division. The Hospital must report the total amount of payments for services received from each Institutional Payer which does not appear on the Registered Payer List. The hospital must report these data in an electronic format specified by the Division.

(c) Quarterly Report for Private Sector Payments. Each Hospital must report total payments made by the largest Institutional Surcharge Payers. The Division will specify: the Institutional payers for which reporting is required, the periods for which reporting is required, and the reporting format. The Division may modify the reporting requirements from time to time by administrative bulletin. (d) Electronic Data Submission. Each Hospital must submit free care application and claims data to the Division in accordance with the requirements of 114.6 CMR 11.03(6).

(e) Penalties. The Division may deny reimbursement for Free Care to any Hospital which fails to comply with the reporting requirements of 114.6

(3) Community Health Centers

    (a) Free Care Payment Voucher. Each Community Health Center must submit a monthly payment voucher detailing the center's Individual Medical Visits that qualify for Free Care within 45 days after the last day of the designated reporting period.

    (b) Each Community Health Center must, upon request, provide the Division with patient account records and related reports as set forth in 114.6 CMR 11.03(1)(b).

    (c) Electronic Data Submission. Each Community Health Center must submit free care application and claims data to the Division in accordance with the requirements of 114.6 CMR 11.03(6).(d) Penalties. The Division may deny reimbursement for Free Care to any Community Health Center which fails to comply with the reporting requirements of 114.6 CMR 11.00 until such Community Health Center complies with the requirements. The Division will notify Community Health Centers of its intention to withhold reimbursement.

(4) Surcharge Payers.

    (a) Monthly Surcharge Payment Report.
The Division may require certain Institutional Payers to submit reports of payments to Hospitals and Ambulatory Surgical Centers.

    (b) Third Party Administrators.

        1. A Third Party Administrator Surcharge Payer that makes payments to Hospitals and Ambulatory Surgical Centers on behalf of one or more insurance carriers must file an annual report with the Division. The report shall include the name of each insurance carrier for which it makes surcharge payments. The Division may also specify additional reporting requirements concerning payments made on behalf of self insured plans. Reports shall be in an electronic format specified by the Division.

        2. Third Party Administrators must submit annual reports by July 1 of each year for the time period defined by the Division.

    (c) Penalties. Any Surcharge Payer that fails to file data, statistics, schedules, or other information pursuant to 114.6 CMR 11.03 or which falsifies same, shall be subject to a civil penalty of not more than $5000 for each day on which such violation occurs or continues, which penalty may be assessed in an action brought on behalf of the Commonwealth in any court of competent jurisdiction. The Attorney General shall bring any appropriate action, including injunction relief, as may be necessary for the enforcement of the provisions of 114.6 CMR 11.00.

(5) Ambulatory Surgical Centers

    (a). Unmatched Payer Report. Each Ambulatory Surgical Center must submit an unmatched payer report to the Division every four months, in accordance with a schedule specified by the Division. The Ambulatory Surgical Center must report the total amount of payments for services received from each Institutional Surcharge Payer which does not appear on the Registered Payer List. (b) Quarterly Report for Private Sector Payments. Each Ambulatory Surgical Center must report total payments made by the largest Institutional Surcharge Payers. The Division will specify the Institutional Payers for which reporting is required, the periods for which reporting is required, and the reporting format. The Division may modify the reporting requirements from time to time by administrative bulletin.

    (c) Penalties. An Ambulatory Surgical Center that knowingly fails to file with the Division any data required by 114.6 CMR 11.03 or knowingly falsifies the same shall be subject to a $500.00 fine.

(6) Electronic Data Submission Requirements

    (a) Free Care Application Data

        1. Hospitals and Community Health Centers must use electronic free care application software provided by the Division to collect free care application data and must maintain such data in a database as specified by the Division. A provider may continue to use paper applications but must insure that all applications, whether approved or denied, are loaded into its database.2. Each Provider must ensure that its hardware

3. Each Provider must submit application data at least monthly, in accordance with a schedule to be determined by the Division.

(b) Free Care Claims Data

1. Hospitals and Community Health Centers must submit medical claims information for all services for which payment is claimed from the Uncompensated Care Pool. Providers must complete and submit claims, and resubmit failed claims, in accordance with Division specifications.

2. Hospitals will continue to submit UC Forms, and Community Health Centers will continue to submit PV Forms, for payment from the Uncompensated Care Pool.

(c) Other

1. The Division may revise the data specifications, the data collection scheduled, or other administrative requirements from time to time by administrative bulletin.

2. Providers must continue to meet all screening and documentation requirements of 114.6 CMR 10.00

3. Providers must maintain, at a minimum, copies of the signature page of the free care application and all eligibility documentation required by 114.6 CMR 10.00

## 11.04   Payments From and To Hospitals

(1) Revenue Available for Payments to Hospitals for Free Care .

(a) Available revenue for each Fiscal Year consists of:

1. revenues produced by Hospital assessments under 114.6 CMR 11.04
2. revenues produced by the Uncompensated Care Pool Surcharge under 114.6 CMR 11.05,
3. supplemental funding consisting of designated Compliance Liability Revenues; and
4. state appropriations of federal financial participation funds and any other available appropriations and

Available revenue is reduced by:

1. payments to Community Health Centers under 114.6 CMR 11.06;
2. amounts withheld as reserves for contingencies;
3. expenses for administration of the Pool authorized by M.G.L. c. 118G;
4. demonstration projects authorized under M.G.L. c. 118G,s.18 (d)
5. expenses for managed care contracts or interagency service agreements to provide services to individuals eligible for free care as authorized by M.G.L. c. 118G, s.18(j).

(b) Supplemental funding is the primary source of funding for Free Care to Community Health Centers. If this funding source is insufficient, then revenue provided through other sources will be made available. Any supplemental funding remaining after payments to Community Health Centers will be made available for other Pool purposes.

(c) For the purpose of demonstration projects, the Division may contract with health care delivery or management organizations or enter interagency service agreements with the Division of Medical Assistance or the Department of Public Health for contracts with managed health care providers to deliver services to individuals eligible for Free Care. The expenditures for such contracts shall not exceed 10,000,000 dollars annually in  FY 1998 through FY 2002.

1. For Fiscal Years 1998 through 2002, payments for demonstration projects will include the EcuCare Project in North Adams and the Hampshire Health Access Project in Northampton to link uninsured and underinsured individuals and families with health care providers willing to treat such persons at reduced or no costs, in amounts determined by the general court

2. For Fiscal Years 1998 to 2002, inclusive, the Division shall allocate $2,000,000 annually for a Massachusetts Fisherman's Partnership, Inc. Demonstration project.

(d) For FY 1997, supplemental funding shall consist of $15 million transferred from Compliance Liability revenue and shall include amounts used to meet the provisions of 114.6 CMR 11.04(9)c. For FY 1998, supplemental funding shall consist of $4 million transferred from Compliance Liability revenues. For FY 2000, supplemental funding shall consist of $15 million transferred from Compliance Liability revenue. For FY 2001, supplemental

(2) Gross Liability to the Pool. A Hospital's gross liability to the Uncompensated Care pool is the product of (a) the ratio of its Private Sector Charges to all Hospitals' Private Sector Charges and (b) total Hospital liability to the Uncompensated Care pool as determined by the General Court for each Fiscal Year.

(3) Gross Liability to Hospitals. The Uncompensated Care Pool's gross liability to a Hospital is determined by the following calculation:

$$
\begin{array}{ll}
& \text{Total Free Care Charges} \qquad (a) \\
X & \underline{\text{Cost to Charge Ratio}} \qquad (b) \\
= & \text{Allowable Free Care Costs} \qquad (c) \\
- & \underline{\text{Shortfall Allocation Amount}} \qquad (d) \\
= & \text{Pool Liability to Hospitals} \qquad (e)
\end{array}
$$

(a) Hospital Free Care Charges are based on the Uncompensated Care Charges filed with the Division in accordance with 114.6 CMR 11.03.
(b) The Cost to Charge Ratio is calculated in accordance with 114.6 CMR 11.04(4).
(c) Allowable Free Care Costs are the product of total Free Care Charges and the Cost to Charge Ratio.
(d) The Shortfall Amount to be allocated is calculated in the following manner:

      1. determine the ratio of a Hospital's total patient care costs to the sum of all Hospitals patient care costs;
      2. multiply the ratio in 114.6 CMR 11.04(3)(d)1 by the Shortfall Amount;
      3. If the calculated amount in 114.6 CMR 11.04(3)(d)2 is greater than a Hospital's Allowable Free Care Costs, then the shortfall allocation will be limited to a Hospital's Allowable Free Care Costs.
(e) The Pool's gross liability to each Hospital is equal to the Hospital's Allowable Free Care Costs less the shortfall allocation amount.

(4) Calculation of the Cost to Charge Ratio. The Division shall calculate for each Hospital a Cost to Charge Ratio used to determine the Pool's liability to the Hospital. The Cost to Charge Ratio is the sum of each Hospital's inpatient reasonable costs and actual outpatient costs, divided by the Hospital's Gross Patient Service Revenues.
(a) Data Sources. The Division will obtain cost and charge information, including capital cost, malpractice data and organ acquisition costs, from the DHCFP-403 Report. The Division will review the DHCFP-403 Cost Report to ensure that the costs and Charges reported on the DHCFP-403 Report reconcile with those reported on audited financial statements, and are true, accurate, and complete.
For purposes of calculating case-mix indices, the Division will use the merged billing and case-mix information filed pursuant to 114.1 CMR 17.00.
(b) Timing.

      1. The Division will calculate a preliminary Cost to Charge Ratio before the beginning of each Fiscal Year, utilizing data from two years prior to the rate year.
      2. The Division will calculate an interim Cost to Charge Ratio midway through the Fiscal Year when year end financial data from the prior Fiscal Year becomes available.
      3. The Division will calculate a final Cost to Charge Ratio after the end of the Fiscal Year when final audited financial data for the rate year becomes available.
(c) Reasonable Inpatient Costs. The Division will determine reasonable inpatient costs by summing the Hospital's reasonable comparable costs, reasonable capital cost, direct medical education cost, malpractice cost, organ acquisition cost, Hospital-based physician salaries, and adjustments for inpatient Free Care provided by physicians and undocumentable Free Care, if applicable. The calculation is as follows:

Reasonable Inpatient Costs =

    Reasonable comparable costs
    + Reasonable capital expense
    + Direct medical education expense
    + Malpractice expense
    + Organ acquisition expense

applicable
    + Adjustment for undocumentable Free Care, if applicable

The calculation of reasonable comparable costs is set forth in 114.6 CMR
11.04(4)(c)1.
The calculation of reasonable capital expense is set forth in 114.6 CMR
11.04(4)(c)2.
The adjustment for inpatient Free Care provided by physicians is set forth in
114.6 CMR 11.04(4)(c)3.  The adjustment for undocumentable Free Care is set
forth in 114.6 CMR 11.04(4)(c)4.

    1.  Reasonable Comparable Costs.  The Division will use an efficiency
standard to determine reasonable comparable costs.  Reasonable
comparable costs equal the efficiency standard for Hospitals whose
inpatient costs exceed the efficiency standard described below.
Reasonable costs will equal actual costs for Hospitals whose costs do not
exceed the efficiency standard.  Specialty Hospitals, Sole Community
Hospitals, and Public Service Hospitals will not be subject to the
efficiency standard.  The Division will calculate the efficiency standard
as follows:

    a.  First, the Division will determine comparable costs by
    subtracting non-comparable costs from total inpatient costs.
    Non-comparable costs are: capital, direct medical education,
    malpractice, organ acquisition costs, and Hospital-based
    physician salaries.  The methodology and specific data sources
    used to calculate these non-comparable costs will be distributed
    to Hospitals.

        Comparable costs = Total inpatient costs
                    - Capital cost
                    - Direct Medical education cost
                    - Malpractice cost
                    - Organ acquisition cost
                    - Hospital-based physician salaries

    b.  Second, the Division will determine comparable costs per
    discharge by dividing the comparable costs by total discharges.

        Comparable cost per discharge = total comparable costs
                                        total discharges

    c.  Third, the Division will adjust the comparable cost per
    discharge for case mix and wage area.  The case-mix index will
    be calculated using the AP-DRG Grouper (the New York State
    Grouper) and New York weights.  The Grouper version used will
    be appropriate for the ICD-9-CM diagnosis and procedure codes
    of the year from which the financial data is taken.  The wage
    area indices will be those calculated by the Health Care
    Financing Administration (HCFA), and will be applied only to
    the labor portion of costs, also as determined by the Health
    Care Financing Administration. In Pool FY 1999 and forward,
    the wage area indices will be those calculated pursuant to 114.1
    CMR 36.05(2)(c).

        Standardized cost per discharge = Comparable cost per discharge
                                        / case mix index
                                        / wage area index

    d.  Fourth, the Division will calculate the mean standardized
    cost per discharge for all Hospitals weighted by the number of
    discharges in each Hospital.  Specialty Hospitals, Sole
    Community Hospitals, and Public Service Hospitals will be
    excluded from this calculation.  The statewide mean
    standardized cost per discharge is the efficiency standard.
    e.  Fifth, the Division will compare each Hospital's standardized
    cost per discharge to the efficiency standard.
        i. For Hospitals whose own standardized cost per discharge is
        greater than the efficiency standard, the Division will
        calculate reasonable comparable costs as follows.  First, the
        Division will adjust the efficiency standard for wage area and
        case-mix.  The wage area index will be applied only to the
        labor portion of costs, as determined by the Health Care

total discharges to determine reasonable comparable costs.

Reasonable adjusted cost per discharge =
      Efficiency standard
      x wage area index
      x case mix index

Reasonable comparable costs =
      Reasonable adj. cost per discharge
      x total discharges

(ii) For Hospitals whose standardized cost per discharge is less than the efficiency standard, and for Specialty Hospitals, Sole Community Hospitals and Public Service Hospitals, the Division will determine that reasonable comparable costs are equal to actual comparable costs as calculated in 114.6 CMR 11.04(4)(c)1a.

2. Reasonable inpatient capital costs. Inpatient capital costs will be held to reasonable limit. In Pool FY97 and forward, the Division will include in reasonable costs only capital costs equal to or below of the reasonable capital cost limit. The Division will determine reasonable inpatient capital costs as follows:

a. The Division will calculate inpatient capital costs per discharge by dividing total capital costs allocated to inpatient by total discharges.

b. The Division will adjust inpatient capital costs per discharge for case mix. The case-mix index will be calculated using the AP-DRG Grouper (the New York State Grouper) and New York weights. The Grouper version used will be appropriate for the ICD-9-CM diagnosis and procedure codes of the year from which the financial data is taken.

c. The Division will determine the case-mix adjusted capital costs limit (CMCCL) by first sorting each acute care Hospital's adjusted costs in ascending order, and then producing a cumulative frequency of discharges. The CMCCL is established at the case-mix adjusted capital cost per discharge corresponding to the median discharge for the FY93 cost to charge calculation, and multiplied by an inflation factor. The year to year inflation factors are: 3.01% for FY94; 2.80% for FY 95; 1.8% for FY96; 1.0% for FY97; no adjustment for FY 98, 0.8% for FY99; no adjustment for FY 00; and 0.9% for FY 01. Sole Community Hospitals, Specialty Hospitals, and Public Service Hospitals will be excluded from this calculation.

d. Each Hospital's case-mix adjusted capital cost per discharge determined in 114.6 CMR 11.04(4)(c)2b is then compared to the case-mix adjusted capital costs limit (CMCCL) calculated in 114.6 CMR 11.04(4)(c)2c.

e. For Hospitals whose own case-mix adjusted capital cost per discharge is less than or equal to the CMCCL, reasonable capital cost per discharge is equal to the Hospital's actual adjusted capital cost per discharge multiplied by the Hospital's case-mix index.

For Hospitals whose own case-mix adjusted capital cost per discharge is greater than the CMCCL, the reasonable capital cost per discharge is equal to the product of a) the CMCCL, and b) the Hospital's case-mix index.

f. The Division will determine reasonable inpatient capital costs by multiplying the reasonable capital cost per discharge calculated in 114.6 CMR 11.04(4)(c)2.e. by total discharges. For Sole Community Hospitals, Specialty Hospitals, and Public Service Hospitals, reasonable inpatient capital costs equal actual inpatient capital costs.

3. Allowance for Free Care Provided by Physicians. The Division will increase the reasonable costs of qualifying Disproportionate Share Hospitals to include an allowance for Free Care provided by physicians.

a. The Division will allocate $2,500,000 for this allowance.

b. Hospitals will qualify for the allowance for Free Care provided by physicians if they qualify for the High Public Payer Hospital

c. The Division will determine Allowable Free Care Costs pursuant to 114.1 CMR 36.07(2). For the final Cost to Charge Ratio Calculations, the Division will incorporate the methodology used to determine the High Public Payer Hospital Disproportionate Share Adjustment, pursuant to 114.1 CMR 36.07(2), for the rate year consistent with the Cost to Charge Ratio being processed. For preliminary and interim Cost to Charge Ratio calculations, the Division will incorporate the methodology used to determine the High Public Payer Hospital Disproportionate Share Adjustment, pursuant to 114.1 CMR 36.07(2), for the latest available year.

d. The Division will then determine the sum of the amounts determined pursuant to 114.6 CMR 11.04(4)(c)3e for all Hospitals that qualify for an allowance for Free Care provided by physicians.

e. Each Hospital's allowance for Free Care provided by physicians is equal to $2,500,000 times the ratio of the Hospital's Allowable Free Care Costs determined in 114.6 CMR 11.04(4)(c)3c to the total Allowable Free Care Costs of all qualifying Hospitals determined in 114.6 CMR 11.04(4)(c)3d.

f. The Division will increase the reasonable costs of eligible Hospitals by "grossing up" the allowance to the level of total costs. The Division will divide the allowance for each Hospital pursuant to 114.6 CMR 11.04(4)(c)3e by the ratio of allowable Free Care Charges to total Charges pursuant to 114.6 CMR 11.04(4)(c)3c. The resulting amount will be added to total reasonable costs for the Hospital.

g. The Division will complete this calculation before the beginning of the Fiscal Year.

h. A Hospital which receives an allowance for the cost of Free Care provided by physicians must use the portion of Uncompensated Care Pool payments attributable to such allowance to reimburse such physicians for such Free Care.

4. Allowance for Undocumentable Free Care. The Division will increase the reasonable costs of qualifying Disproportionate Share Hospitals to include an allowance for undocumentable Free Care. This allowance is intended to contribute toward reimbursing Hospitals for Free Care provided to patients who are incapable of providing documentation of Free Care eligibility, but are patients who the Hospital has strong reason to believe would qualify for Free Care.

a. The Division will allocate $1,000,000 for this allowance.

b. Hospital will qualify for the allowance for Undocumentable Free Care if they qualify for the High Public Payer Hospital Disproportionate Share Adjustment pursuant to 114.1 CMR 36.07(2).

c. The Division will determine Allowable Free Care Costs pursuant to 114.1 CMR 36.07(2). For the final Cost to Charge Ratio Calculations, the Division will incorporate the methodology used to determine the High Public Payer Hospital Disproportionate Share Adjustment, pursuant to 114.1 CMR 36.07(2), for the rate year consistent with the Cost to Charge Ratio being processed. For preliminary and interim Cost to Charge Ratio calculations, the Division will incorporate the methodology used to determine the High Public Payer Hospital Disproportionate Share Adjustment, pursuant to 114.1 CMR 36.07(2), for the latest available year.d. The Division will then determine the sum of the amounts determined pursuant to 114.6 CMR 11.04(4)(c)4c for all Hospitals that qualify for an allowance for undocumentable Free Care.

e. Each Hospital's allowance for undocumentable Free Care is equal to $1,000,000 times the ratio of the Hospital's Allowable Free Care Costs determined in 114.6 CMR 11.04(4)(c)4c to the total Allowable Free Care Costs of all qualifying Hospitals determined in 114.6 CMR 11.04(4)(c)4d.

f. The Division will increase the reasonable costs of eligible Hospitals by "grossing up" the allowance to the level of total costs. The Division will divide the allowance for each Hospital pursuant to 114.6 CMR 11.04(4)(c)4e by the ratio of allowable

costs.

g. The Division will complete this calculation before the beginning of the Fiscal Year.

(5) Estimated Monthly Payments. The Division will calculate each Hospital's payment to and from the Uncompensated Care Pool for a Fiscal Year by estimating its liability to and from the Uncompensated Care Pool and crediting any payments made to and from the Uncompensated Care Pool for each Fiscal Year.

(a) Estimated Hospital Liability to Pool. The Division will calculate and process monthly Hospital payments. The Division will calculate the estimated liability based on data contained in each Hospital's most recently submitted UC Forms for Private Sector Charges, Free Care Charges and Emergency Bad Debt Charges. The Division will estimate the Hospital's annual gross liability to the pool by multiplying its Private Sector Charges times the ratio of total Hospital liability to the pool to total Private Sector Charges for all Hospitals. The Division will notify each Hospital of its calculations of estimated liability.

(b) If a Hospital does not report the data required to calculate the Hospital's payment, the Division may substitute the required data elements with relevant industry averages, prior year reports by the Hospital, or other appropriate data.

(c) The Division may adjust payments to reflect Uncompensated Care Pool expenses for activities authorized in M.G.L. c. 118G and to reflect major changes including, but not limited to, Hospital closures, mergers, and changes in ownership.

(d) The Division may borrow against the penalty, late fee, and interest revenue collected pursuant to 114.6 CMR 11.04(8) to cover unpaid liabilities until such time as these liabilities may be collected.

(6) Final Settlements.

(a) General. There will be a final settlement between the Uncompensated Care Pool and a Hospital for a Fiscal Year. The Final Settlement will be calculated based upon the hospital's gross liability to the Pool as determined pursuant to 114.6 CMR 11.04(2), the Pool's gross liability to the Hospital as determined pursuant to 114.6 CMR 11.04(3), and the payments made to the Hospital during the Fiscal Year. If the difference is positive, the difference is the amount of the hospital's liability to the Pool. If the difference is negative, the difference is the amount of the Pool's liability to the Hospital.

(b) Calculation. The Final Settlement will occur upon completion of the relevant audit and calculations by the Division for that Fiscal Year. Final settlements will be determined using actual Private Sector Charges, final Cost to Charge Ratios and actual Free Care Charges, adjusted for any audit findings; and will include interim payment reconciliations, special payments, and estimated payments to and from the Uncompensated Care Pool.

(c) The Division may use penalty and interest revenue collected pursuant to 114.6 CMR 11.04(8) to cover (1) unpaid liabilities from the settlement year that the Division determines to be uncollectible, (2) payments for free care to Community Health Centers, and (3) Shortfall Amounts for any fiscal year.

(7) Administrative Adjustment. A Hospital may request an administrative adjustment if it maintains that the Division's determination of the Hospital's Pool liability for Estimated Monthly Payments or Final Settlement contains a mechanical error. In order to request an adjustment, the Hospital must:

(a) submit a written request which describes the technical errors for which the Hospital seeks correction within 21 days of receiving notice of the Division's determination;

(b) submit documentation supporting the request, including documentation of proposed data changes if the Hospital claims that the calculation used incorrect data;

(c) If the Hospital's request does not contain the required information, the Division will give the Hospital written notice that it must supply the missing information within ten days. If the Hospital fails to comply with this notice, the Division will deny the Hospital's request for administrative review.

(d) After reviewing the documentation, the Division will issue a written decision. The decision will state whether the Division will adjust the Division's determination of net payment to or from the pool and will explain the reasons for this decision.

(8) Penalties.

will calculate the penalty from the due date. The Division will assess an additional 1.5% penalty against the outstanding balance and prior penalties for each month that a Hospital remains delinquent. The Division will credit partial payments from delinquent Hospitals to the current outstanding liability. If any amount remains, the Division will then credit it to the penalty amount.

(b) The Division may reduce a Hospital's penalty at the Division's discretion. In determining a waiver or reduction, the Division's consideration will include, but will not be limited to, the Hospital's payment history, financial situation, and relative share of the payments to the Uncompensated Care Pool.

(c) The Division may adjust the cost to charge ratio of any hospital that fails to submit required data, including but not limited to, DHCFP-403 or case mix data. The hospital's allowable free care reimbursement will be reduced by 5% for each month the hospital fails to file the required data. Failure to file the required data for more than two consecutive years may lead to denial of free care reimbursement.

(9) Other Provisions.

(a) The Division may adjust Pool calculations to reflect determinations made under eligibility and compliance audits pursuant to 114.6 CMR 10.00.

(b) Effective FY 1997, the Martha's Vineyard Hospital, Inc. will have no further liability to or from the Uncompensated Care Pool.

(c) For the Commonwealth's FY 1997 and 1998, beginning July 1 1996 and July 1, 1997, respectively, any Specialty Hospital that provides Free Care and whose gross outpatient service revenue equals at least 80% of its total Gross Patient Service Revenue as of January 1, 1996, will be exempt from the provisions of 114.6 CMR 11.04. The Division will determine the amount owed to the pool for these Fiscal Years by the Specialty Hospital. The Division will transfer from Compliance Liability revenues into the Uncompensated Care Pool an amount equal to the amount owed by the Specialty Hospital for state Fiscal Years 1997 and 1998.

(d) Beginning in FY 1997, the Uncompensated Care Pool will make a one-time payment to Hospitals as early in the Fiscal Year as is administratively feasible. The total amount of this payment to all hospitals will equal the amount of supplemental funding available, less any amount transferred pursuant to 114.6 CMR 11.04(9)(c). This payment will be allocated to individual Hospitals in accordance with 114.6 CMR 11.04(4), using the preliminary Cost to Charge Ratio. The Division may offset any funds distributed under 11.04(9)(d) by any amounts owed by Hospitals for current or prior years' unpaid liabilities. These payments will be included in final settlements calculated pursuant to 114.6 CMR 11.04(6).

11.05   Surcharge on Hospital Payments.

(1) General. There is a surcharge on certain payments to Hospitals and Ambulatory Surgical Centers. The surcharge amount equals the product of (a) payments subject to surcharge as defined in 114.6 CMR 11.05(1)(b) and (b) the Surcharge Percentage as defined in 114.6 CMR 11.05(2).

(a) Surcharge Payer.

1. A Surcharge Payer is an individual or entity that makes payments for the purchase of health care Hospital Services and Ambulatory Surgical Center Services; provided, however, that the term "surcharge payer" shall not include (1) Title XVIII and Title XIX programs and their beneficiaries or recipients; (2) other governmental programs of public assistance and their beneficiaries or recipients; and (3) the workers compensation program established pursuant to M.G.L. c.152.

2. The same entity that pays that Hospital or ambulatory surgical center for services must pay the surcharge. If an entity such as a Third Party Administrator acts on behalf of a client plan and uses the client plan's funds to pay for the services, or advances funds to pay for the services for which it is reimbursed by the client plan, it must also act on behalf of the client plan and use the client plan's funds to pay the surcharge or advance funds to pay the surcharge for which it will be reimbursed by the client plan.

(b) Payments subject to surcharge. Payments subject to surcharge include:

1. direct and Indirect Payments made by Surcharge Payers on or after January 1, 1998, regardless of the date services were provided, to:(1) Massachusetts acute hospitals for the purchase of acute Hospital

2. payments made by national health insurance plans operated by foreign governments; and payments made by an embassy on behalf of a foreign national not employed by the embassy.

(c) Payments not subject to surcharge. Payments not subject to surcharge include:

1. payments, settlements and judgments arising out of third party liability claims for bodily injury which are paid under the terms of property or casualty insurance policies;
2. payments made on behalf of Medicaid recipients, Medicare beneficiaries, or persons enrolled in policies issued pursuant to chapter 176K or similar policies issued on a group basis;
3. payments made by a Hospital to a second Hospital for services which the first Hospital billed to a Surcharge Payer;
4. payments made by a group of providers, including one or more Massachusetts acute care Hospitals or Ambulatory Surgical Centers, to member Hospitals or Ambulatory Surgical Centers for services which the group billed to an entity licensed or approved under M.G.L. c.175, c.176A, c.176B, c.176G, or c.176I;
5. payments made on behalf of an individual covered under the Federal Employees Health Benefits Act at 5 U.S.C. 8901 et seq.;
6. payments made on behalf of an individual covered under the workers compensation program under M.G.L. c. 152; and
7. payments made on behalf of foreign embassy personnel who hold a Tax Exemption Card issued by the United States Department of State.

(d) The surcharge shall be distinct from any other amount paid by a Surcharge Payer for the services provided by a Hospital or Ambulatory Surgical Center. Surcharge amounts paid shall be deposited in the Uncompensated Care Pool.

(2) Calculation of the Surcharge Percentage. The Division will use the following methodology to calculate the percentage of the surcharge to be assessed on certain payments to Hospitals and Ambulatory Surgical Centers, established in M.G.L. c.118G, s.18A, as added by St. 1997, c. 47.

(a) The Division will project FY 1998 annual aggregate payments subject to the surcharge as follows. The following data will be obtained for Pool FY 1996, or adjusted for inflation to Pool FY 1996.

1. The Division will determine total payments received by Massachusetts acute care Hospitals from private managed care, non-managed care, and self-pay payers by subtracting bad debt written off and gross payments from the Pool allocated to those payers from net patient service revenue allocated to those payers, as reported on the DHCFP-403 cost report.
2. The Division will determine total payments received by Massachusetts Ambulatory Surgical Centers for Ambulatory Surgical Center Services from private managed care, non-managed care, and self-pay payers from data reported by these centers to the Division.
3. The Division will determine payments from HMOs licensed in Massachusetts to Massachusetts acute care Hospitals and Ambulatory Surgical Centers that are exempt from the surcharge from data provided by these HMOs to the Division.
4. The Division will estimate the amount of payments, settlements and judgments arising out of third party liability claims for bodily injury which are paid under the terms of property or casualty insurance policies based on data provided by the Auto Insurers Bureau.
5. The Division will estimate the amount of surcharge payments that will be below the threshold for collection based on sample data provided by Hospitals.
6. The Division will make an allowance for uncollectible amounts.
7. The Division will add the amounts determined in 114.6CMR11.05(2)(a) 1 and 2 of this section and subtract the amounts determined in 3, 4, 5 and 6 of this section. The Division will then adjust this total amount of FY 1996 payments subject to the surcharge to reflect price changes between FY 1996 and FY 1998. The Division will use a blend of the HCFA market basket and the Massachusetts Consumer Price Index (CPI) to reflect conditions in the Massachusetts economy. Specifically, the labor-related component of the HCFA market basket will be replaced by the CPI.

(b) The Division will calculate the Surcharge Percentage effective January 1, 1998 as follows, in order to ensure that the amount loaned to the Pool will be fully repaid to the General Fund by June 30, 1998.

    1. The Division will multiply $100,000,000 by 2/12 and add this product to $100,000,000, in order to account for the two month delay in payment of the surcharge.

    2. The Division will multiply the projected FY 98 annual aggregate payments subject to the surcharge, determined pursuant to 114.6 CMR 11.05(2)(a), by 9/12, in order to collect the full amount of the surcharge in nine months.

    3. The Division will divide the amount determined in 114.6 CMR 11.05(2)(b)1 by the amount determined in 114.6 CMR 11.05(2)(b)2.

This calculation can be expressed as the following formula.

PAAPSS = projected annual aggregate payments subject to the surcharge

Surcharge Percentage effective January 1, 1998 =

[100,000,000 + ((2/12)*100,000,000)] / [ (9/12) * FY 98 PAAPSS]

(c) If the Division projects that the Surcharge Percentage established in 114.6 CMR 11.05(2)(b) will produce less than $90,000,000 or more than $100,000,000 by September 30, 1998, or that an adjustment is necessary in order to fully repay the General Fund by June 30, 1998 then the Division may redetermine the Surcharge Percentage as of May 1, 1998 and as of July 1, 1998 pursuant to the following methodology.

    1. The Division will project FY 98 annual aggregate payments subject to the surcharge based on historical data, with any adjustments the Divisions deems necessary.

    2. The Division will multiply $100,000,000 by two twelfths (2/12) and add this product to $100,000,000, in order to account for the two month delay in payment of the surcharge.

    3. The Division will multiply the projected FY 98 annual aggregate payments subject to the surcharge, determined pursuant to 114.6 CMR 11.05(3)(c)1, by nine twelfths (9/12), in order to collect the full amount of the surcharge in nine months.

    4. The Division will divide the amount determined in 114.6 CMR 11.05(3)(c)2 by the amount determined in 114.6 CMR 11.05(2)(c)3.

This calculation can be expressed as the following formula.

PAAPSS = projected annual aggregate payments subject to the surcharge

Surcharge Percentage effective May 1, 1998 or July 1, 1998 =

[100,000,000 + ((2/12)*100,000,000)] / [ (9/12) * FY 98 PAAPSS]

(d) The Division will establish the Surcharge Percentage effective October 1 of 1998 and each successive year before September 1 of each year, using the following methodology.

    1. The Division will determine the total amount to be collected by adjusting $100,000,000 for any over or under collections from Institutional Payers and individuals in previous years, including audit adjustments, as well as any over or under collections projected for October or November of the coming year.

    2. The Division will project annual aggregate payments subject to the surcharge based on historical data, with any adjustments the Division deems necessary.

    3. The Division will divide the amount determined in 114.6 CMR 11.05(2)(d)1 by the amount determined in 114.6 CMR 11.05(2)(d)2.

(3) Payer Registration.

    (a) Except for non-United States national insurers which have made less than ten payments per year in the prior three years to Massachusetts Hospitals and/or Ambulatory Surgical Centers, all Institutional Payers must register with the Division by completing and submitting the Uncompensated

Division before December 10, 1997 for Pool Fiscal Year 1998; or within 30 days after making a payment to any Massachusetts Hospital or Ambulatory Surgical Center.

(b) Registered Payer List. The Division will compile lists of registered Institutional Payers, and will update the lists quarterly. The Division will distribute these lists to Hospitals and Ambulatory Surgical Centers.

(c) Institutional Payers must register only once. A Registered Payer is automatically registered for the next Fiscal Year.

(4) Billing Process for Institutional Payers.

(a) Each Hospital and Ambulatory Surgical Center shall send a bill for the Uncompensated Care Pool surcharge to Surcharge Payers, as required by c.118G, s.18A (b). Hospitals and Ambulatory Surgical Centers shall send this bill to Surcharge Payers from whom they have received payment for services in the most recent four quarters for which data is available. The bill will state the Surcharge Percentage. Hospitals and Ambulatory Surgical Centers shall send this bill to payers before September 1 of each Fiscal Year and before the effective date of any Surcharge Percentage.

(b) Each Hospital and Ambulatory Surgical Center shall also send a bill for the surcharge at the same time as the bill for services provided to Institutional Payers who have not registered with the Division pursuant to 114.6 CMR 11.05(3)(a) and from whom they have received payment. The bill must be sent within 30 days of receiving the payment from the unregistered payer. The bill shall state the Surcharge Percentage, but not the dollar amount owed, and shall include notification of the surcharge payment process set forth below, as well as a registration form specified by the Division. Until the Hospital or Ambulatory Surgical Center receives the Registered Payer List, it shall send a bill for the surcharge at the same time as the bill for services provided to Institutional Payers which it did not already bill pursuant to 114.6 CMR 11.05(4)(a).

(5) Payment process for Institutional Payers

(a) Monthly Surcharge Liability. After the end of each calendar month, each Institutional Payer shall determine the surcharge amount it owes to the Pool for that month. The amount owed is the product of the amount of payments subject to surcharge, as defined in 114.6 CMR 11.02, by the Surcharge Percentage in effect during that month. The Institutional Payer may adjust the surcharge amount owed for any surcharge over- or under-payments in a previous period.

1. Institutional Payers that pay a global fee or capitation for services that include Hospital or ambulatory surgical services, as well as other services not subject to the surcharge, must develop a reasonable method for allocating the portion of the payment intended to be used for services provided by Hospitals or Ambulatory Surgical Centers. Such Institutional Payers must file this allocation method with the Division before January 1, 1998 for Pool Fiscal Year 1998; before October 1, 1998 for Pool Fiscal Year 1999; and before each successive October 1 for future Pool years. If there is a significant change in the global fee or capitation payment arrangement that necessitates a change in the allocation method, the Institutional Payer must file the new method with the Division before the new payment arrangement takes effect. Institutional Payers may not change the allocation method later in the year unless there is a significant change in the payment arrangement.

a. The Division will review allocation plans within 90 days of receipt. During this review period the Division may require an Institutional Payer to submit supporting documentation or to make changes in this allocation method if it finds that the method does not reasonably allocate the portion of the global payment or capitation intended to be used for services provided by Hospitals or Ambulatory Surgical Centers.

b. An Institutional Payer must include the portion of the global payment or capitation intended to be used for services provided by Hospitals or Ambulatory Surgical Centers, as determined by this allocation method, in its determination of payments subject to surcharge.

2. An Institutional Payer must include all payments made as a result of settlements, judgments or audits in its determination of payments subject to surcharge. An Institutional Payer may include payments

as a credit in its determination of payments subject to surcharge.

(b) Monthly Payments. Institutional Payers shall make payments to the Pool monthly. Each Institutional Payer shall remit the surcharge amount it owes to the Pool, determined pursuant to 114.6 CMR 11.05(5)(b), to the Division for deposit in the Pool. Institutional Payers shall remit the surcharge payment by the first business day of the second month following the month for which the surcharge amount was determined. For example, surcharge payments based on payments made to Hospitals and Ambulatory Surgical Centers in January are due to the Pool on March 1.

(c) Biannual Surcharge Payment Option.

1. Eligible Surcharge Payers. The Division will review each registered Surcharge Payer's payment history to determine if it is eligible for this option. In order to qualify, the Surcharge Payer must:

a. have remitted required surcharge payments and submitted all monthly coupons and the Surcharge Verification Form for the period January, 1998 through June, 1999; and

b. have reported payments less than $10,000 in the Surcharge Verification Form.

2. Ambulatory Surgical Centers, which are required to remit monthly surcharge payments due from self payers, may be eligible if they meet the criteria listed above. Hospitals must continue to file monthly notices.

3. The Division will notify payers eligible for the biannual option. The Payer may elect to receive biannual surcharge notices or to continue to receive monthly notices. Each biannual surcharge payments will equal (1) the appropriate surcharge percentage times (2) payments made to Massachusetts hospitals and ambulatory surgical centers for the prior six months.

(d) All surcharge payments must be payable in United States dollars and drawn on a United States bank. The Division will assess a $30 penalty on any Surcharge Payer whose check is returned for insufficient funds.

(e) Any Institutional Payer, except Third Party Administrators, which has a surcharge liability of less than five dollars in any month or biannual payment period may delay payment until its surcharge liability is at least five dollars. For example, XYZ Company's surcharge liability for July is $3.50 and its liability for August is $2.00. XYZ Company may delay payment in July but must remit a check for $5.50 in August.

(6) Payment process for Individual Payers (Self-pay). There is a surcharge on certain payments made by Individual Payers to Hospitals and Ambulatory Surgical Centers.

(a) Billing.

1. Hospitals and Ambulatory Surgical Centers shall include the surcharge amount on all bills to Individual Payers unless:

a. the patient's liability is less than the individual payment threshold determined by the Division. The individual payment threshold is a payment of $10,000 or more.

b. the patient is a non- Massachusetts resident for which the Hospital or Ambulatory Surgical Center can verify that the patient's family income would otherwise qualify the patient for Free Care according to the requirements of 114.6 CMR 10.03

c. the patient is approved for Medical Hardship in accordance with the requirements of 114.6 CMR 10.03(3). The bill shall direct Individual Payers to pay the surcharge to the Hospital or Ambulatory Surgical Center when making payment for services.

2. The amount of the surcharge billed is the product of (a) the patient's liability to the Hospital or Ambulatory Surgical Center, and (b) the Surcharge Percentage in effect on the billing date.

3. The amount of the surcharge owed by an Individual Payer is the product of (a) the total amount paid by the individual to a Hospital or Ambulatory Surgical Center; and (b) the Surcharge Percentage in effect on the payment date. Payments greater than or equal to the threshold received by Hospitals and Ambulatory Surgical Centers from Individual Surcharge Payers are subject to the surcharge.

(b) Hospitals and Ambulatory Surgical Centers must remit to the Division the surcharge amount owed by Individual Payers for every payment greater than or equal to the threshold made by Individual Payers. If an Individual Payer makes separate payments over a twelve month period which are equal to or

outpatient visit or inpatient stay. The first surcharge payment is due to the Division when the total Individual Payer payment amount reaches the threshold.

(c) Hospitals and Ambulatory Surgical Centers shall remit such surcharge payments by the first business day of the second month following the month during which the surcharge was received. For example, surcharge payments received by Hospitals and Ambulatory Surgical Centers in January are due to the Pool on March 1. Hospitals and Ambulatory Surgical Centers may deduct collection agency fees for the collection of surcharge payments from Individual Payers from the total amount of surcharge payments forwarded to the Pool.

(d) All payments must be payable in United States dollars and drawn on a United States bank. The Division will assess a $30 penalty on any Surcharge Payer whose check is returned for insufficient funds.

(e) If an embassy of a foreign government pays a hospital or ambulatory surgical center bill on behalf of an individual, the provider may either: (a) bill the embassy for the individual's surcharge according to the billing and payment process for individual payers set forth in 114.6 CMR 11.05(6) or (b) bill the embassy according to the billing process for Institutional Payers as set forth in 114.6 CMR 11.05(4). If the provider chooses to bill the embassy as an Institutional Payer and the embassy is not listed on the Registered Payer List, the provider shall include the embassy on the Unmatched Payer Report and send surcharge payer registration information to the embassy.

(7) Penalties.
   (a) If a Hospital, Ambulatory Surgical Center, or Surcharge Payer fails to forward surcharge payments pursuant to 114.1 CMR 11.05, the Division shall impose an additional 1.5% interest penalty on the outstanding balance. The interest shall be calculated from the due date. For each month a payment remains delinquent, an additional 1.5% penalty shall accrue against the outstanding balance, including prior penalties.
      1. The Division will credit partial payments first to the current outstanding liability, and second to the amount of the penalties.
      2. The Division may reduce the penalty at the Division's discretion. In determining a waiver or reduction, the Division's consideration will include, but will not be limited to, the entity's payment history, financial situation, and relative share of the payments to the Uncompensated Care Pool.
   (b) The Division may deny reimbursement for Free Care to any Hospital which fails to remit surcharge payments as required by 114.6 CMR 11.05(4)(b) until such Hospital remits the required amounts. The Division will notify such Hospital of its intention to withhold reimbursement.

(8) Administrative Review. The Division may conduct an administrative review of surcharge payments at any time.
   (a) The Division will review data submitted by Hospitals, Ambulatory Surgical Centers, and Institutional Payers pursuant to 114. CMR 11.03, the Uncompensated Care Pool Surcharge Payer Registration forms submitted by Institutional Payers pursuant to 114.6 CMR 11.05(3)(a), and any other pertinent data. All information provided by, or required from, any Surcharge Payer, pursuant to 114.6 CMR 11.00 shall be subject to audit by the Division.
      For surcharge payments based upon a global fee or capitation allocated according to an allocation method accepted by the Division pursuant to 11.05(5)(a)1, the Division's review will be limited to determining whether this method was followed accurately and whether the amounts reported were accurate.
   (b) The Division may require the Surcharge Payer to submit additional documentation reconciling the data it submitted with data received from Hospitals.
   (c) If the Division determines through its review that a Surcharge Payer's payment to the Pool was materially incorrect, the Division may require a payment adjustment. Payment adjustments shall be subject to interest penalties and late fee, pursuant to 114.6 CMR 11.05(7), from the date the original payment was owed to the Pool. Payment adjustments may also be offset from Division of Medical Assistance payments, pursuant to 114.6 CMR 11.07(1).
   (d) Processing of Payment Adjustments.
      1. Notification. The Division shall notify a Surcharge Payer of its proposed adjustments. The notification shall be in writing and shall

137

2. Objection Process. If a Surcharge Payer wishes to object to a Division proposed adjustment contained in the notification letter, it must do so in writing, within 15 business days of the mailing of the notification letter. The Surcharge Payer may request an extension of this period for cause. The written objection must, at a minimum, contain:

    a. each adjustment to which the Surcharge Payer is objecting,
    b. the Fiscal Year for each disputed adjustment,
    c. the specific reason for each objection, and
    d. all documentation which supports the Surcharge Payer's position.

3. Upon review of the Surcharge Payer's objections, the Division shall notify the Surcharge Payer of its determination in writing. If the Division disagrees with the Surcharge Payer's objections, in whole or in part, the Division shall provide the Surcharge Payer with an explanation of its reasoning.

4. The Surcharge Payer may request a conference on objections after receiving the Division's explanation of reasons. The Division will schedule such conference on objections only when it believes that further articulation of the Surcharge Payer's position is beneficial to the resolution of the disputed adjustments.

(e). Payment of Adjustment Amounts. Adjustment amounts and any interest penalty and late fee amounts shall be due to the Pool 30 calendar days following the mailing of the Notification letter issued pursuant to 114.6 CMR 11.05(8)(d)1. If the Surcharge Payer submitted a written objection, then adjustment amounts and any interest penalty and late fee amounts shall be due to the Pool 30 calendar days following the mailing of the Division's determination issued pursuant to 114.6 CMR 11.05(8)(d)3. The Division may establish a payment schedule for adjustment amounts, pursuant to 114.6 CMR 11.03(5)(d).

11.06  Payments to Community Health Centers

(1) The rate for each Community Health Center for an Individual Medical Visit is $85.47.

    (A) Full Free Care.

        (i) The Division will pay for an Individual Medical Visit at a percentage of the rate based on the following table:

| | |
|---|---|
| Physician | 100% |
| Nurse Practitioner, Nurse Midwife or Physician Assistant | 100% |
| Clinical Psychologist | 50% |
| Licensed Social Worker | 50% |

        (ii) The Division will pay the following amounts for services provided on-site at the Community Health Center:

| | |
|---|---|
| Ancillary Laboratory | 25% of Charges |
| Ancillary Radiology | 25% of Charges |
| Ancillary Miscellaneous | 25% of Charges |

    (B) Partial Free Care and Medical Hardship. The Division will pay for services, in excess of the patient contribution, provided to patients who meet the criteria set forth in 114.6 CMR 10.03(2) for Partial Free Care or 114.6 CMR 10.03(3) for Medical Hardship.

(2) The Division will pay for an Individual Dental Visit at 75% of the Individual Medical Visit rate. An Individual Dental Visit shall consist of two or fewer procedures as defined by 114.3 CMR 14.00. A payment of $17.90 will be made for each additional procedure completed during a single Individual Dental Visit. The Division will pay for services, in excess of the patient contribution, provided to patients who meet the criteria set forth in 114.6 CMR 10.03(2) for Partial Free Care or 114.6 CMR 10.03(3) for Medical Hardship.

(3) Providers shall render and complete appropriate services to patients who meet the criteria for Full Free Care, Partial Free Care, or Medical Hardship as set forth in 114.6 CMR 10.03 within time frames comparable to those for patients who do not meet said criteria.

11.07  Special Provisions

(1) Division of Medical Assistance (DMA) payment offset for Hospitals and Surcharge Payers. If a Hospital or Surcharge Payer fails to make scheduled payments and maintains an outstanding obligation to the Pool for more than 45 days, the

450.101, or any successor in interest to the Hospital or Surcharge Payer, in the amount of payment owed to the Uncompensated Care Pool, including accrued interest, penalties and late fee. Payments offset in accordance with this provision shall be credited to the Hospital's or Surcharge Payer's outstanding liability to the Pool.

(a) The Division shall notify the Hospital or Surcharge Payer in writing of the dollar amount to be offset from the Surcharge Payer's DMA claims. Such notification shall be sent to the Hospital or Surcharge Payer via certified mail at least ten days prior to notifying DMA.

(b) If a Hospital or Surcharge Payer believes the amount to be offset is incorrect because of an arithmetic, mechanical or clerical error, it may object in writing during this ten day period to the Division of Health Care Finance and Policy. The written objection must contain an explanation of the perceived error as well as documentation to support the Hospital's or Surcharge Payer's objection. No objection by the Hospital or Surcharge Payer regarding the payment offset is appealable to DMA.

(c) Upon review of the Hospital's or Surcharge Payer's objections, the Division shall notify the Hospital or Surcharge Payer of its determination in writing. If the Division disagrees with the Hospital's or Surcharge Payer's objections, in whole or in part, the Division shall provide the Surcharge Payer with an explanation of its reasoning.

(d) The Division shall notify DMA in writing of the dollar amount to be offset from the Hospital's or Surcharge Payer's DMA claims.

(e) Hospitals and Surcharge Payers to which payment is offset must serve all Title XIX recipients in accordance with the contract then in effect with the Division of Medical Assistance, or, in the case of a non-contracting Hospital or Disproportionate Share Hospital, in accordance with its obligation for providing services to Title XIX recipients pursuant to M.G.L. c. 118G.

(2) Financial Hardship. A Hospital or Surcharge Payer may request a deferment or partial payment schedule due to financial hardship.

(a) In order to qualify for such relief, the Hospital or Surcharge Payer must demonstrate that its ability to continue as a financially viable going concern will be seriously impaired if payments pursuant to 114.6 CMR 11.04 or 114.6 CMR 11.05 were made.

(b) If the Division finds that payments would be a financial hardship, the Division may, at its discretion, establish the terms of any deferment or partial payment plan deferment. The deferment or payment schedule may include an interest charge.

1. The interest rate used for the payment schedule shall not exceed the prime rate plus 2%. The prime rate used shall be the rate reported in the *Wall Street Journal* dated the last business day of the month preceding the establishment of the payment schedule.

2. A Surcharge Payer may make a full or partial payment of its outstanding liability at any time without penalty.

3. If a Surcharge Payer fails to meet the obligations of the payment schedule,

the Division may assess penalties pursuant to 114.6 CMR 11.05.

(3) Severability. The provisions of 114.6 CMR 11.00 are severable. If any provision or the application of any provision to any Hospital, Community Health Center, surcharge payer or Ambulatory Surgical Center or circumstances is held to be invalid or unconstitutional, and such invalidity shall not be construed to affect the validity or constitutionality of any remaining provisions of 114.60 CMR 11.00 or the application of such provisions to Hospitals, Community Health Centers or circumstances other than those held invalid.

(4) Administrative Information Bulletins. The Division may issue administrative information bulletins to clarify policies and understanding of substantive provisions of 114.6 CMR 11.00 and specify information and documentation necessary to implement 114.6 CMR 11.00.

REGULATORY AUTHORITY

114.6 CMR 11.00 M.G.L. c. 118G.