IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRVIEW HOSPITAL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. Action No. 1:05cv01065 (RWR) |
| ) | |
| MICHAEL O. LEAVITT, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

LINCOLN GENERAL HOSPITAL, )
)
        Plaintiff, )    4:98CV3118
)
v. )
)
DONNA E. SHALALA, Secretary )    MEMORANDUM OPINION
of the United States )
Department of Health and Human )
Services; )
)
        Defendant. )
)

    This matter is before the Court on the joint stipulation of the parties (Filing No. 20) that the matter be submitted for final disposition on cross motions for summary judgment (Filing Nos. 22 and 23). The action was originally filed on April 10, 1998, against Donna E. Shalala, Secretary of the Department of Health and Human Services and Blue Cross Blue Shield of Nebraska (BC/BS). BC/BS was dismissed from the action (Filing No. 12). The action was then stayed, pursuant to a request by the defendant, until the United States Supreme Court decided *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449 (1999).

    The Supreme Court issued its opinion on February 23, 1999. Thereafter, the plaintiff filed a motion to amend its complaint (Filing No. 16), which was granted. The matter was then submitted on the cross motions for summary judgment and the parties' stipulation of facts (Filing No. 20). After consideration of the briefs, stipulated facts and exhibits, the

RECEIVED

JUL 17 2000

HHS OGC-KCMO

Court finds that defendant's motion for summary judgment should be granted.

## II. Background

The undisputed facts are taken from the joint stipulation filed on February 16, 2000. The plaintiff, Lincoln General Hospital, operates a hospital in Lancaster County, Nebraska. Plaintiff participates in both the Medicare and Medicaid programs pursuant to Titles XVII and XIX of the United States Code. Medicare has two main parts. Part A of the Medicare statute enables payment of inpatient hospital costs and post-hospital services. The program (Part A) is funded by hospital insurance taxes. 42 U.S.C. § 1395d. Medicare covers hospital services, and costs are generally reimbursed on a reasonable cost basis. 42 U.S.C. § 1395f(b). The plaintiff is on a prospective payment system ("PPS"). Under this system, the payments are based upon nationally applicable pre-determined rates set on a per-discharge basis. 42 U.S.C. § 1395ww(d).

Congress also enacted the Medicaid program to assist in health care costs for indigent persons who meet the eligibility requirements. 42 U.S.C. § 1396, et seq. The Secretary of Health and Human Services promulgated regulations to implement the statute, which is administered through the Health Care Financing Administration ("HCFA").

Apart from the Medicaid program providing payment for services to indigent persons, the Medicare statute provides for add-on payments for PPS hospitals who serve a largely

-2-

disproportionate share of low-income patients.[1] 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). This "disproportionate share payment" is determined by how much a qualifying hospital's disproportionate patient percentage exceeds a calculated threshold. The Medicare statute defines "disproportionate patient percentage" as the sum of two fractions. The second fraction, called the "Medicaid Low Income Proxy"[2] is defined as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

The Secretary adopted regulations interpreting the Disproportionate Share Payments under the statute. As to the Medicaid Low Income Proxy, the Secretary, on May 6, 1986, interpreted that provision to include only inpatient days

---

[1] Specifically, the statute states

> the Secretary shall provide . . . for an additional payment amount for each subsection (d) hospital [PPS hospital] which (I) serves a significantly disproportionate number of low-income patients.

42 C.F.R. § 1395ww(d)(5)(F)(i)(I).

[2] Per the Joint Stipulation (Filing No. 20, ¶ 6).

-3-

actually paid for by the state Medicaid plans, not all days the patient was eligible. 42 C.F.R. § 412.106(b)(4). The Secretary amended its interpretation by Health Care Financing Administration Ruling No. 97-2 on February 27, 1997, to include in the Medicaid Low Income Proxy, all days the patient is eligible for medical assistance under a state Medicaid plan, whether or not the hospital actually received payment for all the eligible days.

Generally, Part A Medicare providers may be paid by a fiscal intermediary, which is an insurance company under contract with the Secretary and designated by the provider and Secretary. 42 U.S.C. § 1395h; 42 C.F.R. § 421.103. At the end of the fiscal year, the provider of services submits a cost report. 42 C.F.R. §§ 413.20(b), 413.24(f). This report is analyzed and audited by the intermediary, who then informs the provider of a final determination of Medicare reimbursement. 42 C.F.R. § 405.1803.

Lincoln General received its final determinations of Medicare reimbursement for fiscal years ending ("FYE") in 1992 and 1993 on June 29, 1994, and August 22, 1995, respectively via Notices of Program Reimbursement ("NPR"). The intermediary determined the Medicare reimbursements pursuant to 42 C.F.R. § 412.106, which did not include the days for which a patient was eligible for state Medicaid assistance, but only those days for which Medicaid actually paid benefits. Lincoln General did not appeal the NPR's FYE 1992 and 1993 to the Provider Reimbursement

-4-

Review Board ("PRRB"), and the cost reports were subsequently closed by the intermediary.

After an intermediary closes a final cost report, a provider may request that the intermediary reopen the final cost report to recalculate reimbursement. 42 C.F.R. § 405.1885. Generally, if a provider is not satisfied with the intermediary's final determination, the provider may file an appeal with the PRRB within 180 days of the Notice of Program Reimbursement. If the PRRB determines that it lacks the authority to decide an issue raised by the provider, the provider may obtain judicial review. 42 U.S.C. § 1395oo.

Following the closure of Lincoln General's cost reports for FYE 1992 and 1993, the Eighth Circuit Court of Appeals decided *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996), wherein the court affirmed the district court's decision to invalidate the Secretary's original interpretation of the Medicaid Low Income Proxy fraction. On December 10, 1996, Lincoln General made a timely request that the intermediary reopen its final determinations of Medicare reimbursement for FYE 1992 and 1993, citing the *Deaconess* decision of the Eighth Circuit. Lincoln General received no response. On April 15, 1997, Lincoln General sent another request to have its final determinations for FYE 1992 and 1993 reopened. On April 16, 1997, the intermediary responded by declining Lincoln General's request to reopen. The intermediary stated that HCFA Ruling 97-2, which changed the calculation of the Medicaid Low Income Proxy

-5-

fraction, was only effective for cost reporting periods beginning on or after February 19, 1997 (Filing No. 9, Exhibit 1).

Lincoln General timely appealed the intermediary's decision to the PRRB. The intermediary challenged the PRRB's jurisdiction to hear the appeal under 42 C.F.R. § 405.1885(c), which states "[j]urisdiction for reopening a determination or decision rests exclusively with that administrative body that rendered the last determination or decision." The PRRB agreed with the intermediary's argument and dismissed Lincoln General's appeal on February 11, 1998.

Lincoln General then filed this action to determine if the PRRB had jurisdiction to hear Lincoln General's appeal. On July 22, 1998, the Court stayed the action (Filing No. 12) pending the disposition of a similar case by the United States Supreme Court. On February 23, 1999, the Supreme Court held that the PRRB did not have jurisdiction to review the refusal of an intermediary to reopen a reimbursement determination under 42 C.F.R. § 405.1885(c). *Your Home Visiting Nursing Servs. v. Shalala*, 525 U.S. 449, 452-53 (1999). On October 28, 1999, Lincoln General filed an amended petition seeking mandamus relief under 28 U.S.C. § 1361 to force the intermediary to reopen the determinations.

### III. Discussion

A. Subject-matter jurisdiction.

Defendant claims that the plaintiff is not entitled to judicial review of the Secretary's refusal to reopen the cost

-6-

reports because the decision is committed to agency discretion. The plaintiff's amended complaint seeks mandamus relief. The mandamus statute provides "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Court has subject-matter jurisdiction. Thus, defendant's motion to dismiss for lack of subject-matter jurisdiction will be denied.

B.   Mandamus Relief.

A plaintiff seeking a writ of mandamus must show that: (1) it is entitled to the relief sought; (2) a clear duty exists on the defendant's part to do the act requested by the plaintiff; and (3) no other adequate remedy is available. *Archbishop Bergan Mercy Hosp. v. Heckler*, 614 F.Supp. 1271, 1275 (D.Neb. 1985). Mandamus is an extraordinary remedy that should be invoked only in extraordinary situations. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980).

Plaintiff argues that it satisfies the three requirements to obtain mandamus relief. Plaintiff claims that the reopening of the cost reports is mandatory under 42 C.F.R. § 405.1885(d). That section provides: ". . . an intermediary determination or hearing decision . . . shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." Read in conjunction with

-7-

§ 405.1885(c), jurisdiction for reopening a decision rests with the administrative body that rendered the last decision. In this case, that body is the intermediary. Therefore, the plaintiff must show that the intermediary has a clear, nondiscretionary duty to reopen the cost reports for FYE 1992 and 1993. *See Your Home Visiting Nurse Servs.*, 525 U.S. at 453 (agreeing with the Secretary's interpretation that § 405.1885(c) confers original jurisdiction on the intermediary to determine if the cost reports should be reopened because the intermediary made the final decision on those reports).

A cost report determination must be reopened by an intermediary if the HCFA notifies the intermediary that its previous determination was inconsistent with the law or the determination was procured by fraud or similar fault of any party to the determination. 42 C.F.R. § 405.1885(b) and (d). Plaintiff does not argue that the intermediary was informed that the determination was inconsistent with the law. Rather the plaintiff claims that the Secretary is a party to the determination, and the Secretary's interpretation of the Medicare low income proxy calculation was procured by fraud or similar fault. If the interpretation of the statute is deemed to be procured by fraud or similar fault, the cost reports must be reopened. Thus, the threshold issue in this case is whether the Secretary's interpretation of the Medicare statute constitutes "fraud or similar fault."

-8-

1. Fraud

The regulations do not specifically define what the Secretary means by "fraud." In addition, the parties have not cited, nor has the Court found, any cases addressing the definition of "fraud" as used in this context. The plaintiff relies on the Black's Law definition of fraud and argues that the Secretary's failure to comply with the statutory representation that the hospitals would be paid for all eligible Medicare days constitutes fraud. In addition, the plaintiff claims that the Secretary ignored the comments raised by the rulemaking process and implemented the regulation anyway. Defendant, on the other hand, claims that the Secretary followed the proper rulemaking procedures and that the plaintiff offers no evidence of intent.

Black's Law dictionary defines fraud as

> [a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment . . . [or a] misrepresentation made recklessly without belief in its truth to induce another person to act.

*Black's Law Dictionary* 670 (7th ed. 1999). The Eighth Circuit has further required that to prove fraud, a party must demonstrate:

> that a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with the intent to deceive and for the purpose of inducing the other party to act upon it; and that [the other party] did in fact rely on it and was

-9-

induced thereby to act to his injury or damage.

*J-R Grain Co. v. FAC, Inc.*, 627 F.2d 129, 134 (8th Cir. 1980) (citing *Bellairs v. Dudden*, 230 N.W.2d 92, 97 (Neb. 1975)). The Court finds that, absent a definition in the regulation, these common definitions of fraud are applicable.

Plaintiff has the ultimate burden of establishing fraud. However, plaintiff does not present any evidence of intent, as required by both the dictionary definition of fraud and by the Eighth Circuit. In fact, the plaintiff's argument that the Secretary ignored the comments during the rulemaking process is negated by the comments and responses published in the Federal Register. With regard to the objections to the Secretary's proposed method of calculating the disproportionate patient percentage, the Secretary responded:

> We believe that the parenthetical phrase "for such days" in section 1886(d)(5)(F)(vi)(II) of the Act was intended to modify the phrase "eligible for medical assistance" and that Congress intended to include only such patient days for which the Medicaid patient was eligible to have his or her care paid for by the Medicaid program. We believe evidence of Congressional intent in this regard may be found in the legislative history of section 1886(d)(5)(F)(vi) of the Act. The Conference Report described the House bill on section 9105 of Pub. L. 99-272 as defining low income patients as follows: "[t]he proxy measure for low income would be the percentage of a hospital's total inpatient days attributable to medicaid patients . . ." (See H.R.

-10-

Rep. No. 99-453, 99th Cong., 1st Sess. 459 (1985)). The phrase "inpatient days attributable to medicaid patients" supports the commenters' interpretation that all days that are attributable to Medicaid patients (that is, for which the patient is Medicaid-eligible) must be included in the numerator of the definition. However, the House bill's definition was not ultimately accepted by the Conference Committee. The Conference Report states that: "[t]he percentage of low income patients will be defined as the total number of inpatient days attributable to the Federal Supplemental Security Income beneficiaries divided by the total number of Medicare patient days. . . ." The substitution of the term "number of medicaid patient days" in the Conference agreement for the previous term "attributable to medicaid patients" suggests that Congress intended to adopt the definition as we currently understand it. . . . We believe this interpretation . . . is not inconsistent with the statutory scheme as a whole, since the formula in section 1886(d)(5)(F)(vi) of the Act does not purport to identify all indigent patients. Rather it refers to certain Medicare and Medicaid patients as an easily and objectively determined proxy for the indigent. Thus, under any reading of the statute, not all indigent patients are included in the formula. A Medicaid eligible recipient who has exhausted his or her benefits is thus situated similarly to the indigent patient who is not eligible for Medicaid at all, and so it is logical to treat them the same for purposes of determining the disproportionate patient percentage.

-11-

Medicare Program; Changes to the Inpatient Hospital Prospective Payment System and Fiscal Year 1987 Rates, 51 Fed. Reg. 31454, 31460 (1986) (notice and comments). The Court finds that this response demonstrates a good faith effort to interpret the statute. In absence of any other proof, the Court also finds that plaintiff has failed to meet its burden of demonstrating that the Secretary acted fraudulently.

2. Similar Fault

Plaintiff claims that the Secretary's interpretation of the regulation was "unreasonable, impermissible, and knowingly wrong as a matter of law." Thus, the plaintiff suggests, the interpretation constitutes "similar fault." Defendant claims that nothing in the record demonstrates "knowingly incorrect" statements were made.

Like fraud, the regulations do not give any guidance on the definition of similar fault, or what actions constitute similar fault. However, rules of construction and the Secretary's policy statements with regard to the same language used in other sections of the Social Security Act are helpful in determining the meaning of the Secretary's regulation.

One of the most highly regarded canons of construction is *ejusdem generis*. This canon states that when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration. *Norfolk and Western Railway Co. v. American Train Dispatchers Assoc.*, 449 U.S. 117, 129 (1991). Not only must the

-12-

court consider the bare meaning of the word or phrase in question, but also its placement and purpose in the statutory scheme. In other words, the meaning of statutory language, plain or not, depends on context. *Holloway v. United States*, 526 U.S. 1, 6, 8 (1999). The regulation reads "fraud or similar fault." 42 C.F.R. § 405.1885(d). The general term "similar fault" should be read in conjunction with "fraud" to include actions that are similar to fraud. The Secretary's interpretation of the language used in other contexts affirms this conclusion.

A ruling concerning widow's benefits under the Social Security Act describes situations in which a claimant committed fraud or similar fault so as to warrant a reopening of benefit determinations. With regard to similar fault, the ruling states:

> What constitutes fault . . . on the part of the overpaid individual . . . depends upon whether the facts show the incorrect payments . . . resulted from: (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

SSR 83-26a. In a later ruling regarding supplemental security income determinations, it states:

> if a preponderance of evidence does not establish knowledge and intent to defraud, but establishes that the recipient (or other person) knowingly did something wrong (but intent cannot be established), then

-13-

>      SSA can determine 'similar fault'
>      and can reopen and revise a
>      determination at any time.

SSR 85-23.   This ruling also defines similar fault.

>      Similar fault exists when an SSI
>      recipient or other person knowingly
>      makes an incorrect or incomplete
>      statement that is material to the
>      determination for SSI payments or
>      knowingly conceals information that
>      is material to the determination of
>      eligibility or amount of SSI
>      payments.  It differs from fraud in
>      that fraudulent intent is not
>      required.  Unlike fraud, the intent
>      to wrongfully procure (or increase)
>      benefits need not be established.

SSR 85-23.

These rulings indicate that although similar fault does not require evidence of intent, there must be some showing that the Secretary, in this case, knowingly interpreted the statute incorrectly.  The plaintiff relies upon case law to demonstrate that the Secretary's interpretation was knowingly wrong, unreasonable or inexcusable.  Specifically, plaintiff cites *Valley Hosp. Med. Ctr. v. Mutual of Omaha Ins. Co.*, 1998 WL 268376 *1, 11 (P.R.R.B. May 22, 1998) and *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006 (8th Cir. 1994). However, these cases do not go directly to the issue: whether the Secretary's interpretation constitutes similar fault.  The plaintiff does not present any evidence that the Secretary knew that her interpretation was contrary to law.  The notice and comments published in the Federal Register evidence the contrary; the Secretary had a good faith belief, in light of all the

-14-

circumstances and similar legislation, that she was interpreting the statute properly. Without any evidence to the contrary, plaintiff fails to meets its burden of showing similar fault.

In conclusion, the plaintiff is not entitled to mandamus relief because it has failed to show that the Secretary's interpretation of the Medicare Low Income Proxy constitutes fraud or similar fault, thus triggering a clear non-discretionary duty to reopen the cost reports. The Court does not need to address the other requirements of mandamus relief in light of this finding. A separate order will be entered in accordance with this memorandum opinion.

DATED this 13TH day of July, 2000.

BY THE COURT:

LYLE E. STROM, Senior Judge
United States District Court

-15-

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LINCOLN GENERAL HOSPITAL, | ) | |
| | ) | |
| Plaintiff, | ) | 4:98CV3118 |
| | ) | |
| v. | ) | |
| | ) | |
| DONNA E. SHALALA, Secretary | ) | ORDER AND JUDGMENT |
| of the United States | ) | |
| Department of Health and Human | ) | |
| Services; | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to the memorandum opinion entered herein this date,

IT IS ORDERED:

1) Plaintiff's motion for summary judgment (Filing No. 23) is denied;

2) Defendant's motion to dismiss or, in the alternative, for summary judgment (Filing No. 22) is denied as to the portion of the motion seeking to dismiss. That portion of the motion for summary judgment is granted.

3) Plaintiff's amended complaint (Filing No. 18) is dismissed.

DATED this 13th day of July, 2000.

BY THE COURT:

LYLE E. STROM, Senior Judge
United States District Court

RECEIVED
JUL 17 2000
HHS OGC-RCMO