IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FAIRVIEW HOSPITAL**, *et al.*, | ) <br> ) |
| **Plaintiffs,** | ) <br> ) <br> ) |
| v. | ) Civil Action No. 1:05cv01065 (RWR) <br> ) |
| **MICHAEL O. LEAVITT,** | ) <br> ) |
| **Defendant.** | ) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR A STAY OF PROCEEDINGS

Plaintiffs, by counsel, submit the following memorandum in support of their Motion for a Stay of Proceedings.

### INTRODUCTION

The instant matter is one of four related cases brought by hospitals in the Commonwealth of Massachusetts (the "Massachusetts Plaintiffs") seeking Medicare reimbursement for a state tax on hospital revenues (the "Massachusetts Lawsuits"). Initially, counsel for the defendant in all four of these cases, the Secretary of the Department of Health and Human Services (the "Secretary"), approached the Massachusetts Plaintiffs and suggested that the parties file joint motions to stay the Massachusetts Lawsuits until another case pending in this Court, Bradley Memorial Hospital, et al. v. Michael O. Leavitt, Civil Action No. 1:04-cv-00416 (EGS), was resolved. The Massachusetts Plaintiffs agreed with the Secretary that the legal theories and defenses raised in Bradley were essentially identical to the legal theories and defenses raised in the Massachusetts Lawsuits, and that a stay of the Massachusetts Lawsuits until Bradley was

resolved would "promote efficiency and conserve party and judicial resources…."[1]  Thus, on November 3, 2004, the Massachusetts Plaintiffs and the Secretary filed joint motions to stay the proceedings in the three existing Massachusetts Lawsuits.[2]  The Honorable Richard W. Roberts granted these motions thereby staying the Massachusetts Lawsuits until final resolution of the Bradley case.[3]

When the Massachusetts Plaintiffs filed their complaint in the instant matter, however, the Secretary decided to file a dispositive motion instead of seeking a stay of the case pending the resolution of Bradley as he had done in the prior lawsuits.[4]  There is no justification for the Secretary's change in position.  The Secretary's filing of a dispositive motion in a case identical to three other cases that the Secretary, himself, argued should be stayed, simply wastes judicial time and resources.  For the reasons set forth more fully below, the Plaintiff Hospitals now move for a stay of proceedings in the instant matter.

## FACTS

### I.     The Bradley Case

On March 15, 2004, twenty-six hospitals in Connecticut (the "Connecticut Plaintiffs"), including Bradley Memorial Hospital, filed an action in this Court alleging that the Secretary failed to reopen the Connecticut Plaintiffs' cost reports for various fiscal years, reclassify payments made by the Connecticut Plaintiffs under Connecticut's Gross Earnings Tax (the "GET tax") as reimbursable costs, and to make such payments to the Connecticut Plaintiffs as called for

---

[1] See the joint motions for a stay of proceedings filed in the three Massachusetts Lawsuits attached hereto as Exhibit 1.

[2] See Exhibit 1.

[3] See Judge Roberts' orders granting the motions for a stay of proceedings in the three Massachusetts Lawsuits attached hereto as Exhibit 2.

[4] See the Secretary's memorandum in support of his motion to dismiss or, in the alternative, for summary judgment, in the Fairview case (the "Fairview Memorandum").

by the reclassification.5  The Connecticut Plaintiffs in <u>Bradley</u> brought a mandamus action to compel the Secretary to "perform his non-discretionary duty to reopen the [hospitals'] cost reports in order to recalculate and issue those payments."6

The Connecticut Plaintiffs' complaint alleged that the hospitals were entitled to mandamus relief on a number of separate grounds.7  First, the complaint alleged that "the Secretary, CMS, and the intermediary have a clear statutory duty to reopen the cost report years at issue and reimburse the [Connecticut] Plaintiffs because the GET tax payments were necessary and proper costs under the statute and should have been, but were not, classified by the Secretary, CMS, and/or the intermediary as allowable."8

Next, the complaint alleged that "the Secretary, CMS and the intermediary have a clear duty to reopen the cost report years at issue and reimburse the [Connecticut] Plaintiffs under 42 C.F.R. § 405.1885(d) because the Secretary, CMS, and/or the intermediary unlawfully and wrongfully classified GET tax payments as non-allowable costs and passively and actively misled the Plaintiffs as to whether they were allowable."9  Specifically, the complaint alleged that "CMS, in June of 1995, informed the Intermediary that a nearly identical tax in the State of New York was properly the subject of reimbursement" and that "[t]he Intermediary should have begun to reimburse Connecticut hospitals for the GET payments beginning at or around that time."10  According to the complaint, "[t]hrough the fault of the Secretary, CMS, and/or the

---

5 <u>See</u> the Connecticut Plaintiffs' initial Complaint attached hereto as Exhibit 3.
6 <u>See</u> Exhibit 3 at ¶ 4.
7 <u>See id.</u> at ¶ 33.
8 <u>See id.</u> at ¶ 33(a).
9 <u>See id.</u> at ¶ 33(b).
10 <u>See id.</u>

Intermediary, the Connecticut hospitals did not receive reimbursement for tax costs of the kind that had already been deemed as allowable costs."[11]

Finally, the Connecticut Plaintiffs alleged that "despite the determination made in 1995 regarding reimbursement for the New York tax, the Secretary and CMS wrongfully delayed giving notice that the intermediary's prior interpretation of the law with regard to the Connecticut facilities was incorrect resulting in the retrospective, three year window for reopening prescribed by 42 C.F.R. § 405.1885(b) being too narrow to cover all of the cost report periods for which the intermediary should have reimbursed the Plaintiffs for GET payments."[12] Thus, the complaint alleged that "to the extent the [Connecticut] Plaintiffs' administrative remedies were curtailed under the reopening regulations, it was a result of matters not reasonably within their control."[13]

## II.   The Three Massachusetts Lawsuits Filed After Bradley

After the Connecticut Plaintiffs initiated the Bradley action, the Massachusetts Plaintiffs filed the following three Massachusetts Lawsuits: 1) Milton Hospital v. Michael O. Leavitt, Civil Action No. 1:04-cv-01497 (RWR); 2) Dana-Farber Cancer Institute v. Michael O. Leavitt, Civil Action No. 1:04-cv-01537 (RWR); and 3) Berkshire Medical Center, et al. v. Michael O. Leavitt, Civil Action No. 1:04-cv-01562 (RWR).[14]  The complaints in all three cases allege that the Secretary failed to reopen the Massachusetts Plaintiffs' cost reports for various fiscal years, reclassify payments that the Massachusetts Plaintiffs made to fund the Massachusetts

---

[11] See id.

[12] See id. at ¶ 33(c).

[13] See id.

[14] See copies of the complaints in the three prior Massachusetts Lawsuits attached hereto collectively as Exhibit 4.

Uncompensated Care Pool (the "UCP Assessment") as reimbursable costs, and to make such payments to the Massachusetts Plaintiffs as called for by the reclassification.[15]  The Massachusetts Plaintiffs brought a mandamus action to compel the Secretary to perform his non-discretionary duty to reopen the hospitals' cost reports in order to recalculate and issue those payments.[16]

As in <u>Bradley</u>, the three complaints allege that the plaintiff hospitals are entitled to mandamus on a number of separate and independent grounds.[17]  First, the complaints allege that "the Secretary, CMS and the intermediary have a clear statutory duty to reopen [the] cost report years at issue and reimburse [the Massachusetts] Plaintiffs because the UCP Assessment payments were necessary and proper costs under the Medicare statute and should have, but were not, classified by the Secretary, CMS, and/or the intermediary as allowable."[18]  This is the same as <u>Bradley</u>.  Second, the complaints allege that "the Secretary, CMS and the intermediary have a clear duty to reopen the cost report years at issue and reimburse [the Massachusetts] Plaintiffs under 42 C.F.R. § 405.1885(d) because the Secretary, CMS, and/or the intermediary unlawfully and wrongfully classified the UCP Assessment payments as non-allowable costs and, upon information and belief, passively and/or actively misled Plaintiffs as to whether they were allowable."[19]  This is the same as <u>Bradley</u>.  Third, the complaints allege that "the Secretary and CMS wrongfully delayed giving notice that the intermediary's prior interpretation of the law was incorrect, resulting in the retrospective, three year window for reopening prescribed by 42 C.F.R.

---

[15] <u>See</u> Exhibit 4 at ¶ 1.
[16] <u>See id.</u>
[17] <u>See id.</u> at Count 1.
[18] <u>See id.</u>
[19] <u>See id.</u>

§ 405.1885(b) being too narrow to cover the cost report periods for which the intermediary should have reimbursed Plaintiffs for the UCP Assessment."[20]  This is also the same as Bradley.

### III. The Secretary States that the Massachusetts Lawsuits Should be Stayed Pending the Resolution of Bradley.

The Secretary previously asserted that the Secretary and the Massachusetts Plaintiffs should file joint motions to stay the three Massachusetts Lawsuits until Bradley, which raised issues similar to those in the Massachusetts Lawsuits, was resolved.  The Massachusetts Plaintiffs agreed with the Secretary's position, and on November 3, 2004, the Massachusetts Plaintiffs and the Secretary filed joint motions to stay all three of the pending Massachusetts Lawsuits.[21]

In each of these motions, the Secretary and the Massachusetts Plaintiffs represented to the Court that the Massachusetts Lawsuits raised issues similar to those in Bradley and that the "parties believe it would promote efficiency and conserve party and judicial resources if litigation of [the Massachusetts Lawsuits] were stayed until after final resolution of the Bradley case."[22]  Following receipt of these joint motions, the Honorable Richard W. Roberts directed the Massachusetts Plaintiffs and the Secretary to file joint memoranda addressing 1) whether the Massachusetts Lawsuits and Bradley were related within the meaning of Local Rule 40.5(a)(3); and 2) how the resolution of the Bradley case might affect the outcome in the Massachusetts Lawsuits.[23]

---

[20] See id.

[21] See Exhibit 1.

[22] See id.

[23] See Judge Roberts' orders requesting supplemental briefing in the three prior Massachusetts Lawsuits attached hereto as Exhibit 5.

In response to the Court's directive, the Secretary and the Massachusetts Plaintiffs filed, in each case, a supplemental memorandum in support of their joint motion for a stay of proceedings.[24] Therein, after the Secretary and the Massachusetts Plaintiffs explained why the Bradley case and the Massachusetts Lawsuits were not related within the meaning of Local Rule 40.5(a)(3), the two parties jointly represented to the Court that the a stay of proceedings would conserve judicial and party resources:

> As was discussed above, the claims raised by the plaintiff [in the Massachusetts Lawsuits] are virtually identical to those raised in Bradley, and the defenses are likely to be the same. Most of the defenses raised by the Secretary in Bradley are pure issues of law, and success on them before the Court of Appeals for this Circuit would likely obviate the need for further proceedings here. Even if some issues remain for resolution after the disposition in Bradley, however, they are likely to be reduced to discrete factual questions (e.g., the nature of any specific communications between the hospital and the Secretary/intermediary concerning the status of the Massachusetts tax). Such a narrowing of the case would facilitate more economical proceedings and/or possible settlement discussions in the future. The parties therefore believe that a stay of proceedings affords the most efficient avenue for disposition of the above-captioned action.[25]

On or about March 10, 2005, the Court issued an order staying all of the Massachusetts Lawsuits pending the resolution of Bradley.[26]

**IV.    The Connecticut Plaintiffs Amend Their Complaint in Bradley to Develop the Very Same Factual Allegations Set Forth in the Initial Complaint.**

On January 31, 2005, the Connecticut Plaintiffs filed an amended complaint in Bradley.[27] The amended complaint did not assert any new, or modify any existing, legal

---

[24] See the supplemental memoranda in support of joint motions for a stay of proceedings attached as Exhibit 6.

[25] See Exhibit 6 at 5.

[26] See Exhibit 2.

[27] See the amended complaint in Bradley attached hereto as Exhibit 7.

- 7 -

theories against the Secretary.28  In fact, the amended complaint sets forth exactly the same legal theories contained in the initial complaint.  These issues are exactly the same ones discussed in both the joint motions to stay and the supplemental memoranda in support of the joint motions to stay.29  The only difference between the initial complaint and the amended complaint was the addition of facts recounted by particular individuals who have specific knowledge to support the very same factual allegations set forth in the initial complaint.30  These individuals and the specific information that they possess to support the Connecticut Plaintiffs' claims can be found in Paragraphs 24-28 of the amended complaint.31  After the Connecticut Plaintiffs filed the amended complaint, the Secretary filed a motion to dismiss the amended complaint, or in the alternative, for summary judgment.  The Secretary took no action to lift the stay in the Massachusetts Lawsuits.

**V.     The Fairview Hospital Action**

The complaint in the instant matter, the fourth Massachusetts Lawsuit, was filed on May 27, 2005, approximately four months after the Connecticut Plaintiffs amended their complaint in Bradley.  Instead of filing another joint motion to stay the Fairview case pending the resolution of Bradley, the Secretary decided to file a motion to dismiss the Fairview complaint, or in the alternative, for summary judgment.32  As discussed in more detail below, the Secretary's motion

---

28 Compare Exhibits 3 & 7.
29 Compare Exhibit 7 with Exhibits 1,3 & 6.
30 See Exhibit 7 at ¶¶ 24-28.
31 See id.
32 See the Fairview Memorandum.

to dismiss in Fairview raises the very same legal defenses that he raised in his motion to dismiss the Connecticut Plaintiffs' amended complaint in Bradley.[33]

In addition to raising those various legal defenses, the Secretary also argues that because the Plaintiff Hospitals in Fairview did, in fact, receive payment for the UCP Assessment for some of the cost report years at issue in the complaint, the Plaintiff Hospitals are seeking double reimbursement from the Secretary.[34] The Plaintiff Hospitals, therefore, have filed an amended complaint that details the fiscal years at issue for each of the three Plaintiff Hospitals.[35]

On September 27, 2005, the Secretary filed motions to modify the stays in the other three Massachusetts Lawsuits.[36] In the motions to modify the stays, the Secretary argues that the amended complaint in Bradley, filed approximately eight months earlier, alleges entirely new facts that have no connection to the Massachusetts Lawsuits.[37] The Secretary also indicates that he has filed dispositive briefing in Fairview, and requests that this Court substitute Fairview for Bradley as the lead case.[38]

---

[33] Compare Exhibit 8 with the Fairview Memorandum.

[34] See Fairview Memorandum at 12.

[35] See the Plaintiffs' First Amended Complaint in Fairview at ¶ 28.

[36] See the Secretary's motions to modify the stays in the three prior Massachusetts Lawsuits attached hereto as Exhibit 9.

[37] See Exhibit 9 at 1.

[38] See id. at 1-2.

# ARGUMENT

**I.     The <u>Fairview</u> Case Should be Stayed Along With the Other Three Massachusetts Hospital Lawsuits Pending Resolution of the <u>Bradley</u> Case.**

Prior to <u>Fairview</u>, the Secretary himself argued that the Massachusetts Lawsuits should be stayed pending the resolution of <u>Bradley</u>.[39] As the Secretary explained in the supplemental memorandum in support of the motions for a stay of proceedings, the claims that the Massachusetts Plaintiffs raised in the Massachusetts Lawsuits "are virtually identical to those raised in <u>Bradley</u>, and the defenses are likely to be the same."[40] Indeed, now that the Secretary has filed a dispositive motion in <u>Fairview</u>, it is clear that the Secretary's core legal defenses in <u>Bradley</u> and the Massachusetts Lawsuits, including <u>Fairview</u>, are the same: 1) the Hospitals are not entitled to mandamus relief because they have not exhausted alternative means of relief;[41] 2) the Hospital's mandamus claims should be dismissed because there is no such thing as a statutory duty to reopen;[42] 3) the Secretary has no duty to reopen the cost reports at issue under 42 C.F.R. § 405.1885(b);[43] 4) mandamus relief should be denied on equitable grounds;[44] and 5) the Secretary owes the Hospitals no duty to reopen the cost reports under 42 C.F.R. § 405.1885(d) because a) CMS and intermediaries are not parties to the intermediary's determination; b) an intermediary does not procure its own determination; c) a duty to reopen can potentially arise only after fraud or similar fault is established; and d) the Hospitals have not

---

[39] <u>See</u> Exhibits 1 & 6.
[40] <u>See</u> Exhibit 6 at 5.
[41] <u>See</u> Exhibit 8 at 18 & the <u>Fairview</u> Memorandum at 26.
[42] <u>See</u> Exhibit 8 at 32 & the <u>Fairview</u> Memorandum at 15.
[43] <u>See</u> Exhibit 8 at 33 & the <u>Fairview</u> Memorandum at 17.
[44] <u>See</u> Exhibit 8 at 45 & the <u>Fairview</u> Memorandum at 34.

demonstrated any "active" or "passive" misrepresentation.[45] In the immortal words of Yogi Berra, "It's like deja-vu, all over again."

The Secretary has previously argued that "[m]ost of the defenses raised by the Secretary in Bradley are pure issues of law, and the success on them before the Court of Appeals for this Circuit would likely obviate the need for further proceedings [in the Massachusetts Lawsuits]."[46] This argument applies equally to Fairview. If the Court of Appeals holds that the Connecticut Plaintiffs in Bradley cannot sustain a mandamus action against the Secretary, the Massachusetts Plaintiffs in Fairview and the other Massachusetts Lawsuits, all of whom have premised their cases against the Secretary on the very same legal theories advanced in Bradley, will be out of Court. As the claims in Bradley go, so go the claims in Fairview. Thus, staying the Massachusetts Lawsuits, including Fairview, pending the resolution of Bradley will, as the Secretary has already stated, "promote efficiency and conserve party and judicial resources."[47]

## II. The Amended Complaint in Bradley Does Not Form a Basis Upon Which To Find that Fairview Should Be Substituted for Bradley As The Lead Case.

The Secretary, after filing his dispositive motion in Fairview, filed motions to modify the stays in the other three Massachusetts Lawsuits. The Secretary argues that modification of the stays is necessary because of the new factual assertions set forth in the amended complaint in Bradley.[48] The Secretary is wildly off the mark. The amended complaint in Bradley does not, in any possible way, change the fact that Fairview and the other Massachusetts Lawsuits should be stayed pending the resolution of Bradley.

---

[45] See Exhibit 8 at 35-45 & the Fairview Memorandum at 18-24.
[46] See Exhibit 6 at 5.
[47] See Exhibit 1 at 1.
[48] See Exhibit 9.

The Connecticut Plaintiffs filed their amended complaint on January 31, 2005. The Secretary said nothing about the purported impact of this filing upon the Massachusetts Lawsuits until September 27, 2005 (approximately eight months later) when he filed motions to modify the stays in each of the Massachusetts Lawsuits. The Secretary's delay demonstrates that the amended complaint has no bearing upon the status of the Massachusetts Lawsuits. Instead, it appears that the Secretary, believing that the facts in Fairview are favorable to the government, decided to file a dispositive motion, and then rely upon an eight-month old amended complaint as the basis for his complete change in position regarding the procedural posture of the Massachusetts Lawsuits.

Contrary to the Secretary's new-founded position, the amended complaint in Bradley simply develops the very same factual allegations contained in the initial complaint. The initial complaint alleged that "[t]he Secretary, CMS, and/or the intermediary, from 1994 until 2001, took the position that the GET tax was not an allowable cost" and that the "Connecticut Hospitals were strictly forbidden from claiming payments under the GET tax on their cost reports."[49] The amended complaint now includes specific individuals with particular knowledge to support these allegations.[50] While the facts may have been developed through these individuals, the underlying factual allegations certainly have not changed.

Moreover, the Secretary has always acknowledged that although the legal issues in the Bradley case and the Massachusetts Lawsuits were "largely identical," the facts were not entirely the same. This did not, in any way, stop the Secretary from advocating in favor of a stay:

> The Bradley case arises from a state tax on hospital gross earnings in Connecticut. [The Massachusetts Lawsuits] arise[] from a state

---

[49] See Exhibit 3 at ¶ 23.
[50] See Exhibit 7 at ¶¶ 24-28.

> tax on hospital revenues in Massachusetts. The actions taken by the Secretary with respect to reopening also differ slightly in the two cases. (In Bradley, the Secretary ordered a general reopening, but in [the Massachusetts Lawsuits] the reopening was limited to those payment determinations for which a request for reopening had been made within three years).[51]

The Secretary even contemplated that the development of the factual record might reveal differences between Bradley and the Massachusetts Lawsuits regarding "the nature of the communications between the hospitals and the Secretary/intermediary concerning the status of the state tax assessment."[52] Notwithstanding this fact, the Secretary supported the stay and it was entered by the Court. Now the Secretary is relying upon those very differences to argue that the stays should be modified.

The reasons why the Massachusetts Plaintiffs and the Secretary filed the joint motions to stay in the Massachusetts Lawsuits filed before Fairview, are the very same reasons why this Court should stay the proceedings in Fairview. The Secretary's argument regarding the amended complaint in Bradley is an easily recognizable red herring, which should not serve as a basis upon which to find that Fairview should be substituted for the Bradley as the lead case.

## CONCLUSION

Based upon the foregoing, the Plaintiff Hospitals in the instant matter request this Court stay the Fairview case pending the final resolution of Bradley.

---

[51] See Exhibit 6 at 4.
[52] See id.

- 14 -

                              Respectfully submitted,

                                    /s/  Jacqueline E. Bennett
                              Jacqueline E. Bennett
                              D.C. Bar No. 474355
                              REED SMITH LLP
                              1301 K Street, N.W.
                              Suite 1100 – East Tower
                              Washington, D.C. 20005
                              Tel: (202) 414-9200
                              Facsimile: (202) 414-9299
                              jbennett@reedsmith.com

                              Attorney for Plaintiffs

                              Of Counsel:

                              Murray J. Klein
                              **REED SMITH LLP**
                              Princeton Forrestal Village
                              136 Main Street, Suite 250
                              Princeton, NJ  08540
                              (609) 987-0050

Dated:   October 11, 2005