# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

---

**BERKSHIRE MEDICAL CENTER**
725 North Street
Pittsfield, Massachusetts  01201-4124

**CHILDREN'S HOSPITAL OF BOSTON**
300 Longwood Avenue
Boston, Massachusetts 02115-5737

**HARRINGTON MEMORIAL
HOSPITAL**
100 South Street
Southbridge, Massachusetts 01550-4045

**HOLYOKE HOSPITAL**
575 Beech Street
Holyoke, Massachusetts 01040-2296

**JORDAN HOSPITAL**
275 Sandwich Street
Plymouth, Massachusetts 02360-2196

**LAHEY CLINIC HOSPITAL**
41 Mall Road
Burlington, Massachusetts 01805-0001

**LOWELL GENERAL HOSPITAL**
295 Varnum Avenue
Lowell, Massachusetts 01854-2195

**NEW ENGLAND BAPTIST HOSPITAL**
125 Parker Hill Avenue
Boston, Massachusetts 02120-3297

Plaintiffs,

v.

Case No:

**TOMMY G. THOMPSON, Secretary of
the United States Department of Health
and Human Services**
200 Independence Avenue, S.W.
Washington, D.C. 20201

Defendant.

_____

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, state the following by way of complaint against Tommy G. Thompson, Secretary of the Department of Health and Human Services ("the Secretary"):

## NATURE OF THE CASE

1.     This action arises from the Secretary's failure to reopen certain of Plaintiffs' cost reports, reclassify payments made by Plaintiffs under the Massachusetts Uncompensated Care Pool as reimbursable costs, and to make such payments as called for by the reclassification, either directly or through the Secretary's intermediary.  These payments are due and owing under the Medicare statute.  Plaintiffs bring this action for mandamus to compel the Secretary to perform his non-discretionary duty to reopen Plaintiffs' cost reports in order to recalculate and issue those payments.

## JURISDICTION

2.     This action arises under Title XVIII of the Social Security Act, 42 U.S.C.

§1395 et seq. (the "Medicare statute").  The United States District Court for the District

of Columbia has jurisdiction in this matter pursuant to 28 U.S.C. §1361 because (i) the

plaintiffs have exhausted all available remedies related to this issue within the meaning of

the Medicare statute (by either filing the appropriate requests for reopening and/or

appeals or because such remedies are either unavailable as a matter of law or futile); and

(ii) the Defendant has a clear, non-discretionary duty to act in this case.

## VENUE

3.     Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42

U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## THE PARTIES

4.     Plaintiffs consist of the following hospitals, all of which furnish inpatient

and outpatient hospital services to, inter alia, patients entitled to benefits under the

Medicare Program:

(a)     Berkshire Medical Center, a Medicare Provider located at 725

North Street, Pittsfield, Massachusetts 01201-4124, assigned provider number 22-0046;

(b)     Children's Hospital of Boston, a Medicare Provider located at 300

Longwood Avenue, Boston, Massachusetts 02115-5737, assigned provider number 22-

3302;

(c)     Harrington Memorial Hospital, a Medicare Provider located at 100

South Street, Southbridge, Massachusetts 01550-4045, assigned provider number 22-

0019;

3

    (d)     Holyoke Hospital, a Medicare Provider located at 575 Beech Street, Holyoke, Massachusetts 01040-2296, assigned provider number 22-0024;

    (e)     Jordan Hospital, a Medicare Provider located at 275 Sandwich Street, Plymouth, Massachusetts 02360-2196, assigned provider number 22-0060;

    (f)     Lahey Clinic Hospital, a Medicare Provider located at 41 Mall Road, Burlington, Massachusetts 01805-0001, assigned provider number 22-0171;

    (g)     Lowell General Hospital, a Medicare Provider located at 295 Varnum Avenue, Lowell, Massachusetts 01854-2195, assigned provider number 22-0063; and

    (h)     New England Baptist Hospital, a Medicare Provider located at 125 Parker Hill Avenue, Boston, Massachusetts 02120-3297, assigned provider number 22-0088.

5.     Defendant Tommy Thompson is the Secretary of the Department of Health and Human Services, the federal department responsible for the administration of the Medicare and Medicaid programs.

## FACTS

**A.    Background Facts: Medicare Reimbursement In General**

6.     Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965. As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65.

4

7.     Among the benefits provided under Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis. 42 U.S.C. § 1395f(b).

8.     In 1983, Medicare began reimbursing hospitals using the prospective payments system ("PPS"). 42 U.S.C. § 1395www(d). Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

9.     The Secretary (or one or more of his predecessors, hereinafter collectively referred to simply as "the Secretary") has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS").

10.     The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.

11.     In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. §§ 413.20(b), 413.24(f).

12.     The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

13.     A provider dissatisfied with its intermediary's determination may, in certain circumstances, file an appeal with the Provider Reimbursement Review Board

("PRRB" or "Board") within 180 days of the date of the determination.  42 U.S.C. § 1395oo(a).

14.     In addition to filing appeals, providers may, in certain circumstances, obtain relief through an intermediary's reopening of its cost report, without the involvement of the PRRB.  There are three types of re-openings set forth in the regulations.

15.     Under the first type of reopening, a dissatisfied provider may file a reopening request with the intermediary, asking the intermediary to reopen and revise a settled cost report within three years of the date that the determination was issued.  42 C.F.R. § 405.1885(a).  Jurisdiction for reopening a decision under 42 C.F.R. §405.1885(a) rests with the administrative body that rendered the last determination or decision. 42 C.F.R. § 405.1885(c).

16.     The second type of reopening is mandatory and occurs when an intermediary's determination is required to be reopened under 42 C.F.R. § 405.1885(b) because CMS, within the three-year period in which reopenings are permitted, notifies the intermediary that the initial determination or settlement was inconsistent with applicable law.  The version of 42 C.F.R. §405.1885(b) in effect at all times referenced in this complaint stated that an intermediary's decision "shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the

Centers for Medicare & Medicaid Services. . . ." <u>See</u> 67 Fed. Reg. 50096 (August 1, 2002).[1]

17.     The third type of reopening is also mandatory, and requires that "an intermediary's determination "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." 42 C.F.R. 405.1885(d).

**B.    Reimbursable Tax Payments Under the Medicare Program**

18.     The Medicare statute requires intermediaries to reimburse providers for the reasonable and necessary cost of providing services to Medicare beneficiaries:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . . .

42 U.S.C. § 1395x(v)(1)(A).

19.     The Medicare regulations amplify the Medicare statute, stating that reasonable costs include those costs that are "appropriate and helpful in developing and maintaining the operation of patient care facilities" and that are "common and accepted occurrences in the field of the Provider's activities:"

> (a) All payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.  Reasonable cost includes all necessary and proper costs . . . .
>
>             * * *
>
> (b)(2) Necessary and proper costs are costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities.  They are usually costs that are common and accepted occurrences in the field of the Provider's activities . . . .

---

[1] All citations to 42 C.F.R. § 405.1885 in this complaint, unless otherwise noted, refer to the version of the regulation that was in effect prior to August 1, 2002 and which applies to the claims in this complaint.

42 C.F.R. § 413.9.

20.     The Provider Reimbursement Manual, in accordance with the foregoing

principles, contains a general rule stating that all taxes levied by the states upon providers

are allowable costs:

> § 2122.1 General Rule
>
> The general rule is that taxes assessed against the provider, in accordance
> with the levying enactments of the several States and lower levels of
> government and for which the provider is liable for payment, are
> allowable costs.  Tax expense should not include fines and penalties.

Provider Reimbursement Manual § 2122.1.

## C.     The Massachusetts Uncompensated Care Pool

21.     The Massachusetts Uncompensated Care Pool (the "UCP") provides

access to health care for low income uninsured and underinsured residents of

Massachusetts.

22.     The UCP is funded, in part, through an assessment (the "UCP

Assessment") against each hospital's private sector charges.  Mass. Gen. Laws Ann. Ch.

118G, § 18(e) (West 2004).

23.     The UCP Assessment against the hospital is equal to the product of 1) the

ratio of the hospital's private sector charges to all acute hospitals' private sector charges;

and 2) the private sector liability to the UCP as determined by law less certain surcharges.

Mass. Gen. Laws Ann. Ch. 118G, § 18(e) (West 2004).

24.     Each hospital's total UCP Assessment for a fiscal year is setoff against the

UCP's liability to the hospital for uncompensated care during the same period, resulting

in either a net liability to the UCP or a net distribution from the UCP.

25.     Thus, the UCP charges the hospital's collective private sector revenue to pay for the hospital's collective burden of uncompensated care, resulting in a net transfer of revenue from those hospitals that provide less uncompensated care (as a proportion to the hospitals' total patient service charges) to those that provide more.

26.     The Secretary, CMS, and/or the intermediary, from 1985 until 2003, took the position that the UCP Assessment was not an allowable cost.   Massachusetts Hospitals were strictly forbidden from claiming payments under the UCP.

27.     By way of correspondence dated March 18, 2003, CMS completely reversed its prior position, conceding that the UCP Assessment was an allowable cost.  A copy of the March 18, 2003 correspondence is attached hereto as Exhibit "A."

28.     This is a correct statement of the law because the UCP Assessment is a tax on hospitals which, in accordance with the Medicare statute, is a necessary and proper expense incurred by the hospital for which it should be reimbursed.

29.     Plaintiffs' intermediary failed to include the UCP assessment as an allowable cost on Plaintiffs' NPRs for cost report years 1985 through 2001.

30.     Furthermore, CMS failed to instruct Plaintiffs' intermediary to reopen cost report years 1985 through 2001 for the purpose of including the UCP assessment as an allowable cost.

31.     Because the UCP assessment was not included as an allowable cost for cost report years 1985 through 2001, Plaintiffs have been under-reimbursed.

## COUNT I

32.     Plaintiffs incorporate by reference paragraphs 1-31 herein.

33. The Secretary's failure to treat the UCP Assessment payments as an allowable cost during the foregoing periods violates the Medicare statute. The reasonable cost of Medicare services shall be "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." Provider Reimbursement Manual § 2122.1. The classification of such costs as allowable is mandatory and non-discretionary on the part of the Secretary and CMS.

34. The Secretary, CMS, and the intermediary had an affirmative, non-discretionary duty to (i) correctly reimburse Plaintiffs upon the issuance of the initial NPRs, (ii) reopen and revise all determinations and hearing decisions, including but not limited to all NPRs and any amended and/or revised NPRs irrespective of whether Plaintiffs requested reopening, and (iii) thereafter issue payment to Plaintiffs reflecting the reimbursement owed by the intermediary for each of the affected years.

35. As set forth above, the intermediary violated the Medicare statute by issuing initial NPRs and/or corrected NPRs to Plaintiffs that failed to classify the UCP Assessment as an allowable cost and failed to reimburse Plaintiffs for payments under the UCP.

36. Plaintiffs are entitled to mandamus on a number of separate and independent grounds, including but not limited to those which are detailed in the following paragraphs and also alluded to above.

37. First, the Secretary, CMS, and the intermediary have a clear statutory duty to reopen cost report years at issue and reimburse Plaintiffs because the UCP Assessment payments were necessary and proper costs under the Medicare statute and should have,

but were not, classified by the Secretary, CMS, and/or the intermediary as allowable. Plaintiffs are therefore entitled to relief under mandamus.

38.     Second, the Secretary, CMS and the intermediary have a clear duty to reopen the cost report years at issue and reimburse Plaintiffs under 42 C.F.R. § 405.1885(d) because the Secretary, CMS, and/or the intermediary unlawfully and wrongfully classified the UCP Assessment payments as non-allowable costs and, upon information and belief, passively and/or actively misled Plaintiffs as to whether they were allowable.  This is an additional and independent ground upon which Plaintiffs are entitled to relief under mandamus.

39.     Third, the Secretary and CMS wrongfully delayed giving notice that the intermediary's prior interpretation of the law was incorrect, resulting in the retrospective, three year window for reopening prescribed by 42 C.F.R. § 405.1885(b) being too narrow to cover the cost report periods for which the intermediary should have reimbursed Plaintiffs for the UCP Assessment.  Thus, to the extent Plaintiffs' administrative remedies were curtailed under the reopening regulations, it was a result of matters not reasonably within their control. This is an additional and independent ground upon which Plaintiffs are entitled to relief under mandamus.

40.     Fourth, Plaintiffs have no remedy available to them, other than mandamus, to obtain reimbursement for payments which they made under the UCP.

        **WHEREFORE**, Plaintiffs request that the Court enter an order and issue a writ of mandamus:

        (i)       directing the Secretary and/or its intermediary to reopen Plaintiffs' cost reports covering the time periods referenced in Plaintiffs'

11

complaint and to reclassify the payments made under the UCP as allowable costs and pay Plaintiffs the additional amounts determined through the reopening process, together with an award of both pre-judgment and post-judgment interest on the additional amounts determined throughout the reopening process;

(ii)     stating that this Court retains jurisdiction in this matter until the Secretary and/or the intermediary  have completed the reopening process, up to and including issuing revised NPRs where applicable;

(iii)     requiring the Secretary to submit for the Court's prior approval any further instructions provided to the intermediary with regard to implementing this Court's ruling;

(iv)     awarding Plaintiffs attorney's fees and costs, as permitted by law; and

(v)     awarding such other monetary and equitable relief as this Court deems just and appropriate or is necessary to effectuate any aspect of the Court's award.

Respectfully submitted,

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for the Plaintiffs

Of Counsel:

Murray J. Klein
**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ  08540
(609) 987-0050


Dated:  September 9, 2004

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DANA-FARBER CANCER INSTITUTE**<br>44 Binney Street<br>Boston, MA 02115-6084 | :<br>:<br>:<br>:<br>: Case No:<br>: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| **TOMMY G. THOMPSON, Secretary of**<br>**the United States Department of Health**<br>**and Human Services**<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | :<br>:<br>:<br>:<br>: |
| Defendant. | :<br>: |

## COMPLAINT

Plaintiff Dana-Farber Cancer Institute, by and through its undersigned counsel, states the following by way of complaint against Tommy G. Thompson, Secretary of the Department of Health and Human Services ("the Secretary"):

## NATURE OF THE CASE

1.     This action arises from the Secretary's failure to reopen Plaintiff's cost report for fiscal year 1996, reclassify payments made by Plaintiff under the Massachusetts Uncompensated Care Pool as reimbursable costs, and to make such payments as called for by the reclassification, either directly or through the Secretary's

intermediary. These payments are due and owing under the Medicare statute. Plaintiff brings this action for mandamus to compel the Secretary to perform his non-discretionary duty to reopen Plaintiff's cost report in order to recalculate and issue those payments.

## JURISDICTION

2.    This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq. (the "Medicare statute"). The United States District Court for the District of Columbia has jurisdiction in this matter pursuant to 28 U.S.C. §1361 because (i) the hospital has exhausted all available remedies related to this issue within the meaning of the Medicare statute (by either filing the appropriate request for reopening and/or appeal or because such remedies are either unavailable as a matter of law or futile); and (ii) the Defendant has a clear, non-discretionary duty to act in this case.

## VENUE

3.    Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## THE PARTIES

4.    Plaintiff is a hospital, located at 44 Binney Street, Boston, MA 02115-6084, which furnishes inpatient and outpatient hospital services to, inter alia, patients entitled to benefits under the Medicare program. Plaintiff's Medicare Provider Number is 220162.

5.    Defendant Tommy Thompson is the Secretary of the Department of Health and Human Services, the federal department responsible for the administration of the Medicare and Medicaid programs.

# FACTS

**A.   Background Facts: Medicare Reimbursement In General**

6.      Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65.

7.      Among the benefits provided under Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis.  42 U.S.C. § 1395f(b).

8.      In 1983, Medicare began reimbursing hospitals using the prospective payments system ("PPS").  42 U.S.C. § 1395www(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

9.      The Secretary (or one or more of his predecessors, hereinafter collectively referred to simply as "the Secretary") has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS").

10.      The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.

11.      In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. §§ 413.20(b), 413.24(f).

12.     The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

13.     A provider dissatisfied with its intermediary's determination may, in certain circumstances, file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination. 42 U.S.C. § 1395oo(a).

14.     In addition to filing appeals, providers may, in certain circumstances, obtain relief through an intermediary's reopening of its cost report, without the involvement of the PRRB. There are three types of re-openings set forth in the regulations.

15.     Under the first type of reopening, a dissatisfied provider may file a reopening request with the intermediary, asking the intermediary to reopen and revise a settled cost report within three years of the date that the determination was issued. 42 C.F.R. § 405.1885(a). Jurisdiction for reopening a decision under 42 C.F.R. §405.1885(a) rests with the administrative body that rendered the last determination or decision. 42 C.F.R. § 405.1885(c).

16.     The second type of reopening is mandatory and occurs when an intermediary's determination is required to be reopened under 42 C.F.R. § 405.1885(b) because CMS, within the three-year period in which reopenings are permitted, notifies the intermediary that the initial determination or settlement was inconsistent with applicable law. The version of 42 C.F.R. §405.1885(b) in effect at all times referenced in this complaint stated that an intermediary's decision "shall be reopened and revised by

the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services. . . ." <u>See</u> 67 Fed. Reg. 50096 (August 1, 2002).[1]

17.     The third type of reopening is also mandatory, and requires that "an intermediary's determination "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." 42 C.F.R. 405.1885(d).

**B.     Reimbursable Tax Payments Under the Medicare Program**

18.     The Medicare statute requires intermediaries to reimburse providers for the reasonable and necessary cost of providing services to Medicare beneficiaries:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . . .

42 U.S.C. § 1395x(v)(1)(A).

19.     The Medicare regulations amplify the Medicare statute, stating that reasonable costs include those costs that are "appropriate and helpful in developing and maintaining the operation of patient care facilities" and that are "common and accepted occurrences in the field of the Provider's activities:"

> (a) All payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.  Reasonable cost includes all necessary and proper costs . . . .

---

[1] All citations to 42 C.F.R. § 405.1885 in this complaint, unless otherwise noted, refer to the version of the regulation that was in effect prior to August 1, 2002 and which applies to the claims in this complaint.

* * *

> (b)(2) Necessary and proper costs are costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs that are common and accepted occurrences in the field of the Provider's activities . . . .

42 C.F.R. § 413.9.

20.     The Provider Reimbursement Manual, in accordance with the foregoing principles, contains a general rule stating that all taxes levied by the states upon providers are allowable costs:

> § 2122.1 General Rule
>
> The general rule is that taxes assessed against the provider, in accordance with the levying enactments of the several States and lower levels of government and for which the provider is liable for payment, are allowable costs. Tax expense should not include fines and penalties.

Provider Reimbursement Manual § 2122.1.

## C.     The Massachusetts Uncompensated Care Pool

21.     The Massachusetts Uncompensated Care Pool (the "UCP") provides access to health care for low income uninsured and underinsured residents of Massachusetts.

22.     The UCP is funded, in part, through an assessment (the "UCP Assessment") against each hospital's private sector charges. Mass. Gen. Laws Ann. Ch. 118G, § 18(e) (West 2004).

23.     The UCP Assessment against the hospital is equal to the product of 1) the ratio of the hospital's private sector charges to all acute hospitals' private sector charges; and 2) the private sector liability to the UCP as determined by law less certain surcharges. Mass. Gen. Laws Ann. Ch. 118G, § 18(e) (West 2004).

24.     Each hospital's total UCP Assessment for a fiscal year is setoff against the UCP's liability to the hospital for uncompensated care during the same period, resulting in either a net liability to the UCP or a net distribution from the UCP.

25.     Thus, the UCP charges the hospital's collective private sector revenue to pay for the hospital's collective burden of uncompensated care, resulting in a net transfer of revenue from those hospitals that provide less uncompensated care (as a proportion to the hospitals' total patient service charges) to those that provide more.

26.     The Secretary, CMS, and/or the intermediary, from 1985 until 2003, took the position that the UCP Assessment was not an allowable cost.  Massachusetts Hospitals were strictly forbidden from claiming payments under the UCP.

27.     By way of correspondence dated March 18, 2003, CMS completely reversed its prior position, conceding that the UCP Assessment was an allowable cost.  A copy of the March 18, 2003 correspondence is attached hereto as Exhibit "A."

28.     This is a correct statement of the law because the UCP Assessment is a tax on hospitals which, in accordance with the Medicare statute, is a necessary and proper expense incurred by the hospital for which it should be reimbursed.

**D.     Plaintiff's NPR for Cost Report Year 1996**

29.     Plaintiff's NPR for cost report year 1996 was issued on September 3, 1998 and was received by Plaintiff no earlier than September 5, 1998.  Plaintiff's intermediary failed to include the UCP Assessment as an allowable cost on the 1996 NPR.

30.     Furthermore, CMS failed to instruct the intermediary to reopen Plaintiff's 1996 cost report, and, as a result, the intermediary has under-reimbursed Plaintiff.

# COUNT I

31.     Plaintiff incorporates by reference paragraphs 1-30 herein.

32.     The Secretary's failure to treat the UCP Assessment payments as an allowable cost for cost report year 1996 violates the Medicare statute. The reasonable cost of Medicare services shall be "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." Provider Reimbursement Manual § 2122.1. The classification of such costs as allowable is mandatory and non-discretionary on the part of the Secretary and CMS.

33.     The Secretary, CMS, and the intermediary had an affirmative, non-discretionary duty to (i) correctly reimburse Plaintiff upon the issuance of the initial NPR, (ii) reopen and revise all determinations and hearing decisions, including but not limited to the NPR for 1996, and any amended and/or revised NPR for 1996, irrespective of whether Plaintiff requested reopening, and (iii) thereafter issue payment to Plaintiff reflecting the reimbursement owed by the intermediary for cost report year 1996.

34.     As set forth above, the intermediary violated the Medicare statute by issuing the initial NPR and/or corrected NPR to Plaintiff that failed to classify the UCP Assessment as an allowable cost and failed to reimburse Plaintiff for payments under the UCP.

35.     Plaintiff is entitled to mandamus on a number of separate and independent grounds, including but not limited to those which are detailed in the following paragraphs and also alluded to above.

36.     First, the Secretary, CMS, and the intermediary have a clear statutory duty to reopen the 1996 cost report and reimburse Plaintiff because the UCP Assessment

payments were necessary and proper costs under the Medicare statute and should have, but were not, classified by the Secretary, CMS, and/or the intermediary as allowable. Plaintiff is therefore entitled to relief under mandamus.

37.     Second, the Secretary, CMS and the intermediary have a clear duty to reopen cost report year 1996 and reimburse Plaintiff under 42 C.F.R. § 405.1885(d) because the Secretary, CMS, and/or the intermediary unlawfully and wrongfully classified the UCP Assessment payments as non-allowable costs and, upon information and belief, passively and/or actively misled Plaintiff as to whether they were allowable. This is an additional and independent ground upon which Plaintiff is entitled to relief under mandamus.

38.     Third, the Secretary and CMS wrongfully delayed giving notice that the intermediary's prior interpretation of the law was incorrect, resulting in the retrospective, three year window for reopening prescribed by 42 C.F.R. § 405.1885(b) being too narrow to cover the 1996 cost report period for which the intermediary should have reimbursed Plaintiff for the UCP Assessment.  Thus, to the extent Plaintiff's administrative remedies were curtailed under the reopening regulations, it was a result of matters not reasonably within its control. This is an additional and independent ground upon which Plaintiff is entitled to relief under mandamus.

39.     Fourth, Plaintiff has no remedy available to it, other than mandamus, to obtain reimbursement for payments which it made under the UCP.

**WHEREFORE**, Plaintiff requests that the Court enter an order and issue a writ of mandamus:

(i) directing the Secretary and/or its intermediary to reopen Plaintiff's cost report for 1996 and to reclassify the payments made under the UCP as allowable costs and pay Plaintiff the additional amounts determined through the reopening process, together with an award of both pre-judgment and post-judgment interest on the additional amounts determined throughout the reopening process;

(ii) stating that this Court retains jurisdiction in this matter until the Secretary and/or the intermediary  have completed the reopening process, up to and including issuing a revised NPR where applicable;

(iii) requiring the Secretary to submit for the Court's prior approval any further instructions provided to the intermediary with regard to implementing this Court's ruling;

(iv) awarding Plaintiff attorney's fees and costs, as permitted by law; and

(v) awarding such other monetary and equitable relief as this Court deems just and appropriate or is necessary to effectuate any aspect of the Court's award.

Respectfully submitted,

_Jacqueline E. Bennett_

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for the Plaintiff

Of Counsel:

Murray J. Klein
**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ  08540
(609) 987-0050

Dated:  September 3, 2004

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MILTON HOSPITAL**<br>92 Highland Street<br>Milton, MA 02186-3807 | :<br>:<br>:<br>: |
|  | :  Case No: |
| Plaintiff, | :<br>: |
| v. | :<br>: |
| **TOMMY G. THOMPSON, Secretary of**<br>**the United States Department of Health**<br>**and Human Services**<br>200 Independence Avenue, S.W.<br>Washington, D.C. 20201 | :<br>:<br>:<br>:<br>: |
| Defendant. | :<br>: |

## **COMPLAINT**

Plaintiff Milton Hospital ("Plaintiff"), by and through its undersigned counsel, states the following by way of complaint against Tommy G. Thompson, Secretary of the Department of Health and Human Services ("the Secretary"):

### **NATURE OF THE CASE**

1.     This action arises from the Secretary's failure to reopen Plaintiff's cost report for fiscal year 1996, reclassify payments made by Plaintiff under the Massachusetts Uncompensated Care Pool as reimbursable costs, and to make such payments as called for by the reclassification, either directly or through the Secretary's

intermediary.  These payments are due and owing under the Medicare statute.  Plaintiff

brings this action for mandamus to compel the Secretary to perform his non-discretionary

duty to reopen Plaintiff's cost report in order to recalculate and issue those payments.

## JURISDICTION

2.     This action arises under Title XVIII of the Social Security Act, 42 U.S.C.

§1395 et seq. (the "Medicare statute").  The United States District Court for the District

of Columbia has jurisdiction in this matter pursuant to 28 U.S.C. §1361 because (i) the

hospital has exhausted all available remedies related to this issue within the meaning of

the Medicare statute (by either filing the appropriate request for reopening and/or appeal

or because such remedies are either unavailable as a matter of law or futile); and (ii) the

Defendant has a clear, non-discretionary duty to act in this case.

## VENUE

3.     Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42

U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## THE PARTIES

4.     Plaintiff is a hospital, located at 92 Highland Street, Milton, MA 02186-

3807, which furnishes inpatient and outpatient hospital services to, inter alia, patients

entitled to benefits under the Medicare program.  Plaintiff's Medicare Provider Number

is 220108.

5.     Defendant Tommy Thompson is the Secretary of the Department of

Health and Human Services, the federal department responsible for the administration of

the Medicare and Medicaid programs.

**FACTS**

**A.     Background Facts: Medicare Reimbursement In General**

6.      Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65.

7.      Among the benefits provided under Medicare are hospital services.  For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis.  42 U.S.C. § 1395f(b).

8.      In 1983, Medicare began reimbursing hospitals using the prospective payments system ("PPS").  42 U.S.C. § 1395www(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

9.      The Secretary (or one or more of his predecessors, hereinafter collectively referred to simply as "the Secretary") has delegated much of the responsibility for administering the Medicare Program to the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration (hereinafter collectively referred to as "CMS").

10.     The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.

11.     In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. §§ 413.20(b), 413.24(f).

12.     The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR"). 42 C.F.R. § 405.1803.

13.     A provider dissatisfied with its intermediary's determination may, in certain circumstances, file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination.  42 U.S.C. § 1395oo(a).

14.     In addition to filing appeals, providers may, in certain circumstances, obtain relief through an intermediary's reopening of its cost report, without the involvement of the PRRB.  There are three types of re-openings set forth in the regulations.

15.     Under the first type of reopening, a dissatisfied provider may file a reopening request with the intermediary, asking the intermediary to reopen and revise a settled cost report within three years of the date that the determination was issued.  42 C.F.R. § 405.1885(a).   Jurisdiction for reopening a decision under 42 C.F.R. §405.1885(a) rests with the administrative body that rendered the last determination or decision. 42 C.F.R. § 405.1885(c).

16.     The second type of reopening is mandatory and occurs when an intermediary's determination is required to be reopened under 42 C.F.R. § 405.1885(b) because CMS, within the three-year period in which reopenings are permitted, notifies the intermediary that the initial determination or settlement was inconsistent with applicable law. The version of 42 C.F.R. §405.1885(b) in effect at all times referenced in this complaint stated that an intermediary's decision "shall be reopened and revised by

the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services. . . ." See 67 Fed. Reg. 50096 (August 1, 2002).[1]

17.    The third type of reopening is also mandatory, and requires that "an intermediary's determination "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." 42 C.F.R. 405.1885(d).

B.    **Reimbursable Tax Payments Under the Medicare Program**

18.    The Medicare statute requires intermediaries to reimburse providers for the reasonable and necessary cost of providing services to Medicare beneficiaries:

> The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . . .

42 U.S.C. § 1395x(v)(1)(A).

19.    The Medicare regulations amplify the Medicare statute, stating that reasonable costs include those costs that are "appropriate and helpful in developing and maintaining the operation of patient care facilities" and that are "common and accepted occurrences in the field of the Provider's activities:"

> (a) All payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries. Reasonable cost includes all necessary and proper costs . . . .

---

[1] All citations to 42 C.F.R. § 405.1885 in this complaint, unless otherwise noted, refer to the version of the regulation that was in effect prior to August 1, 2002 and which applies to the claims in this complaint.

\* \* \*

(b)(2) Necessary and proper costs are costs that are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities. They are usually costs that are common and accepted occurrences in the field of the Provider's activities . . . .

42 C.F.R. § 413.9.

20.    The Provider Reimbursement Manual, in accordance with the foregoing principles, contains a general rule stating that all taxes levied by the states upon providers are allowable costs:

§ 2122.1 General Rule

The general rule is that taxes assessed against the provider, in accordance with the levying enactments of the several States and lower levels of government and for which the provider is liable for payment, are allowable costs. Tax expense should not include fines and penalties.

Provider Reimbursement Manual § 2122.1.

## C.    The Massachusetts Uncompensated Care Pool

21.    The Massachusetts Uncompensated Care Pool (the "UCP") provides access to health care for low income uninsured and underinsured residents of Massachusetts.

22.    The UCP is funded, in part, through an assessment (the "UCP Assessment") against each hospital's private sector charges. Mass. Gen. Laws Ann. ch. 118G, § 18(e) (West 2004).

23.    The UCP Assessment against the hospital is equal to the product of 1) the ratio of the hospital's private sector charges to all acute hospitals' private sector charges; and 2) the private sector liability to the UCP as determined by law less certain surcharges. Mass. Gen. Laws Ann. ch. 118G, § 18(e) (West 2004).

24.     Each hospital's total UCP Assessment for a fiscal year is setoff against the UCP's liability to the hospital for uncompensated care during the same period, resulting in either a net liability to the UCP or a net distribution from the UCP.

25.     Thus, the UCP charges the hospital's collective private sector revenue to pay for the hospital's collective burden of uncompensated care, resulting in a net transfer of revenue from those hospitals that provide less uncompensated care (as a proportion to the hospitals' total patient service charges) to those that provide more.

26.     The Secretary, CMS, and/or the intermediary, from 1985 until 2003, took the position that the UCP Assessment was not an allowable cost.  Massachusetts Hospitals were strictly forbidden from claiming payments under the UCP.

27.     By way of correspondence dated March 18, 2003, CMS completely reversed its prior position, conceding that the UCP Assessment was an allowable cost.  A copy of the March 18, 2003 correspondence is attached hereto as Exhibit "A."

28.     This is a correct statement of the law because the UCP Assessment is a tax on hospitals which, in accordance with the Medicare statute, is a necessary and proper expense incurred by the hospital for which it should be reimbursed.

**D.     Plaintiff's NPR for Cost Report Year 1996**

29.     Plaintiff's NPR for cost report year 1996 was issued on August 31, 1998, and was received by Plaintiff no earlier than September 2, 1998.  Plaintiff's intermediary failed to include the UCP Assessment as an allowable cost on the 1996 NPR.

30.     Furthermore, CMS failed to instruct the intermediary to reopen Plaintiff's 1996 cost report, and, as a result, the intermediary has under-reimbursed Plaintiff.

## COUNT I

31.    Plaintiff incorporates by reference paragraphs 1-30 herein.

32.    The Secretary's failure to treat the UCP Assessment payments as an allowable cost for cost report year 1996 violates the Medicare statute. The reasonable cost of Medicare services shall be "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." Provider Reimbursement Manual § 2122.1. The classification of such costs as allowable is mandatory and non-discretionary on the part of the Secretary and CMS.

33.    The Secretary, CMS, and the intermediary had an affirmative, non-discretionary duty to (i) correctly reimburse Plaintiff upon the issuance of the initial NPR, (ii) reopen and revise all determinations and hearing decisions, including but not limited to the NPR for 1996, and any amended and/or revised NPR for 1996, irrespective of whether Plaintiff requested reopening, and (iii) thereafter issue payment to Plaintiff reflecting the reimbursement owed by the intermediary for cost report year 1996.

34.    As set forth above, the intermediary violated the Medicare statute by issuing the initial NPR and/or corrected NPR to Plaintiff that failed to classify the UCP Assessment as an allowable cost and failed to reimburse Plaintiff for payments under the UCP.

35.    Plaintiff is entitled to mandamus on a number of separate and independent grounds, including but not limited to those which are detailed in the following paragraphs and also alluded to above.

36.    First, the Secretary, CMS, and the intermediary have a clear statutory duty to reopen the 1996 cost report and reimburse Plaintiff because the UCP Assessment

payments were necessary and proper costs under the Medicare statute and should have, but were not, classified by the Secretary, CMS, and/or the intermediary as allowable. Plaintiff is therefore entitled to relief under mandamus.

37.     Second, the Secretary, CMS and the intermediary have a clear duty to reopen cost report year 1996 and reimburse Plaintiff under 42 C.F.R. § 405.1885(d) because the Secretary, CMS, and/or the intermediary unlawfully and wrongfully classified the UCP Assessment payments as non-allowable costs and, upon information and belief, passively and/or actively misled Plaintiff as to whether they were allowable. This is an additional and independent ground upon which Plaintiff is entitled to relief under mandamus.

38.     Third, the Secretary and CMS wrongfully delayed giving notice that the intermediary's prior interpretation of the law was incorrect, resulting in the retrospective, three year window for reopening prescribed by 42 C.F.R. § 405.1885(b) being too narrow to cover the 1996 cost report period for which the intermediary should have reimbursed Plaintiff for the UCP Assessment. Thus, to the extent Plaintiff's administrative remedies were curtailed under the reopening regulations, it was a result of matters not reasonably within its control. This is an additional and independent ground upon which Plaintiff is entitled to relief under mandamus.

39.     Fourth, Plaintiff has no remedy available to it, other than mandamus, to obtain reimbursement for payments which it made under the UCP.

**WHEREFORE**, Plaintiff requests that the Court enter an order and issue a writ of mandamus:

(i) directing the Secretary and/or its intermediary to reopen Plaintiff's cost report for 1996 and to reclassify the payments made under the UCP as allowable costs and pay Plaintiff the additional amounts determined through the reopening process, together with an award of both pre-judgment and post-judgment interest on the additional amounts determined throughout the reopening process;

(ii) stating that this Court retains jurisdiction in this matter until the Secretary and/or the intermediary  have completed the reopening process, up to and including issuing a revised NPR where applicable;

(iii) requiring the Secretary to submit for the Court's prior approval any further instructions provided to the intermediary with regard to implementing this Court's ruling;

(iv) awarding Plaintiff attorney's fees and costs, as permitted by law; and

(v) awarding such other monetary and equitable relief as this Court deems just and appropriate or is necessary to effectuate any aspect of the Court's award.

Respectfully submitted,

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for the Plaintiff

10

Of Counsel:

Murray J. Klein
**REED SMITH LLP**
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ  08540
(609) 987-0050

Dated:  August 31, 2004