IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRVIEW HOSPITAL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civ. Action No. 1:05cv01065 (RWR) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR A STAY OF PROCEEDINGS**

OF COUNSEL:
PAULA M. STANNARD
Acting General Counsel

KATHLEEN H. MCGUAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
Counsel

ROBERT BALDERSTON
Attorney
Department of Health
and Human Services

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

SHEILA M. LIEBER
PETER ROBBINS
Department of Justice
20 Massachusetts Avenue, N.W., Room 7142
Washington, D.C. 20530
Tel: (202) 514-3953

Attorneys for Defendant

**TABLE OF CONTENTS**

INTRODUCTION .................................................................. 1

STATEMENT OF THE CASE ....................................................... 1

ARGUMENT ....................................................................... 3

    I.  PLAINTIFFS WILL SUFFER NO HARDSHIP OR INEQUITY IF THEY ARE REQUIRED TO GO FORWARD WITH THEIR OWN CLAIMS .................... 4

    II.  PLAINTIFFS OVERESTIMATE THE ADVANTAGES OF A STAY ............... 6

        A.  The Resolution of Bradley Would Not Necessarily Make Litigation of This Case Unnecessary ............................................................. 6

        B.  The Facts in This Case Differ Substantially from Those in Bradley ........... 8

        C.  The Mere Fact that the Claims in This Action and in Bradley Share Threshold Defects in Common Does Not Justify a Stay ............................. 12

    III.  AN INDEFINITE STAY WOULD PREJUDICE DEFENDANT .................. 13

    IV.  DEFENDANT HAS NOT CHANGED HIS POSITION ON WHETHER THIS ACTION SHOULD BE STAYED ....................................... 15

    V.  WHETHER OTHER CASES SHOULD REMAIN STAYED PENDING A RESOLUTION IN BRADLEY IS IRRELEVANT ............................ 15

CONCLUSION .................................................................... 16

## INTRODUCTION

In this unusual motion, plaintiffs seek to indefinitely delay their own day in court over the opposition of the defendant. The motion should be denied for three reasons. First, plaintiffs have not alleged – let alone proven – that they would suffer any hardship if they are required to respond to defendant's pending motion to dismiss and move forward with their own case. Second, plaintiffs have not shown that judicial resources would necessarily be saved as a result of the indefinite stay they request. Third, defendant would be prejudiced by a stay, particularly if the vague allegations currently pled in plaintiffs' complaint later take a more fact-specific turn that makes discovery into the memories of decades-old events necessary. The bottom line here is simple. This case can – and should – be swiftly disposed of on the basis of the thorough arguments presented in defendant's motion to dismiss. It should not be left to languish indefinitely merely because a somewhat similar, but ultimately unrelated, case is also pending elsewhere.

## STATEMENT OF THE CASE

Plaintiffs are three hospitals that seek reimbursement under the Medicare program for certain taxes that they paid to the Commonwealth of Massachusetts during a period from 1985 through 2001. Plaintiffs apparently did not claim the taxes as a reimbursable expense on any of their annual Medicare cost reports. To correct their omission, the hospitals now seek a writ of mandamus to force the two "fiscal intermediaries," which originally processed the cost reports, to reopen long-final determinations of payment amounts. Defendant is the Secretary of Health and Human Services, who administers the Medicare program through the Centers for Medicare & Medicaid Services ("CMS").

Three claims are asserted in plaintiffs' complaint.  First, plaintiffs contend that the Secretary has an unspecified and (heretofore unknown) "statutory duty" to "reopen" their payments determinations, Complaint at ¶ 36, even though the time for submitting an administrative appeal, pursuant to 42 U.S.C. § 1395oo, has long since elapsed.  Second, plaintiffs claim that the Secretary "wrongfully delayed" issuing a "notice" regarding the Medicare treatment of the state tax, Complaint at ¶ 38, and this alleged delay triggered another unspecified (and heretofore unknown) duty to reopen final payment determinations.  Third, plaintiffs claim they have a right to a reopening under the regulation at 42 C.F.R. § 405.1885(d) because "the Secretary, CMS and/or the intermediar[ies]" (plaintiffs are not sure who) "passively and/or actively misled" them (plaintiffs are not sure which) about the possible status of the state tax as an "allowable" cost.  Complaint at ¶ 37.  The complaint does not identify any allegedly false statement made by a governmental actor.  Nor does it explain why plaintiffs did not simply claim the Massachusetts tax assessment on their annual cost reports and, if necessary, pursue the administrative appeal rights established for them by Congress in 42 U.S.C. § 1395oo.

On September 7, 2005, defendant moved to dismiss or, in the alternative, for summary judgment.  In his dispositive motion, the Secretary pointed out that each of the three plaintiff hospitals had already received state-tax reimbursement for many of the cost-reporting periods that they were attempting to place in issue.  These reimbursements were obtained either by pursuing statutory appeal rights available under 42 U.S.C. § 1395oo, by requesting a permissive reopening available under 42 C.F.R. § 405.1885(a), or by amending a cost report on which no final determination had yet been issued.  Defendant's Memorandum in Support of His Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def. Mem.") at 9-11.  Plaintiffs responded on October 7, 2005 by filing an amended complaint withdrawing claims for these

cost-reporting periods.  In so doing, plaintiffs effectively admitted that the administrative processes by which reimbursement was obtained for these particular years would not have been futile if they had been diligently pursued for the remaining periods at issue.  Thus, the amendment of the complaint all but openly concedes that all claims should be dismissed for, at the very least, failure to exhaust available and effective administrative remedies.  Def. Mem. at 26-34.

Plaintiffs' only other response to defendant's motion to dismiss was delay.  First, they requested and were granted a three-week enlargement of time in which to file their opposition to defendant's motion to dismiss.  They apparently never intended to file the opposition, however.  On the day the enlargement expired and more than four months after the complaint was filed, plaintiffs moved for an indefinite stay of their action, pending the outcome of an unrelated case, Bradley Memorial Hospital v. Leavitt, No. 04-416 (EGS) (D.D.C.).  For the reasons stated below, the motion should be denied, and this action should proceed to a speedy resolution.

## ARGUMENT

As this Court has repeatedly made clear, "a stay is not automatic," MCI Comm'ns Corp. v. AT&T Co., 1982 WL 1806 at *4 (D.D.C. Feb. 18, 1982), merely because one side of a case wants one.  "The proponent of a stay bears the burden of establishing its need," Clinton v. Jones, 520 U.S. 681, 708 (1997), and that need must be "obvious."  Landis v. North American Co., 299 U.S. 248, 257 (1936).  As a threshold matter, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward."  Id. at 255.  "Only after the applicant for a stay has met this initial burden must the court balance the competing interests," Ellsberg v. Mitchell, 353 F. Supp. 515, 517 (D.D.C. 1973), to determine if the putative advantages of delay would "override[] the injury to the parties being stayed."  Dellinger v. Mitchell, 442 F.2d 782,

-3-

787 (D.C. Cir. 1971). At all stages of this analysis, the "burden of making out the justice and wisdom of a departure from the beaten track" lies "heavily" on the "suppliants for relief." <u>Landis</u>, 299 U.S. at 256. This Court has repeatedly emphasized that it is an abuse of discretion to grant "a stay of indefinite duration in the absence of a pressing need," <u>Barton v. District of Columbia</u>, 209 F.R.D. 274, 278 (D.D.C. 2002) (quoting <u>McSurely v. McClellan</u>, 426 F.2d 664, 671 (D.C. Cir. 1970)), and this is especially true where, as here, a plaintiff seeks to stay his own case after dispositive briefing by the defendant has already begun. <u>See, e.g.</u>, <u>Hisler v. Gallaudet Univ.</u>, 344 F. Supp. 2d 29, 35-36 (D.D.C. 2004). Plaintiffs have not shown any pressing need for a stay here, let alone an obvious one.

### I. PLAINTIFFS WILL SUFFER NO HARDSHIP OR INEQUITY IF THEY ARE REQUIRED TO GO FORWARD WITH THEIR OWN CLAIMS.

At the outset, plaintiffs do not even attempt to explain what hardship they would suffer if they are required to prosecute their own claims without further delay. Nor could any legally cognizable inequity be imagined for them. Standing alone, the mere prospect that pursuit of their own case might "consume" some "time and attention" is not enough to establish that plaintiffs are entitled to a stay. <u>Clinton</u>, 520 U.S. at 708. "The simple and well-settled answer to this argument is that the usual costs attendant to litigation, however great and duplicative, do not warrant a stay." <u>Painters' Pension Trust Fund v. Manganaro Corp.</u>, 693 F. Supp. 1222, 1225 (D.D.C. 1988) (citing <u>McSurely</u>, 697 F.2d at 317 n.13). If plaintiffs did not want the expense of litigation, their solution was to stay out of court.

Plaintiffs also cannot be deemed to face hardship merely because "the same [legal] question is involved before another court," <u>Dellinger</u>, 442 F.2d at 787, or because "there may be overlapping factual issues." <u>DSMC, Inc. v. Convera Corp.</u>, 273 F. Supp. 2d 14, 31 (D.D.C.

-4-

2002). Particularly where dispositive briefing has already begun, merely "stating a possibility of inconsistencies in rulings on the same issue, without any explanation on how [the] claim will suffer any harm, does not establish, in itself, a 'clear case of hardship,'" Hisler, 344 F. Supp. 2d at 35 (citing GFL Advantage Fund, Ltd. v. Colkitt, 216 F.R.D. 189, 193 (D.D.C. 2003) (Facciola, Mag. J.)). The "danger" of "inconsistent verdicts" "lurks in this and every other case involving simultaneously pending proceedings" and "cannot by itself mandate that the court discontinue its proceedings." Painters', 693 F. Supp. at 1225.

  Nor can any claim of hardship be based on the particularized expense of merely filing an opposition to defendant's motion to dismiss. If, as plaintiffs contend, "the very same legal defenses" were raised in the Bradley case, Pl. Mem.[1] at 9, then there is no "reason why the same briefs . . . cannot be submitted in this court," as well. Painters', 693 F. Supp. at 1225 n.1. Indeed, plaintiffs appear to have spent more time and effort trying to postpone filing a response to defendant's motion to dismiss than it would have taken simply to write one (or, according to them, copy one from the Bradley template). If as plaintiffs assert, their opposition to defendant's motion to dismiss would merely be "deja-vu, all over again," Pl. Mem. at 11, it would not require much effort to reprise. If, on the other hand, plaintiffs "find it necessary to re-brief or re-argue previous recitations, then there is obviously more to this case than mere duplication of other proceedings." Painters', 693 F. Supp. at 1225 n.1. Either way, a stay is not justified by any legally cognizable hardship to plaintiffs. Simply put, it imposes no unfairness on plaintiffs merely to ask them to defend the claims that they themselves filed.

---

[1] Plaintiffs' Memorandum in Support of Motion for a Stay of Proceedings.

## II. PLAINTIFFS OVERESTIMATE THE ADVANTAGES OF A STAY.

In the absence of any credible evidence of hardship or inequity, it is not necessary for this Court to address whether the putative advantages of a stay (in terms of possible judicial economy) might outweigh potential harm to defendant and the public interest in a just and speedy resolution of the case. However, plaintiffs make three critical mistakes in balancing the equities. First, they overestimate the extent to which it is likely that the issues in this action might be resolved by the outcome in Bradley. Second, they underestimate the value of having more than one judge rule on those questions of law which the two cases continue to share in common (despite the fact that both complaints now have been significantly amended by their respective plaintiffs). Third, plaintiffs completely ignore the prejudice to defendant. Properly understood, each of these considerations weighs against a stay.

### A. The Resolution of Bradley Would Not Necessarily Make Litigation of This Case Unnecessary.

For openers, plaintiffs' contention that prompt prosecution of their case would "simply waste[] judicial time and resources," Pl. Mem. at 2, ignores the fact that there is at least one important issue raised here on which the outcome in Bradley would have absolutely no effect at all. One of defendant's arguments in support of his motion to dismiss is that plaintiffs' vague allegation that they were "passively and/or actively misled" by some unspecified government actor, Complaint at ¶ 37, fails to comply with the heightened standards for pleading fraud or mistake mandated by Fed. R. Civ. P. 9(b). Def. Mem. at 24-26. Indeed, it was in response to a Rule 9(b) motion that the plaintiffs in Bradley amended their original complaint, even after one

round of dispositive briefing had already been completed. <u>Bradley</u> Pl. S.J. Reply[2] at 3 (Def. Ex. A). A holding in <u>Bradley</u> that the plaintiffs had fixed the problem (by making more specific allegations) would do nothing to resolve the question of whether the bare allegations pled in this action are sufficient to satisfy Rule 9(b). Conversely, a holding that the amended complaint in <u>Bradley</u> still does not satisfy the requirements of Rule 9(b) would not address, at least not directly, the question of whether the same problem exists here. This threshold difference between the cases, standing alone, is enough to make it difficult "to predict with any confidence that the interests of judicial economy and efficiency will be promoted by the issuance of stay." <u>Painters'</u>, 693 F. Supp. at 1224.

Plaintiffs also overlook the fact that the <u>Bradley</u> plaintiffs have abandoned two of the three legal theories that they originally shared in common with this action. The <u>Bradley</u> plaintiffs no longer argue that "the Secretary, CMS and the intermediary have a clear duty statutory duty to reopen the cost report years at issue," Pl. Mem. at 3 (citation omitted), and they no longer contend that the Secretary "wrongfully delayed" the issuance of an advisory opinion, in any way that implicates a reopening obligation under 42 C.F.R. § 405.1885(b). Pl. Mem. at 4. The only claim currently being pursued by the <u>Bradley</u> plaintiffs is the one alleging that they have a right to reopening under 42 C.F.R. § 405.1885(d) October 24, 2005on the basis of some putative fraud-like conduct on the part of the fiscal intermediaries that processed some of the relevant cost reports. See <u>Bradley</u> Pl. S.J. Mem.[3] at 15-36 (Def. Ex. B). With respect to the first two issues,

---

[2] <u>Bradley</u> Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Cross Motion for Summary Judgment (<u>Bradley</u> Doc. 18).

[3] <u>Bradley</u> Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint and Plaintiffs' Cross-Motion for Summary Judgment (<u>Bradley</u> Doc. 25).

there is no point in delaying this case pending the outcome in <u>Bradley</u>. The <u>Bradley</u> court is not likely to rule on issues that the plaintiffs there have abandoned.

### B. The Facts in This Case Differ Substantially from Those in <u>Bradley</u>.

With respect to the one claim that does remain live in <u>Bradley</u>, the facts currently alleged in that case differ dramatically from those pled here. In this case, three hospitals seek to force the Secretary to reopen final payment determinations for cost-reporting years from 1985 through 2001. As was discussed above, the hospitals apparently did not claim a particular state tax as an allowable expense on their cost reports because they did not think it was reimbursable under Medicare law. Def. Mem. at 8. In 2002, plaintiff Fairview Hospital had second thoughts about its position and submitted a request for permissive reopening, pursuant to 42 C.F.R. § 405.1885(a), to its intermediary, Mutual of Omaha Insurance Company ("Mutual of Omaha"). Def. Mem. at 9. Without consulting CMS, the intermediary concluded that the tax was reimbursable and granted the reopening request one month later. <u>Id</u>. Fairview's grievance against Mutual of Omaha apparently is that the intermediary "passively and/or actively misled" it, Complaint at ¶ 37, by not providing an advisory opinion on the treatment of the Massachusetts tax before the hospital asked for one.

The other two plaintiff hospitals, Tufts-New England Medical Center ("Tufts") and Mount Auburn Hospital ("Mount Auburn") also apparently failed to claim the Massachusetts tax on their cost reports. The intermediary that processed their claims, Associated Hospital Services ("Associated"), also did not think the tax was reimbursable, Def. Mem. at 9-10, although there is no allegation in plaintiffs' complaint that the intermediary ever communicated this opinion to either hospital. In response to reopening requests submitted by other hospitals, the intermediary sought guidance from CMS. <u>Id</u>. CMS concluded that the tax was reimbursable, <u>id</u>. at 10, and the

-8-

intermediary notified all Massachusetts hospitals for which it processed claims of the opinion. Id. Tufts benefitted from the notice by amending existing administrative appeals, filing requests for reopenings, and correcting omissions in cost reports on which final determinations had not yet been issued. Id. Mount Auburn benefitted by submitting reopening requests and correcting pending cost reports. Id. at 10-11. The plaintiffs' grievance against Associated is apparently that the intermediary "passively and/or actively misled" them, Complaint at ¶ 37, by not providing an advisory opinion on the treatment of the Massachusetts tax before any hospital in the state asked for one.

Those allegations stand in marked contrast to the assertions in Bradley. In that case, twenty-seven hospitals in Connecticut seek to reopen final payment determinations for cost-reporting years in 1994 through 1996. Bradley Def. Dismiss Mem.[4] at 1, 12 (Pl. Ex. 8). The payment determinations for those years were rendered by four different intermediaries, two of which were Blue Cross and Blue Shield of Connecticut ("Connecticut Blue Cross") and its successor, Anthem Blue Cross and Blue Shield of Connecticut ("Anthem"). Bradley Def. S.J. Opp.[5] at 17 (Def. Ex. C). A fifth intermediary, Empire Medicare Services ("Empire") took over Anthem's duties in 1999, but was not involved in any of the payment determinations at issue in Bradley. Id. at 17-18. Empire also processes the Medicare claims of hospitals in New York. Id. at 12.

---

[4] Bradley Defendant's Memorandum in Support of His Motion to Dismiss Plaintiffs' First Amended Complaint (Bradley Doc. 23).

[5] Bradley Defendant's Opposition to Plaintiffs' Second Motion for Summary Judgment (Bradley Doc. 30).

In July 1995, the Secretary informed Empire that a New York tax on gross receipts, which had previously been thought to be non-reimbursable, was an allowable cost. Id. The Bradley plaintiffs allege that, sometime "in or around 1995," a representative of Connecticut Blue Cross attended a technical conference of intermediaries at which the topic of the Medicare treatment of state taxes was discussed. Id. at 13. They allege that Connecticut Blue Cross and its successor, Anthem, thought that a Connecticut tax on hospital gross earnings was not reimbursable, id. at 13-15, although they do not allege that the intermediaries ever communicated this position to any plaintiff hospital. Id. at 22-26. They do allege that Empire later told one plaintiff hospital that the Connecticut tax was not reimbursable. Id. at 17-18, 35-36.

On the basis of these allegations, the Bradley plaintiffs theorize as follows: (a) Connecticut Blue Cross and Anthem might have been aware of the New York opinion issued by the Secretary; (b) the intermediaries might have thought that the reasoning in the New York opinion applied equally to the Connecticut tax; (c) the intermediaries might have continued to hold the position that the Connecticut tax was not reimbursable in deliberate defiance of the Secretary's implied instructions; and (d) the intermediaries might have communicated this position to the twenty-seven plaintiff hospitals at unidentified times and places. Id. at 11-15. This string of hypothesized events, the Bradley plaintiffs contend, accounts for their failure to claim the Connecticut tax on their cost reports. They refuse to believe the explanation of their own accounting firm, which told the Secretary in a 2001 letter that the hospitals voluntarily adopted an "accepted industry practice" of not claiming the Connecticut tax because they were concerned about possible ramifications for state Medicaid funding. Id. at 8 (citation omitted).

The plaintiffs in this case and the plaintiffs in Bradley certainly both allege that their respective intermediaries committed "fraud or similar fault" within the meaning of 42 C.F.R.

-10-

§ 405.1885(d). But that is where the similarities end. To rule in favor of the plaintiffs in Bradley, the Court would have to conclude, among other things, the following: (a) that Connecticut Blue Cross and Anthem were aware of the New York opinion; (b) that the New York opinion contained implied instructions about how intermediaries should treat Connecticut taxes; (c) that Connecticut Blue Cross and Anthem intentionally or negligently defied those putative instructions; and (d) that the intermediaries misled Connecticut hospitals about the status of the Connecticut tax in twenty-seven separate communications.

Such an outcome would be astonishing. But, if it did occur, it obviously would do nothing to resolve whether Mutual of Omaha and Associated ever "passively" or "actively misled" any of the three hospitals in this case about Medicare treatment of a Massachusetts tax. Complaint at ¶ 37. Resolution of the factual issues in Bradley – which are in themselves dispute, see Bradley Def. S.J. Mem. at 15-26; Bradley Def. Fact Statement[6] at ¶¶ 1-21 (Def. Ex. D); Bradley Robbins Dec.[7] at ¶¶ 1-12 (Def. Ex. E) – would do little to inform the correct result in this action. The only effect of a stay would be to delay this case while unrelated factual disputes are resolved in another case. See Lockyear v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005) (upholding denial of stay where and it is "doubtful" that outcome in one case would "provide a legal resolution" in another case); Dellinger, 442 F.2d at 787 (stay denied where other case "may be disposed of without determination of the issues presented in this civil litigation"). And this especially true where, as here, there is no assurance that the factual disputes in Bradley "will be concluded within a reasonable time." Lockyear, 398 F.3d at 1111. The dissimilar factual

---

[6] Bradley Defendant's Statement of Material Facts in Dispute (Bradley Doc. 30-8).

[7] Bradley Rule 56(f) Declaration of Peter Robbins (Bradley Doc. 30-7).

allegations in Bradley and those in this case cannot plausibly be characterized as "deja-vu, all over again." Pl. Mem. at 11. A more appropriate malapropism might be: "The future ain't what it used to be." Yogi Berra, The Yogi Book: "I Didn't Really Say All the Things I Said" 118-19 (1998).

### C. The Mere Fact that the Claims in This Action and in Bradley Share Threshold Defects in Common Does Not Justify a Stay.

To be sure, there are some similarities between the defenses raised in this action and the defenses raised in Bradley. In both cases, this Court should dismiss the claims for failure to exhaust administrative remedies. In both cases, this Court should conclude that plaintiffs have no right to a reopening under 42 C.F.R. § 405.1885(d) on the basis of any set of facts because the regulation, by its express terms, does not apply to the actions of intermediaries in issuing their own payment determinations. In both cases, this Court should conclude that an opinion of law is not a statement of material fact about which a fraudulent or negligent misrepresentation can be made. In both cases, this Court should conclude that the Secretary and his agents have no legal duty to provide hospitals with unsolicited opinions on specific Medicare questions. In both cases, this Court should conclude that the alleged reliance on the putative legal opinions of Medicare fiscal agents is unjustifiable as a matter of law. But plaintiffs make no argument that they are so certain to lose on these threshold issues that their resolution "will be substantial or dispositive." MCI Comm'ns, 1982 WL 1806 at *4. Mere speculation that another case might "resolve certain central issues" and help "winnow this action to its core" is not enough, standing alone, to support a stay. Painters', 693 F. Supp. at 1225.

Nor is it necessarily wasteful for two judges of this Court to rule on the same issues. As the Court of Appeals for this Circuit has stated, the "addition of another view at the intermediate

level on a issue of national consequence and highest significance provides a different focus that is not necessarily an evil but may, on the contrary, serve like a stereopticon to enhance depth perception." Dellinger, 442 F.2d at 788. Whether, in the absence of opposition, the similarities between this action (as currently amended) and Bradley (as currently amended) might be sufficient to make a stay mutually desirable is beside the point. In the face of opposition, the mere fact that some of the threshold defenses are common to both cases is not enough to warrant a stay.

### III. AN INDEFINITE STAY WOULD PREJUDICE DEFENDANT.

Whatever value a stay might be deemed to have in terms of judicial economy does not outweigh the prejudice to defendant. As a general rule, "[p]ostponing the resolution of the issues raised in this case for some indefinite time does not comport with the efficient and timely resolution of matters before federal courts." DSMC, 273 F. Supp. 2d at 31. If plaintiffs are correct in their belief that the facts in this action are more "favorable to the government," at least from defendant's point of view, than the facts in Bradley, Pl. Mem. at 12, then it goes without saying that it would be prejudicial to defendant if he were prevented from going forward with his defenses in the most favorable light. In addition, plaintiffs had more than three months to seek a stay before defendant filed his motion to dismiss, if they felt that their interests would be severely harmed without one. It is simply unfair to grant a stay after briefing has begun and defendant has been put to the expense and burden of litigation. As the Supreme Court has emphasized, the cheapest and most efficient way to dispose of "frivolous and vexatious litigation" is to terminate the case "at the pleading stage or on summary judgment" as quickly as possible. Clinton, 520 U.S. at 708.

Even more importantly, however, if this action eventually goes the more fact-intensive route that the Bradley case has gone, then the sooner factual development begins, the better. Some of the claims already date back to 1985 as it is. Defendant would be severely prejudiced if any discovery that later proves necessary to resolve this action were to be delayed indefinitely pending unrelated discovery, an unrelated ruling and an unrelated appeal in Bradley. See DSMC, 273 F. Supp. 2d at 31 ("A stay issued prior to the completion of discovery is particularly problematic, as with time the evidence may be lost and memories fade."). In light of the significant factual disputes that now exist in Bradley, it would not be fair to make defendant wait indefinitely for resolution of issues that will have no ultimately dispositive outcome here.

Finally, a stay might also conceivably prejudice defendant by giving plaintiffs an opportunity to avoid inconsistencies between their claims in this case and the positions taken by their counsel on behalf of the plaintiffs in Bradley. For instance, the Bradley plaintiffs have taken the position that exhaustion of statutory appeal rights under 42 U.S.C. § 1395oo and permissive reopening opportunities under 42 C.F.R. § 405.1885(a) would have been futile. In this case, however, each of the plaintiffs successfully pursued statutory and regulatory remedies. Indeed, the hospitals forthrightly withdrew certain of their claims precisely because these remedies were successfully pursued.

### IV. DEFENDANT HAS NOT CHANGED HIS POSITION ON WHETHER THIS ACTION SHOULD BE STAYED.

Plaintiffs' contention that defendant has undergone a "change in position" on whether this action should be stayed pending the outcome in Bradley, Pl. Mem. at 2, is puzzling. Defendant has never previously had occasion to take a position on whether or not this action should be stayed. The question arose for the first time when plaintiffs filed the present motion for a stay.

The joint memorandum in which they attempt to find support for their motion, id. at 6-7, concerned <u>other</u> actions and the <u>original</u> complaint in <u>Bradley</u>.  It was written before <u>Bradley</u> was amended and before this case was filed.  As was discussed above, the <u>amended</u> complaint in <u>Bradley</u> makes Connecticut-specific allegations that appear nowhere in the original complaint and have nothing to do with the very different events that occurred in this case.  The counsel that amended the <u>Bradley</u> complaint (after a full round of dispositive briefing had already been completed) can hardly be heard to argue here that the new allegations in the amended complaint were unimportant.

## V. WHETHER OTHER CASES SHOULD REMAIN STAYED PENDING A RESOLUTION IN <u>BRADLEY</u> IS IRRELEVANT.

The last three pages of plaintiffs' opening memorandum are devoted to an irrelevant argument about whether <u>other</u> cases involving Medicare reimbursement and Massachusetts taxes should remain stayed pending the outcome in <u>Bradley</u>.  Pl. Mem. at 11-13.  This discussion is pointless.  For the reasons discussed previously, the allegations pled in the amended complaint in <u>Bradley</u> are hardly identical to the allegations pled in the amended complaint in this case.  They are not even particularly close.  Plaintiffs cannot change that fact by looking backward to the claims that were originally pled in <u>Bradley</u> in search of similarities to the claims currently being pled in other cases.  Whether those actions should or should not be stayed – and whether their stays should be modified to account for the substantial amendments to the <u>Bradley</u> complaint – is completely irrelevant here.[8]

---

[8] In the related cases, defendant has argued that the best approach is simply to substitute this action for <u>Bradley</u> as the "lead case," instead of continuing to try to make <u>Bradley</u> play a role for which it is becoming increasingly unsuited.  For purposes of deciding the present motion, it makes no difference whether this approach is "wildly off the mark," Pl. Mem. at 11, or dead on target.  But, in passing, defendant notes that there is nothing off the mark about revisiting the

## CONCLUSION

The issue presently before this Court is whether plaintiffs have met their burden of showing an obvious hardship or inequity if they are required to pursue their own case without further delay. Because they have not met this test, the motion should be denied.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL:<br>PAULA M. STANNARD<br>Acting General Counsel | PETER D. KEISLER<br>Assistant Attorney General |
| KATHLEEN H. MCGUAN<br>Associate General Counsel | KENNETH L. WAINSTEIN<br>United States Attorney |
| MARK D. POLSTON<br>Deputy Associate General<br>Counsel | SHEILA M. LIEBER<br>PETER ROBBINS<br>Department of Justice |
| ROBERT BALDERSTON<br>Attorney<br>Department of Health<br>and Human Services | 20 Massachusetts Avenue, N.W., Room 7142<br>Washington, D.C. 20530<br>Tel: (202) 514-3953<br>Attorneys for Defendant |

---

usefulness of a stay as cases evolve during the course of litigation. "When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay sua sponte or upon motion." Marsh v. Johnson, 263 F. Supp. 2d 49, 52 (D.D.C. 2003). Similarly, where a stay has outlived its utility, "the fetters should fall off," and "the court that made it may be persuaded at a later time to undo what it has done," Landis, 299 U.S. at 257. That Bradley is drifting further and further away from the other Massachusetts cases is undeniable. But the manner in which that problem should be fixed should be addressed in those actions, not here.