IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAIRVIEW HOSPITAL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. Action No. 1:05cv01065 (RWR) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRADLEY MEMORIAL HOSPITAL, <u>et al.</u>,  )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )  Civ. Action No. 1:04cv00416 (EGS)
                                        )
MICHAEL O. LEAVITT,                     )
                                        )
        Defendant.                      )
_____)

# EXHIBIT 6
## TO
### DEFENDANT'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRADLEY MEMORIAL HOSPITAL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civ. Action No. 1:04cv00416 (EGS) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| | ) |
| Defendant. | ) |

## RULE 56(f) DECLARATION OF PETER ROBBINS

I, Peter Robbins, declare as follows:

1. I am a trial attorney employed by the United States Department of Justice. I am a counsel for defendant in the above-captioned action. The information in this declaration is based on my personal knowledge and information provided to me in the course of my official duties.

2. For the reasons stated in defendant's opposition to plaintiffs' motion for summary judgment, defendant believes that plaintiffs' motion for summary judgment should be denied because plaintiffs have not submitted sufficient undisputed and admissible evidence to convince a reasonable trier of fact that judgment should be entered in their favor as a matter of law. The purpose of this declaration is to set forth, in the alternative, factual issues as to which defendant requires discovery before he can fully respond to the factual assertions made in plaintiffs' motion for summary judgment. This declaration is not intended to suggest that the evidence submitted in support of plaintiffs' motion for summary is, if true, legally sufficient to support their motion for summary judgment. This declaration is submitted for the purpose of satisfying the requirements of Fed. R. Civ. P. 56(f).

3. Plaintiffs include twenty-seven hospitals. Among other things, they allege that misrepresentations were made to them and/or information was wrongfully concealed from them concerning the Medicare treatment of a Connecticut state tax known as the Gross Earnings Tax ("GET") during communications with fiscal intermediaries in connection with cost reports for cost-reporting periods in 1994-1996. Twenty-six of the plaintiffs have not submitted any declaration in support of their motion for summary judgment. In the absence of discovery, defendant is unable to determine the following facts:

    (a) what, if any, communications took place;

    (b) who, if anyone, participated in these communications;

    (c) when, if ever, these communications took place;

    (d) what, if anything, was said concerning the GET tax;

    (e) what, if anything, was left unsaid concerning the GET tax;

    (f) the extent, if any, to which plaintiff hospitals believed that any statements alleged to be false and alleged to have caused injury were true;

    (g) the extent, if any, to which plaintiff hospitals believed any information left unsaid created a misleading impression alleged to have caused injury, and how;

    (h) the extent, if any, to which plaintiff hospitals undertook to investigate the truthfulness or falseness of any statements or of any misleading impressions created by omissions that are alleged to have caused injury;

    (i) the extent, if any, to which plaintiff hospitals relied on any statements or omissions of intermediary personnel in their submission of cost reports for the relevant 1994-1996 cost-reporting periods;

(j) the reasons, if any, why plaintiff hospitals relied on any statements or omissions of intermediary personnel;

(k) the reasons, if any, why the plaintiff hospitals conformed to what plaintiffs' evidence alleges to be "the accepted industry practice" of not claiming the GET tax on cost reports or reporting the GET tax on cost reports. Letter of Rex. A Shera dated August 31, 2001 ("Shera Letter") at 3 (Pl. Ex. 1-A);

(l) the extent, if any, to which Medicaid considerations played a role in the adoption of the accepted industry practice of not claiming or reporting the GET tax on cost reports;

(m) whether intermediary personnel ever told plaintiff hospitals that they were not "permitted" to claim the GET tax on their cost reports, as alleged in paragraph 8 of the Declaration of Rex A. Shera ("Shera Declaration") (Pl. Ex. 1), and, if so, the date, manner and precise contents of those communications;

(n) all records and documents relevant to any of the foregoing.

This information is within the knowledge of plaintiff hospitals and is not available to defendant.

4. The absence of the information in paragraph 3 from plaintiffs' submission in support of their motion for summary judgment leads to the reasonable inference that discovery will show that no communications were made by intermediaries to plaintiff hospitals about the GET tax upon which the hospitals relied in connection with the submission of cost reports for the 1994-1996 cost-reporting years, or, if any such communications were made, they included no fraudulent or negligent misrepresentations of material fact.

5. In support of their motion for summary judgment, plaintiffs have submitted the

Declaration of William Mcintyre ("Mcintyre Declaration") (Pl. Ex. 2), an employee of plaintiff Griffin Hospital. With respect to the averments in this declaration, defendant requires discovery on the following:

    (a) the date of the communication with an employee of Empire Medicare Services ("Empire") referenced in paragraph 2 of the declaration;

    (b) the name of the Empire employee and of any other parties to the communication;

    (c) the manner of the communication;

    (d) the reason for the communication;

    (e) the location of the communication;

    (d) the complete contents of the communication;

    (e) whether the declarant and/or plaintiff Griffin Hospital relied on the communication in connection with cost reports for cost-reporting periods in 1994-1996;

    (f) the nature, if any, of any such reliance;

    (g) whether the declarant and/or Griffin Hospital believed the statements, if any, made in the communication were true;

    (h) whether the declarant and/or Griffin Hospital considered the Empire employee to be the final authority on the matters, if any, discussed in the communication;

    (i) the nature, if any, and results, if any, of any further inquiry made by the declarant or other Griffin Hospital employee in response to the communication;

    (j) all records and documents relevant to the communication;

    (k) whether intermediary personnel ever told the declaration that hospitals were not "permitted" to claim the GET tax on their cost reports, as alleged in paragraph 8 of the Shera Declaration, and, if so, the date, manner and precise contents of those communications.

This within the knowledge of the declarant and/or plaintiff Griffin Hospital, and is not available to defendant.

6. The absence of the information in paragraph 5 from the McIntyre Declaration leads to the reasonable inference that discovery will show that no communications were made by intermediaries to plaintiff Griffin Hospital about the GET tax upon which it relied in connection with the submission of cost reports for the 1994-1996 cost-reporting years, or, if any such communications were made, they included no fraudulent or negligent misrepresentations of material fact.

7. In support of their motion for summary judgment, plaintiffs have submitted the Declarations of Douglas Payne ("Payne Declaration") ("Pl. Ex. 3) and Maureen Joslin ("Joslin Declaration") (Pl. Ex. 4). With respect to the averments in paragraph 4 of the Payne Declaration and paragraph 4 of the Joslin declaration, defendant requires discovery on the following:

(a) the dates, if any, on which the referenced regional meetings, if any, occurred.

(b) the participants, if any, at these regional meetings;

(c) whether the Letter of Anthony J. Seubert dated June 26, 1995 ("New York Opinion) (Pl. Ex. 1-D) or its contents were discussed in any manner at these regional meetings;

(d) whether the contents of the New York Opinion were known to employees at Blue Cross and Blue Shield of Connecticut ("Connecticut Blue Cross") at a time when cost reports for plaintiffs' 1994-1996 cost-reporting years were processed;

(e) whether the New York Opinion was relied upon by Connecticut Blue Cross employees in connection with plaintiffs' 1994-1996 cost reports;

(f) whether the GET tax was discussed at the meetings;

(g) the precise nature, contents and scope of the agreement alleged in paragraph 4 of the Payne Declaration to have been reached and the manner, if any, of its memorialization;

(h) whether the agreement alleged in paragraph 4 of the Payne Declaration to have been reached was reached in good faith and in an otherwise reasonable manner;

(i) all documents referenced in paragraph 4 of the Joslin Declaration.

This information is within the knowledge of the declarants and is not available to defendant.

8. The absence of the information in paragraph 7 of this declaration from the Payne Declaration and the Joslin Declaration and the absence of the documents described in paragraph 4 of the Joslin Declaration leads to the reasonable inference that discovery will show that:

(a) the New York Opinion was not in existence at the time of the meetings referenced in paragraph 4 of the Payne Declaration or, if it was in existence, the New York Opinion was not discussed at these meetings;

(b) any agreement reached at these meetings is not accurately described in paragraph 4 of the Payne Declaration or paragraph 4 of the Joslin Declaration;

(c) any agreement that may have been reached at the meetings described in paragraph 4 of the Payne Declaration and paragraph 4 of the Joslin Declaration was reached in objectively reasonable good faith.

9. With respect to the averments in paragraphs 5 and 6 of the Payne Declaration, paragraph 5 of the Joslin Declaration and paragraph 2 of the Declaration of Rose Cambino (Pl. Ex. 5), defendant requires discovery on the following:

(a) the intended meaning of the word "policy;"

(b) whether the policy, if any, of Connecticut Blue Cross or Anthem Blue Cross and Blue Shield of Connecticut ("Anthem") was committed to a written document and disseminated to employees;

(c) the date, if any, on which the policy was adopted;

(d) the person or persons, if any, who adopted the policy;

(e) the reasons, if any, why the policy was adopted;

(f) whether the policy was adopted in good faith and in an otherwise reasonable manner;

(g) whether the policy was used to deny reimbursement for the GET tax with respect to any plaintiff hospital for the 1994-1996 cost-reporting years;

(h) whether the policy was communicated to plaintiff hospitals and, if so, in what manner;

(i) whether intermediary personnel ever told plaintiff hospitals that they were not "permitted" to claim the GET tax on their cost reports, as alleged in paragraph 8 of the Shera Declaration, and, if so, the date, manner and precise contents of those communications;

(j) whether any communications made to any plaintiff hospital by declarants or other intermediary employees were made in bad faith or were otherwise made in an unreasonable manner.

(k) all relevant documents in the possession of the declarants.

This information is within the knowledge of the declarants and/or plaintiffs and is not available to defendant.

10. The absence of the information in paragraph 9 from the Payne, Joslin and Cambino Declarations leads to the reasonable inference that discovery will show that what the declarants

describe as a "policy" was merely the personal understanding of the declarants and not an instruction issued by intermediaries to their employees for the purpose of producing uniform enforcement.

11. With respect to the averments in the Shera Declaration, defendant requires discovery on the following:

(a) the factual basis, if any, for the averment in paragraph 3 of the Shera Declaration that "it was common knowledge among Connecticut Medicare Providers that the GET Tax would not be treated as a reimbursable cost as a matter of policy," and all documents relevant to this averment;

(b) the specific plaintiff hospitals, if any, that shared the "common knowledge" described in paragraph 3 of the Shera Declaration, the manner in which these plaintiffs hospitals acquired the purportedly "common knowledge," and the dates on which the "common knowledge" was acquired by these hospitals, and all relevant documents;

(c) the factual basis, if any, for the averment in paragraph 8 of the Shera Declaration that "[n]one of the 27 hospitals working with Ernst & Young were allowed to claim GET tax payments as allowable costs prior to 2002," and all documents relevant to this averment;

(d) how, if at all, the averment in paragraph 8 of the Shera Declaration can be reconciled with the statement on page 3 of the Shera Letter that it was "accepted industry practice" of hospitals in Connecticut not to claim the GET tax on cost reports or to report the GET tax as an individualized item anywhere on the cost report;

(e) why the Shera Letter discusses Medicaid law and whether considerations of Medicaid law played any role in the adoption of the "accepted industry practice" described on page 3 of the Shera Letter;

(f) how, if at all, Mr. Shera can reconcile his statement that Connecticut hospitals shared a "common knowledge" about GET-tax policies and his statement that hospitals in Connecticut were not "permitted" to claim the GET tax with the statement on page 1 of the Shera Letter, which states as follows: "We have not yet discussed this matter with Empire Medicare Services, the Connecticut Fiscal Intermediary[,] as we believe the intermediary would likely seek guidance from the CMS Central Office;"

(g) how, if at all, Mr. Shera can reconcile the allegations of plaintiffs that they were misled by intermediaries with lack of any such statement in the Shera Letter and the affirmative representation on page 1 of the Shera latter that "we have not discussed this matter with Empire Medicare Services;"

(h) how if, at all, Mr. Shera can reconcile the averment in paragraph 8 of the Shera Declaration that hospitals were not "permitted" to claim the GET tax with the averment in paragraph 11 of the same declaration in which he states that a hospital was permitted to claim the GET tax, but the claim was denied;

(i) how, if at all, Mr. Shera can reconcile the averment in paragraph 8 of the Shera Declaration that hospitals were not "permitted" to claim the GET tax with the statement on page 23 of Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' [Original] Motion for Summary Judgment that. "[a]s a matter of simple mechanics," each hospital "could have claimed the GET tax as an allowable cost and later filed an appeal."

This information is within the knowledge of plaintiffs and their declarant and is not available to defendant.

12. The absence of the information in paragraph 11 from the Shera Declaration leads to the reasonable inference that:

(a) Mr. Shera has no personal and admissible knowledge about the state of mind of any plaintiff hospital management that both concerns the GET tax and is relevant to the 1994-1996 cost reports at issue in this case;

(b) Plaintiffs will admit that the "accepted industry practice" described on page 3 of the Shera Letter was adopted for reasons other than any purported policy of defendant or his fiscal agents and might admit that the industry practice was adopted for reasons related to Medicaid law;

(c) Plaintiffs will admit that they were permitted to claim the GET tax on their cost reports and could have pursued a denial of such claim through the administrative appeals process.

I declare under penalty of perjury that the foregoing is true and correct.

Jun 17, 2005
DATE

PETER ROBBINS

-10-