# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FAIRVIEW HOSPITAL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 1:05cv01065(RWR)** |
| | ) | |
| **MICHAEL O. LEAVITT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

<u>TABLE OF CONTENTS</u>

<u>Preliminary Statement</u>.................................................................................................1

<u>Statement of Facts</u>....................................................................................................2

I.       The Medicare Payment System ....................................................................3

II.      The UCP Tax ...............................................................................................5

<u>Argument</u> ................................................................................................................7

I.       Plaintiffs Are Entitled To Mandamus Relief Under 42 C.F.R. § 405.1885(b), Based Upon "Fraud Or Similar Fault" By The Intermediary.................................................................7

         A.      The Plaintiff Hospitals Have A Clear Right To Relief ...........................................7

         B.      The Secretary Has A Clear Duty To Reopen the Cost Reports in Question Pursuant To Section 405.1885(b) ...........................................8

                 1.  The Acts And Failure To Act By The Intermediary Constitutes "Similar Fault".................................................................................8

                 2.  The Intermediary Is A "Party" For Purposes Of 42 C.F.R. § 405.1885(d) And Mandamus Is Therefore Appropriate..............................................10

                 3.  The Secretary's Contention That To Be "Established" A Finding Of Fraud Or Similar Fault Must Be Made In A Proceeding Or Inquiry Independent Of This Litigation Is Incorrect .....................................................13

                 4.  Plaintiffs' Complaint Satisfies The Pleading Requirements...........................14

         C.      No Other Adequate Remedies Are Available .......................................................14

         D.      The Plaintiff Hospitals Have Met Their Burden, And A Writ Of Mandamus Should Issue .......................................................15

II.      Plaintiffs Are Entitled To Mandamus Because All Avenues Of Administrative Relief Were Both Foreclosed And Futile .......................................................15

         A.      The Secretary's Factual Argument Regarding Exhaustion Of Remedies Is Incorrect ...............................................................16

         B.      The Secretary's Legal Argument Regarding Exhaustion Of Remedies Is Incorrect ...............................................................16

III.     The Plaintiff Hospitals' Suit Is Timely ................................................................................23

IV.     Plaintiffs' Motion To Dismiss, Or In The Alternative, For Summary Judgment, Should Be Denied Because There Are Material Facts In Dispute .................................................24

Conclusion .........................................................................................................................................24

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT,
   654 F.2d 758 (D.C. Cir. 1980) .................................................................9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986).........................................................................24

Heckler v. Ringer,
   466 U.S. 602 (1984).................................................................20, 21, 22, 23

In Re: Medicare Reimbursement Litigation,
   309 F. Supp. 2d 89 (D.D.C. 2004),
   aff'd, 414 F.3d 7 (D.C. Cir 2005) ....................................................7, 18, 19

Monmouth Med. Ctr. v. Thompson,
   257 F.3d 807 (D.C. Cir. 2001) ...................................................16, 17, 18

Rochester Methodist Hosp. v. Travelers Ins. Co.,
   728 F.2d 1006 (8th Cir. 1984) ............................................9, 10, 11, 12

Saint Vincent Health Ctr. v. Shalala,
   937 F. Supp. 496 (W.D. Pa. 1995),
   aff'd., 96 F.3d 1434 (3rd Cir. 1996)..........................................................12

Scheuer v. Rhodes,
   416 U.S. 232 (1974)...........................................................................3

Toner v. Allstate Ins. Co.,
   829 F. Supp. 695 (D. Del. 1993).............................................................9

Your Home Visiting Nurse Services v. Shalala,
   535 U.S. 449 (1999)...........................................................................4

STATUTES, RULES, & REGULATIONS                                           Page(s)

28 U.S.C. § 1361................................................................................7

42 U.S.C. § 1395oo(a) ........................................................................3
        § 1395ww(d) ..............................................................................3

Fed. R. Civ. P. 9(b) ...........................................................................14

Fed. R. Civ. P. 56(c) .........................................................................24

42 C.F.R. § 405.1803 ................................................................................................3

    § 405.1815 .......................................................................................10

    § 405.1843(b) ..................................................................................10

    § 405.1885(a) ....................................................................................3

    § 405.1885(c) ....................................................................................4

    § 405.1885(d) ...........................................................................*passim*

    § 413.9(b)(2) .....................................................................................7

    §§ 413.20(b), 413.24(f) .....................................................................3

Mass. Gen. Laws Ann. Ch. 118(G) § 18(a) ...........................................................5

    § 18(e) .........................................................................................5, 7

39 Fed. Reg. 8,170 (Mar. 4, 1974) .......................................................................11

39 Fed. Reg. 34, 519 (Sept. 26, 1974) .................................................................11

67 Fed. Reg. 50,096 (Aug. 1, 2002) .......................................................................4

OTHER SOURCES:

Supplemental Security Income Ruling SSR 85-23, <u>available at</u>
http://www.ssa.gov/OP_Home/rulings/ssi/07/SSR85-23-ssi-07.html ............................................9

Plaintiffs Fairview Hospital, Mount Auburn Hospital, and Tufts-New England Medical Center ("the Plaintiff Hospitals") oppose the motion to dismiss filed by Michael O. Leavitt, the Secretary of Health and Human Services ("the Secretary") and move this Court for the entry of summary judgment on their behalf for the reasons that follow.

## Preliminary Statement

This case arises from Medicare's failure to reimburse the Plaintiff Hospitals for payments the Hospitals made with respect to the Massachusetts Uncompensated Care Pool Tax (the "UCP Tax").  The Secretary, through his fiscal intermediaries, Mutual of Omaha Insurance Company and Associated Hospital Services (collectively, the "Intermediary"), made representations that there was a statewide policy that the UCP Tax was not an allowable cost for purposes of Medicare reimbursement.  Notwithstanding this "policy," the Intermediary was nevertheless allowing selected Massachusetts hospitals to claim the UCP Tax on their cost reports.[1]  As the Intermediary would later admit, treating the UCP Tax as an allowable cost was actually the correct treatment of the cost.  Eventually, on March 18, 2003, the Intermediary had no choice but to change its policy, allowing the UCP Tax to be claimed as an allowable cost, and to admit that the prior policy was inconsistent with applicable law.  Thereafter, the Intermediary reopened the cost reports of Massachusetts hospitals, but limited the reopenings to those cost reports that had been the subject of Notices of Program Reimbursement ("NPR's") issued during the prior three

---

[1] Associated Hospital Services  ("Associated") maintained a policy of non-reimbursement towards Plaintiffs, Tufts-New England Medical Center ("Tufts") and Mount Auburn Hospital ("Mount Auburn"), even though it was apparently aware that Mutual of Omaha was reimbursing selected hospitals for the cost.

years.  For those three years (for most hospitals, cost reporting periods 1997 through 1999), the Intermediary allowed the Hospitals to claim the UCP Tax as an allowable cost.[2]

The Hospitals filed the present lawsuit based on the Intermediary's unlawful conduct under 42 C.F.R. § 405.1885(d), which requires reopenings beyond the three-year window based on the Intermediary's "fraud or similar fault."  This regulation applies in the instant matter because the Intermediary, among other things, misrepresented that the UCP Tax was a non-allowable cost, maintained a statewide policy to that effect, and chose, for a period of time, to only reimburse selected hospitals for the UCP Tax.

The Secretary has filed a motion to dismiss the Hospitals' complaint, arguing that the Hospitals have failed to state a claim upon which relief can be granted.  As set forth at length below, the Secretary is incorrect.  Based on the facts and argument that follow, the Hospitals have presented viable claims.

## Statement of Facts

The Secretary, in his Memorandum in Support of his Motion to Dismiss (Sec. Mem."), provides some partial background on the Medicare payment system.[3]  That material will not be reiterated here.  The additional background set forth in this brief will cover only the gaps left by the Secretary in his memorandum.  Further, the Secretary's version of events with respect to the

---

[2]  Associated also reversed its position after CMS, in March 2003, concluded that the UCP Tax was an allowable cost.  For fiscal years 1993 through 1996, Tufts was able to secure reimbursement for the Tax by adding the UCP issue to existing appeals for those years.  For fiscal years 1997 through 1999, Tufts received reimbursement for the tax after requesting permissive reopenings.  Def. Ex. "B" at 001-002, ¶ 3.  Mount Auburn also received reimbursement for fiscal years 1998 and 1999 after requesting permissive reopenings for those years.  Id. at 002, ¶ 4 .

[3] See Sec. Mem. at 1-7.

Intermediary's position on the Massachusetts Uncompensated Care Pool Tax ("UCP Tax") is inaccurate and will also be addressed at length below.[4]

## I.    The Medicare Payment System

In 1983, Medicare began reimbursing hospitals using what became known as the "prospective payments system" ("PPS"). 42 U.S.C. § 1395ww(d). Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments. In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. §§ 413.20(b), 413.24(f). The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR"). 42 C.F.R. § 405.1803. A provider dissatisfied with its intermediary's determination may, in certain circumstances, file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination. 42 U.S.C. § 1395oo(a).

In addition to filing appeals, a provider may, in certain circumstances, obtain relief through an intermediary's reopening of its cost report, without the involvement of the PRRB. There are three types of reopenings set forth in the regulations. Under the first type, a dissatisfied provider may file a reopening request with the intermediary, asking the intermediary to reopen and revise a settled cost report within three years of the date that the determination was issued. 42 C.F.R. § 405.1885(a). Jurisdiction for reopening a decision under 42 C.F.R. §

---

[4] In deciding a motion to dismiss, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

405.1885(a) rests with the administrative body that rendered the last determination or decision, is final, and not subject to judicial review.  Your Home Visiting Nurse Services v. Shalala, 525 U.S. 449, 450 (1999); 42 C.F.R. § 405.1885(c).

The second type of reopening is mandatory and occurs when an intermediary's determination is required to be reopened under 42 C.F.R. § 405.1885(b) because CMS, within the three-year period in which reopenings are permitted, notifies the intermediary that the initial determination or settlement was inconsistent with applicable law.  The version of 42 C.F.R. §405.1885(b) in effect at all relevant times in this action stated that an intermediary's decision "must be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services. . . ."  See 67 Fed. Reg. 50,096 (Aug. 1, 2002) (citation omitted).  It is this Section of the reopening regulations that the Secretary relied on to provide limited retroactive relief to the hospitals, thereby conceding a misapplication of the law to Massachusetts hospitals.

The third type of reopening is also mandatory, and requires that an intermediary's determination "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision."  42 C.F.R. § 405.1885(d).  The Plaintiff Hospitals seek mandamus relief under this Section of the reopening regulations to obtain reimbursement they are entitled to for 1994, 1995 and 1996.

## II.    The UCP Tax

The Massachusetts Legislature created the Uncompensated Care Pool ("UCP") in 1985.[5]
The purpose of the UCP was to increase access to health care for Massachusetts patients who
were indigent, uninsured, or underinsured.[6]  The UCP was funded, in part, through the UCP Tax,
which was levied against each hospital's private sector charges.[7]  Each hospital's total UCP Tax
was then setoff against the UCP's liability to the hospital for uncompensated care during the
same period, resulting in either a net liability to the UCP or a net distribution from the UCP.[8]

The Hospitals have alleged that the Secretary, CMS, and/or the Intermediary, from 1985
through 2003, took the position that the UCP Tax was not an allowable cost and that
Massachusetts hospitals were forbidden from claiming the cost on their cost reports.[9]  As a
result, the Hospitals did not claim the tax as an allowable cost for cost report years 1985 through
1999.  The reason the Hospitals did not claim the cost is obvious.  The Hospitals wanted to
refrain from submitting what they had incorrectly been led to believe would be fraudulent cost
reports, had they claimed the UCP Tax an allowable cost.

By way of correspondence dated March 18, 2003, the Intermediary completely reversed
its prior reimbursement position, thereby conceding that the UCP Tax was in fact an allowable

---

[5] See Mass. Gen. Laws Ch. 118G, § 18(a).

[6] See Amended Complaint at ¶ 21.

[7] Mass. Gen. Laws Ann. Ch. 118G, § 18(e).  The UCP Assessment against the hospital is equal
to the product of 1) the ratio of the hospital's private sector charges to all acute hospitals' private
sector charges; and 2) the private sector liability to the UCP as determined by law less certain
surcharges.  Mass. Gen. Laws Ann. Ch. 118G, § 18(e).

[8] Amended Complaint at ¶ 23.

[9] Id. at ¶ 25.

cost.[10]   The Hospitals were then able to routinely obtain reimbursement for the UCP Tax. Because of the lag time associated with the submission of cost reports and the auditing and correction process by the Intermediary, this meant that the Hospitals could obtain reimbursement for the UCP Tax in the ordinary course of its Medicare reimbursement, beginning with fiscal year 2000.[11]

The Hospitals filed this lawsuit in order to compel the Intermediary to reopen the earlier cost report years that were not the subject of reopening under the three-year window referenced above.  Specifically, the Hospitals alleged in their Amended Complaint that the Intermediary engaged in wrongful conduct under 42 C.F.R. § 405.1885(d) ("fraud or similar fault") by not changing the reimbursement policy sooner for all hospitals.  The Hospitals' Amended Complaint also alleges that the Intermediary knew the UCP Tax was an allowable cost but nevertheless maintained a policy in which some hospitals, such as the Plaintiff Hospitals, were not allowed to claim it.[12]

The Secretary and the Intermediary do not dispute that the UCP Tax was a necessary and proper cost under the Medicare statute.  The Secretary, CMS and the Intermediary have a clear duty to reopen the cost report years at issue under 42 C.F.R. § 405.1885(d) because the Intermediary unlawfully and wrongfully treated the UCP Tax payments as non-allowable costs

---

[10] Id. at ¶ 26.

[11] On August 28, 2002, Fairview Hospital submitted a reopening request, pursuant to the three-year window for reopening set forth in the Department's reopening regulations, for cost report years 1997 through 1999.  Def. Ex. "A-1".  In its reopening request, the Hospitals explained that the UCP was an allowable cost and that, as of the date of the reopening request, the Intermediary had already been reimbursing other Massachusetts hospitals for this cost.  Id.  The Intermediary, finally admitting its past error of not properly reimbursing the Plaintiff Hospitals, granted the Hospitals' reopening request.  Def. Ex. "A-2".

[12] See Amended Complaint at ¶¶ 33-38.

for certain hospitals but not others, and because the Intermediary either passively or actively

misled Plaintiffs as to whether these costs were allowable.

**Argument**

I.    **Plaintiffs Are Entitled To Mandamus Relief Under 42 C.F.R. § 405.1885(d), Based Upon "Fraud or Similar Fault" By The Intermediary.**

Mandamus is a cause of action that seeks to "compel an officer or employee of the United

States or any agency thereof to perform a duty owed to the plaintiffs."  28 U.S.C. §1361.  In

order to prevail under a mandamus theory, the plaintiff must possess a clear right to relief, the

defendant must have had a clear duty to act, and no adequate remedy is available to plaintiff. In

Re: Medicare Reimbursement Litigation, 309 F. Supp. 2d 89, 96 (D.D.C. 2004), aff'd, 414 F.3d

7 (D.C. Cir 2005), (hereinafter referenced as "Baystate") (citation omitted).  The Plaintiff

Hospitals have satisfied all three of these elements, and their "right to issuance of the writ is clear

and indisputable."  See id.

A.    **The Plaintiff Hospitals Have a Clear Right to Relief.**

The UCP Tax is a necessary and proper cost under the Secretary's Medicare regulations.

The Medicare regulations state that reasonable costs are those that are "appropriate and helpful in

developing and maintaining the operation of patient care facilities" and that are "common and

accepted occurrences in the field of the Provider's activities":

> Necessary and proper costs are costs that are appropriate and
> helpful in developing and maintaining the operation of patient
> care facilities and activities.  They are usually costs that are
> common and accepted occurrences in the field of the
> Provider's activity.

42 C.F.R. § 413.9(b)(2).

The UCP Tax is levied directly on the private-sector charges of all Massachusetts

hospitals.  Mass. Gen. Laws Ann. Ch. 118(G), § 18(e).  By way of correspondence dated March

2003, CMS admitted that the UCP Tax satisfied the foregoing requirements and therefore fit

-7-

within the regulatory definition of a cost which is necessary and proper.[13]    The Plaintiff Hospitals' clear right to relief on this substantive claim is, therefore, not only plainly evident, it is also undisputed.  Thus, the Plaintiff Hospitals are entitled to a reopening of these cost reports if they meet the remaining prongs of the mandamus standard.

### B.    The Secretary Has a Clear Duty to Reopen the Cost Reports in Question Pursuant to Section 405.1885(d).

The Plaintiff Hospitals seek mandamus relief under 42 C.F.R. § 405.1885(d), which provides that an intermediary's determination "shall be reopened and revised at any time if it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision."  As explained  in Plaintiff Hospitals' Statement of Facts, the Intermediary, while wrongfully maintaining a statewide policy of non-reimbursement with respect to the UCP Tax, reimbursed selected Massachusetts hospitals (a group which did not include the Plaintiff Hospitals) for this cost.  The Intermediary's two sets of reimbursement policies, which resulted in the Plaintiff Hospitals not claiming the tax as an allowable cost for fourteen cost report years, constituted "similar fault" under Section 405.1885(d).  Accordingly, the Plaintiff Hospitals' cost reports should be reopened under that subsection for the purpose of including the UCP Tax as an allowable cost.

### 1.    The Acts And Failure To Act By The Intermediary Constitutes "Similar Fault."

"Similar Fault" is more expansive than fraud.  A Supplemental Security Income ruling defined fault as "an action proceeding from an inexcusable negligence or ignorance that is

---

[13] See Amended Complaint at ¶ 26.

considered nearly equal to fraud."[14]  Moreover, by analogy, "similar fault" may be defined as equitable fraud to mean "a false representation, usually one of fact, made by defendant innocently, negligently, with reckless indifference to the truth. . ."  Toner v. Allstate Insurance Company, 829 F. Supp. 695, 703 (D. Del. 1993) (citing Gaffin v. Teledyne, Inc., 611 A.2d 467, 472 & n.4 (Del. 1992)) (emphasis added).  Equitable fraud does not require knowledge and intent.  Automated Salvage Transport, Inc. v. NV Koninklijke KNP BT, 106 F. Supp. 2d 606, 624 n.27 (D.N.J. 1999) (stating "[i]n equitable fraud, unlike legal fraud, a plaintiff need not prove scienter – that is, he need not prove (1) knowledge and (2) intent")(citation omitted).

Here, the "similar fault" of the Intermediary was maintaining a position towards certain Massachusetts hospitals, including Plaintiffs, that the UCP Tax was non-allowable, while, at the same time, reimbursing other Massachusetts hospitals for the cost.  The Intermediary's decision to reimburse at least some hospitals for the cost demonstrates that the Intermediary had specific knowledge that the UCP Tax was reimbursable.  Yet, with respect to hospitals such as the Plaintiffs, the Intermediary intentionally continued to maintain a policy of non-reimbursement despite this knowledge.

As set forth above, neither knowledge nor intent is required to demonstrate "similar fault."  The fact that the Intermediary either actively or passively provided the Plaintiff Hospitals with incorrect information regarding the UCP Tax, while reimbursing other hospitals for the cost, gives rise to a finding of "similar fault" under Section 405.1885(d).  This is strikingly similar to the case Rochester Methodist Hosp. v. Travelers Ins. Co., 728 F.2d 1006 (8th Cir. 1984), discussed in detail below, in which the intermediary denied a hospital's claim for

---

[14] Supplemental Security Income Ruling SSR 85-23, available at
http://www.ssa.gov/OP_Home/rulings/ssi/07/SSR85-23-ssi-07.html.

dormitory costs while reimbursing another hospital for the very same costs.  Id. at 1008-1009.

The Court in Rochester held that because of the intermediary's fraud, the hospital was not

required to appeal the intermediary's decision or to include the issue on subsequent cost reports.

Id.

> ## 2.     The Intermediary is a "Party" For Purposes Of 42 C.F.R. § 405.1885(d) And Mandamus Is Therefore Appropriate.

The Secretary contends that he and all governmental actors and agents are beyond the

reach of Section 405.1885(d).  The Secretary argues that neither he, CMS, nor any intermediary

can be a "party" to the intermediary's determination within the meaning of 42 C.F.R. §

405.1885(d).  The Secretary's contention, however, is flatly contradicted by the wording of his

own regulations as well as by every court that has ever considered the issue.

First, the language of Section 405.1885(d) states that the provision applies to "any party"

and not, as the Secretary desires, to a more narrow set of actors, limited to the "provider and

related organizations."  Nor should those additional terms be inferred.  The Secretary and CMS

are perfectly capable of using the words "provider and related organizations" when they desire to

limit the application of a regulation to only those entities.  Indeed, on multiple occasions, when

defining who is a "party" for purposes of a particular regulation, CMS includes explicit language

not only limiting the universe of potentially covered entities to the provider and related

organizations, but also specifically excluding the Secretary, CMS, and the intermediary by name.

See 42 C.F.R. § 405.1815 (stating that "[n]either the intermediary nor [CMS] are parties. . . .");

42 C.F.R. § 405.1843(b) (stating that "neither the Secretary nor [CMS] may be made a party to

the hearing.")  Because the Secretary, CMS and intermediaries are not explicitly excluded as

"parties" in Section 405.1885(d), a narrow interpretation of that term is improper.

Second, the rulemaking history behind Section 405.1885(d) also suggests that the term "party" should be given its ordinary, broad definition. As originally proposed, Section 405.1885(d) would have mandated reopening only in instances where there was "fraud or similar fault of the <u>provider</u>." 39 Fed. Reg. 8,170 (Mar. 4, 1974) (emphasis added). The final rule, however, mandated reopening anytime there was "fraud or similar fault of <u>any party</u> to the determination or decision." 39 Fed. Reg. 34,519 (Sept. 26, 1974) (emphasis added). Thus, the Secretary's use of the concept "any party" in place of "provider" serves as a clear indication that 42 C.F.R. § 405.1885(d) should not be interpreted to apply only to the provider.

Finally, the Circuit Courts of Appeals have consistently concluded that the phrase "any party to the determination or decision," in the context of Section 405.1885(d), is not merely limited to the provider, but also includes the intermediary and any other relevant government agent or actor. The United States Court of Appeals for the Eighth Circuit, in a case similar to the instant matter, held that "[w]e do <u>not</u> believe . . . that this definition [pursuant to 42 C.F.R. § 405.1805, limiting section to providers] was intended to exclude intermediaries from the operation of § 405.1885(d)." <u>Rochester Methodist Hosp. v. Travelers Ins. Co.</u>, 728 F.2d 1006, 1018 n.12 (8th Cir. 1984) (emphasis added).

In <u>Rochester Methodist</u>, the intermediary argued that the hospital failed to preserve its right to appeal when it elected not to claim dormitory costs in subsequent cost reports. The court rejected the argument: "[The intermediary's] argument that Rochester should have claimed the costs in order to preserve its right to appeal in subsequent years misses the point: because of [the intermediary's] misrepresentations, Rochester did not believe that there was an issue worth appealing." <u>Id.</u> at 1018. "If [the intermediary] had revealed that [it] was reimbursing St. Mary's dormitory costs, Rochester would have known that it had an issue worth pursuing. It would have

been reimbursed . . . through [the intermediary's] internal review process, and it would have sought and obtained reimbursement in later years." Id.

A similar dynamic is at work in the present matter.  The Intermediary, which knew that the UCP Tax was an allowable cost, was, in fact, reimbursing some Massachusetts hospitals for the cost.  Notwithstanding this fact, the Intermediary took the position that, with respect to the Plaintiff Hospitals and other hospitals in Massachusetts, the UCP Tax was not an allowable cost.  As a result, the Plaintiff Hospitals did not claim the UCP Tax on their cost reports, and their administrative appeal and reopening rights expired (except under section 405.1885(d)).

The Court of Appeals for the Eighth Circuit considered the issue of whether the term "any party" in section 405.1885(d) was limited to providers or whether it also included intermediaries.  The court ruled, as noted above, that the section did in fact apply to intermediaries.  Id.  The Third Circuit reached a similar result with respect to 42 C.F.R. § 405.1885(d).  Saint Vincent Health Ctr. v. Shalala, 937 F. Supp. 496, 506-07 (W.D. Pa. 1995), aff'd, 96 F.3d 1434 (3d Cir. 1996).  In that case, the District Court observed that, assuming there was "fraud or similar fault by Blue Cross" then "[r]eopening is mandatory where these circumstances are established." Id.

It follows that the Secretary's argument that the term "any party" means "just the provider" should be rejected.  As seen by the language of the regulations and the relevant decisional law cited above, the term "any party" means exactly what it says and includes government actors, in this case, the Intermediary.

### 3.     The Secretary's Contention That To Be "Established" A Finding Of Fraud Or Similar Fault Must Be Made In A Proceeding or Inquiry Independent Of This Litigation Is Incorrect.

The reopening of an intermediary's determination, pursuant to 42 C.F.R. § 405.1885(d), is mandatory when it is established that an intermediary's determination or decision "was procured by fraud or similar fault of any party to the determination or decision." The plain language of Section 405.1885(d) does not designate who is required to "establish" that the intermediary's determination was procured by fraud or similar fault, nor does Section 405.1885(d) require an independent finding of fraud or similar fault before the mandatory duty to reopen is triggered.

Here, Section 405.1885(d) applies to the Secretary's conduct. The Intermediary reimbursed some Massachusetts hospitals for their UCP Tax while maintaining a position of non-reimbursement towards other hospitals, including Plaintiffs. The Intermediary's inconsistent policy resulted in the Plaintiff Hospitals not claiming the tax as an allowable cost for cost report years 1985 through 1999. The UCP Tax was not revealed to be an allowable cost until March 18, 2003. Thus, as a result of the actions of the Intermediary, the Plaintiffs' administrative remedies have expired. Mandamus relief is therefore appropriate.

No genuine issues of fact remain with respect to the applicability of 42 C.F.R. § 405.1885(d). The intermediary is a party to the NPR's at issue in this case. The intermediary's conduct in omitting, concealing, and misrepresenting the allowability of the UCP Tax, even if not rising to the level of fraud, does nevertheless constitute "similar fault." Accordingly, the three cost report years at issue in this litigation should be reopened.

**4.    Plaintiffs' Complaint Satisfies The Pleading Requirements.**

The Secretary argues that Plaintiffs have failed to allege fraud or similar fault with particularity.[15]  This argument fails for two reasons.  First, Plaintiffs have satisfied the pleading requirement by alleging, with particularity, that the Intermediary engaged in fraud or similar fault by knowingly maintaining a policy of non-reimbursement towards the Plaintiffs while reimbursing selected hospitals for the cost.  See Fed. R. Civ. P. 9(b) ( "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity.").

Second, in the alternative, to prevail on their claim, Plaintiffs do not have to meet the pleading requirements of Fed. R. Civ. P. 9(b).  Specifically, for subsection (d) to apply, there can either be "fraud" or "similar fault."  42 C.F.R. § 405.1885(d).  The regulatory text is disjunctive. The Secretary intentionally mixes up the two concepts, acting as if the only way to show "similar fault" is to demonstrate that the intermediary made a knowing misrepresentation upon which the hospital relied.[16]  Those are the elements of fraud, in particular common law fraud, and are not, as forth above, the elements of similar fault.  The Hospitals case is based mostly, if not entirely, upon the concept of fraud or similar fault.  Thus, the Rule 9(b) should not apply to the Hospital's complaint.

**C.    No Other Adequate Remedies are Available.**

Lastly, the Plaintiffs have no other adequate remedy available.   The Intermediary opened some cost reports, but only for those years that were the subject of NPRs within the three years preceding March 18, 2003.  As explained above, the hospitals' administrative rights for prior years, to either appeal the issue or to file a reopening request under 42 C.F.R. § 405.1885(a) and

---

[15] See Def. Mem. at 24.

[16] Id. at 24-25.

(b), had already expired.  Those rights had expired over the course of time that the Intermediary wrongfully represented that the UCP Tax was non-reimbursable.  That period exceeded the three-year limitations period for appealing under 42 C.F.R. §§ 405.1885(a) and (b) and the 180-day period for filing administrative appeals.  The Plaintiff Hospitals were left with no available remedy for these years, other than mandamus.

**D.    The Plaintiff Hospitals Have Met Their Burden, and a Writ of Mandamus Should Issue.**

The Plaintiff Hospitals have met their burden of demonstrating that a writ of mandamus should issue.  The Intermediary had an obligation to deal in good faith with the Plaintiff Hospitals.  By concealing its knowledge that the UCP Tax was a reimbursable expense, and by actively taking the position that the UCP Tax was non-reimbursable, the Intermediary failed in its role as reimbursement agent for the Secretary.  Section 405.1885(d) imposes a clear duty upon the Secretary to reopen the Plaintiff Hospitals' cost reports for fiscal years in question in Plaintiffs' complaint.  The Plaintiff Hospitals have a right to this relief, and have no other avenue by which to pursue their claims.  This Court should, therefore, deny the Secretary's motion to dismiss or, in the alternative, for summary judgment, and grant the Plaintiff Hospitals' motion for summary judgment.

**II.    Plaintiffs Are Entitled To Mandamus Because All Avenues Of Administrative Relief Were Both Foreclosed And Futile.**

The Secretary argues that the Plaintiff Hospitals have failed to exhaust their administrative remedies and are therefore precluded from maintaining an action under mandamus.  Specifically, the Secretary contends that if the Plaintiff Hospitals had claimed the UCP Tax in their cost reports, the Intermediary would have reimbursed the expense.  According

to the Secretary, if the Intermediary did not reimburse for the expense, the hospitals could have appealed. These factual and legal contentions are false.

A.     **The Secretary's Factual Argument Regarding Exhaustion of Remedies Is Incorrect.**

First, as set forth at length above in the Plaintiffs' Statement of Facts, the Intermediary did not treat the UCP Tax as an allowable cost for the Plaintiffs until 2002, when the Plaintiffs, after becoming aware that the Intermediary was reimbursing other Massachusetts hospitals for the cost, requested that the Intermediary do the same for them. This is plainly evident based upon the Secretary's own documents.

The reason the Plaintiffs did not possess a viable remedy was because the Intermediary took the position, until 2003, that the UCP Tax was not a reimbursable cost. Plaintiffs, therefore, had no opportunity to obtain an administrative remedy. As explained below, it is well-settled that a futile or foreclosed remedy is, in fact, no remedy at all. There is no requirement to exhaust such remedies.

B.     **The Secretary's Legal Argument Regarding Exhaustion Of Remedies Is Incorrect.**

The Secretary, in fashioning his argument regarding exhaustion of remedies, is at odds with the law of this Circuit. The United States Court of Appeals for the District of Columbia Circuit specifically held that mandamus relief is available to a hospital that has not filed an administrative appeal within 180 days of the NPR if the hospital can demonstrate that the relief sought, pursuant to such an appeal, was either foreclosed or futile. Monmouth Med. Ctr. v. Thompson, 257 F.3d 807, 815 (D.C. Cir. 2001). An examination of the facts in Monmouth demonstrates that the case is analogous to the present dispute.

At issue in <u>Monmouth</u> was the disproportionate share hospital ("DSH") adjustment.  <u>Id.</u> at 808.  A hospital that serves a disproportionate share of low-income Medicaid recipients is eligible for a DSH adjustment to its Medicare PPS payment.  <u>Id.</u>  Under the statute authorizing DSH adjustments, the inclusion of more Medicaid patient days in the hospital's DSH calculation means more DSH funds.  From 1986 through 1997, the Secretary construed the DSH calculation to include only patient days for which Medicaid actually made a payment, <u>i.e.</u> "paid days."  Patient days that were not paid were not included.  <u>Id.</u> at 808, 810.

On February 27, 1997, after the Secretary's position had already been struck down by four Circuit Courts of Appeals, CMS issued Program Memorandum 97-2 ("PM 97-2") rescinding the Secretary's nationwide position.  <u>Id.</u> at 810.  The pronouncement took a new position more favorable to hospitals, requiring that intermediaries include eligible but not paid patient days in the DSH calculation.  The correction applied to all unsettled cost reports and all cases in which jurisdictionally proper appeals were still pending.  <u>Id.</u>  The language of PM 97-2, however, also foreclosed retrospective application of the correction:  "We will not reopen settled cost reports based on this issue."  <u>Id.</u> (quotations and citations omitted).

The two plaintiff hospitals in <u>Monmouth</u> failed to file timely appeals of their NPRs for fiscal years 1993 and 1994.  Moreover, the <u>Monmouth</u> plaintiffs, in conformance with the policy in effect prior to PM 97-2, did not include eligible but not paid days in their cost report. <u>Id.</u> at 808, 810.  The hospitals, however, in an effort to have their DSH adjustments recalculated pursuant to the new correction set forth in PM 97-2, did file reopening requests, pursuant to 42 C.F.R. § 405.1885(a), within three years after their NPRs were issued.  <u>Id.</u> at 810.  After those reopening requests were denied, the plaintiffs filed an action against the Secretary, asserting, among other things, that they were entitled to mandamus relief requiring reopening of their

fiscal years 1993 and 1994 cost reports.  Id. at 813.  The United States District Court for the District of Columbia dismissed the claims, but the Circuit Court of Appeals reversed, ruling in favor of the hospitals.

The Secretary argued there, as he does in the present matter, that the plaintiffs failed to exhaust their administrative remedies by not appealing their NPRs within 180 days, and were, therefore, precluded from obtaining mandamus relief.  Id. at 815.  In response to this argument, the court stated that the "fact is hardly relevant here."  Id.  Instead, the court found that "[t]he question is whether [the plaintiffs] have done all they can to vindicate their right to reopening."  Id.  The court held that the plaintiffs were entitled to mandamus relief despite not having filed an appeal within 180 days because "all other avenues of relief [were] either foreclosed or futile."  Id.

Following Monmouth, this Court held in Baystate, 309 F. Supp. 2d 89 (D.D.C. 2004), aff'd, 414 F.3d 7 (D.C. Cir 2005), that as long as a hospital's remedies are unavailable or futile, the hospital is entitled to mandamus even when the hospital fails to file an appeal within 180 days of the NPR as well as a reopening request within three years of the NPR under 42 C.F.R. § 405.1885(a).  As in Monmouth, the dispute in Baystate involved the Medicare DSH calculation and the application of PM 97-2.

The plaintiffs in Baystate filed suit for declaratory and injunctive relief under mandamus alleging that the Monmouth decision required the court to "direct the intermediaries to reopen and recalculate their NPR's for the three years prior to [PM 97-2]," notwithstanding that the plaintiff hospitals did not request reopening pursuant to 42 C.F.R. § 405.1885 and did not "proceed through the administrative review channels provided for in the statute and regulations."  Id. at 95.

The Secretary argued that the plaintiffs in <u>Baystate</u> should have followed the plaintiffs' path in <u>Monmouth</u> and filed reopening requests under 42 C.F.R. § 405.1885(a). <u>Id.</u> at 98. This Court rejected that argument on three separate grounds. First, the Court found that PM 97-2 itself expressly stated that the Secretary would not reopen past NPRs. <u>Id.</u> Thus, according to the Court, the Secretary's position was illogical: the Secretary sought to impose a duty to file a reopening request that the Secretary herself had just proclaimed to be prohibited. <u>Id.</u> The Court found that there is no duty to exhaust those remedies which, as a practical or legal matter, are beyond the reach of the provider.

Second, the court found that an administrative appeal at the time of the original NPR was futile because the Secretary did not issue PM 97-2 until after the time for filing such an appeal had already expired. <u>Id.</u> The hospitals could only reasonably be expected to pursue administrative remedies following the Secretary's announcement in PM 97-2 that there had been a reversal of the Secretary's position. Prior to PM 97-2, hospitals filing appeals or reopening requests would have been knowingly seeking the inclusion of patient days that the Secretary and intermediary had deemed to be unlawful. This Court found such "remedies" to be unrealistic and, as a practical matter, unavailable. If the time period for filing an appeal or a reopening request expired before the Secretary corrected his position in PM 97-2, those remedies were unavailable.

Here, all avenues of administrative relief that the Secretary contends were "available" to the Plaintiff Hospitals were in fact both foreclosed and futile. First, from 1985 through 2003, the Intermediary took the position that the UCP Tax was not an allowable cost. The Intermediary took this position even though, unbeknownst to Plaintiffs until 2002, the Intermediary was reimbursing selected hospitals for the costs.

It was not until 2003 that the Intermediary reversed its position with respect to Plaintiffs and began treating the UCP Tax as an allowable cost.  Contrary to the Secretary's recitation of the law, the courts have found—indeed this very Court has found—that  the filing of a reopening request is not a condition precedent to obtaining mandamus relief.  As in Monmouth and Baystate, Plaintiffs' 180-day window to file an appeal of their original NPRs had expired well before the Secretary changed its position.  The same holds true for the three-year window for filing a reopening request.  The plaintiffs in Monmouth filed reopening requests within three-years of the NPRs in question.  Those reopening requests, however, were made after the issuance of PM 97-2, the point in time when the plaintiffs were put on notice that the Secretary had reversed his position.  Under this Court's decision in Baystate, a hospital seeking mandamus is not obligated to file a reopening request within three-years of the NPR if that time period expires before the hospital even knows that it has a viable administrative claim.  Here, as in Baystate, the hospitals' three-year window to file a reopening request expired before the hospitals were put on notice of the Secretary's change in position.

The Plaintiff Hospitals, like those in Baystate, had no viable administrative remedies.  During the time periods in which the Hospitals could have filed an appeal or a reopening request, the Intermediary was still taking the position that the UCP Tax was not an allowable cost.  Prior to the Intermediary correcting its reimbursement position in Massachusetts, those time periods for appeals or reopenings, for multiple fiscal years, expired.

The Secretary invokes the Supreme Court's holding in Heckler v. Ringer, 466 U.S. 602 (1984).  This case is inapposite.  Heckler involved the administrative exhaustion requirement that is imposed upon individual's whose claims for Part A Medicare coverage are denied.  Id. at 606.  The dispute in that case arose out of reimbursement for a surgical procedure known as

bilateral carotid body resection ("BCBR").  Id. at 609.  In January 1979, the Secretary issued an administrative instruction to all fiscal intermediaries, instructing them that no payment was to be made for Medicare claims arising out of the BCBR surgical procedure when performed to relieve respiratory distress.  Id. at 607.  Many claimants whose BCBR claims were denied by intermediaries as a result of this instruction sought review of the denial before the ALJs who were not bound by the Secretary's instructions.  Id.  Prior to 1980, ALJs were consistently ruling in favor of individual BCBR claimants.  Id. at 607-608.  The Appeals Council also authorized payment for BCBR Part A expenses in a consolidated case involving numerous claimants.  Id. at 608.  In response to the ALJs and the Appeals Council's rulings, on October 28, 1980, the Secretary issued a formal administrative ruling prohibiting the ALJs and the Appeals Council from ordering Medicare payments for BCBR operations occurring after that date.  Id. (citing 45 Fed. Reg. 71,426-71,427 (1980)).

Three of the plaintiffs in Ringer filed claims with their fiscal intermediaries arising out of BCBR operations that had been performed prior to October 28, 1980.  Id. at 609.  At the time they filed their action against the Secretary, none of the three plaintiffs had exhausted their administrative remedies seeking coverage for the procedure, and thus none had received a "final decision" on their claims for benefits from the Secretary.  Id. at 609-610.  Nevertheless, the plaintiffs filed their action in the federal district court on September 18, 1980 seeking a "declaration that the Secretary's refusal to find that BCBR surgery is 'reasonable and necessary' under the [Medicare] Act is unlawful, an injunction compelling the Secretary to instruct her intermediaries to provide payment for BCBR claims, and an injunction barring the Secretary from forcing claimants to pursue individual administrative appeals in order to obtain payment."  Id. at 611.

In the Supreme Court's discussion of mandamus jurisdiction, it considered whether "the Secretary's formal ruling denying payment for BCBR claims rendered further exhaustion by the respondents futile." Id. at 618. It found that because the plaintiffs had their surgery prior to October 28, 1980, the administrative ruling was not applicable to the plaintiffs' claims. Thus, the Court agreed "with the Secretary that exhaustion is in no sense futile for these three [plaintiffs]. . . ." Id.

Next, the court examined the plaintiffs' argument "that there would be a presumption against them as they pursue their administrative appeals because of the very existence of the Secretary's instructions and her formal ruling and thus that exhaustion would not fully vindicate their claims." Id. at 619. In response to this argument, the court noted that in every one of the 170 claims filed with the ALJs between the time of the Secretary's instructions to her intermediaries and the filing of the plaintiffs' lawsuit (before the formal ruling became effective), the ALJs allowed recovery for BCBR claims. Id. The court noted further that in promulgating the formal ruling, the Secretary specifically exempted from the scope of the ruling individuals such as the plaintiffs who had the surgery relying on the favorable ALJ rulings. Id. Based upon these findings, the court held that "[a]lthough [plaintiffs] would clearly prefer an immediate appeal to the District Court rather than the often lengthy administrative review process, exhaustion of administrative remedies is in no sense futile for these [plaintiffs], and they, therefore, must adhere to the administrative procedure which Congress has established for adjudicating their Medicare claims."[17] Id.

---

[17] As the Secretary notes, the fourth plaintiff, Ringer, never had the surgery in question. Id. at 610. Instead, Ringer "wishe[d] to have the operation and claim[ed] that the Secretary's refusal to allow payment for it precludes him from doing so." Id. at 620. The Supreme Court's "separate" discussion of Ringer has no bearing upon the mandamus analysis in the instant matter because, with respect to mandamus, the Court simply held that "[o]ur

Continued on following page

The <u>Heckler</u> plaintiffs, therefore, unlike the plaintiffs in this case, were fully aware that the agency position had been corrected, disliked their chances in the administrative context, and pursued a concurrent remedy in federal district court.  In the present case, the agency did not even correct its position until March 2003.  By this time, the administrative remedy to file a reopening request under 42 C.F.R. § 405.1885(a) had already expired.  Thus, unlike the instant matter, it would have been possible for the plaintiffs in <u>Heckler</u> to resolve their reimbursement issue through the administrative process.  The court in <u>Heckler</u> specifically held that the administrative avenues available to the plaintiffs were not futile.  Under the holdings of <u>Monmouth</u> and <u>Baystate</u>, this Court should find that the only adequate remedy available to Plaintiffs was to bring the instant action against the Secretary.  Plaintiffs' request for mandamus relief, therefore, should be granted.

## III.    The Plaintiff Hospitals' Suit Is Timely.

The Secretary's contention that the Plaintiff Hospitals are not entitled to mandamus relief on grounds of unreasonable delay lacks merit.  In 2002, once the Plaintiff Hospitals learned that the Intermediary had been reimbursing selected hospitals for the UCP Tax, the Hospitals pursued the limited administrative remedies that were made available to them for the years for which those remedies had not expired.  The Intermediary reimbursed Plaintiffs for the UCP Tax for those fiscal years.  The limited nature of these remedies caused Plaintiffs to proceed to file suit for the remaining years.  The hospitals filed suit within three years after the Intermediary

_____

Continued from previous page

discussion of the unavailability of mandamus jurisdiction over the claims of the other three [plaintiffs] is equally applicable to Ringer." <u>Id.</u>  This single conclusory statement hardly provides persuasive authority for the Secretary's argument that the Court's holding as to Ringer supports his position that that Plaintiffs' mandamus claim should be rejected.

changed its position as to the UCP Tax. Thus, there was no unreasonable delay in the filing of Plaintiffs' complaint.

**IV.    Plaintiffs Motion To Dismiss, Or in the Alternative, For Summary Judgment, Should Be Denied Because There Are Material Facts In Dispute.**

It is the Plaintiff Hospital's primary position that they are entitled to summary judgment because there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Assuming, for the sake of argument, that this Court finds that Plaintiffs are not entitled to summary judgment, this Court should also find that there are genuine issues of material fact that must result in the denial of the Secretary's motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (Finding that a "genuine issue" is one whose resolution could establish an element of a claim or defense, and therefore, affect the outcome of the action). Specifically, the issue of whether the Intermediary was reimbursing select hospitals in Massachusetts for the UCP Tax while maintaining a statewide policy of non-reimbursement for the cost, is one that is critical to this case. Plaintiffs assert that the evidence before the Court demonstrates that the Intermediary had two sets of reimbursement policies at work in Massachusetts, and that the Intermediary's policy of non-reimbursement towards the Plaintiff Hospitals should result in summary judgment in favor of the Plaintiffs. However, if this Court finds that there is a genuine issue as to whether the Intermediary did, in fact, maintain two separate reimbursement policies, it should deny the Secretary's motion to dismiss, or in the alternative, for summary judgment, and find that discovery is needed to develop this aspect of the case.

## Conclusion

Based on all of the foregoing, the Secretary's motion to dismiss or, in the alternative, for summary judgment, should be denied, and the Plaintiff Hospital's motion for summary judgment should be granted.

           /s/ Jacqueline E. Bennett

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorney for the Plaintiff

Of Counsel:

Murray J. Klein
DC Bar # 492415
**REED SMITH LLP**
Princeton Forestall Village
136 Main Street, Suite 250
Princeton, NJ  08540
(609) 987-0050

Dated:  October 31, 2005