# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **FAIRVIEW HOSPITAL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 1:05cv01065(RWR)** |
| | ) | |
| **MICHAEL O. LEAVITT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Preliminary Statement .................................................................................................................1

Reply Argument .........................................................................................................................2

I.      The Secretary's Legal Arguments Against Mandamus Are Without Merit. ......................2

        A.      The Secretary's Defense Regarding Exhaustion of Remedies is Without Merit.
                All of the Arguments Regarding Exhaustion Have Been Foreclosed Based Upon
                the Holdings in Monmouth and In Re: Medicare Reimbursement Litigation. ........2

        B.      The Secretary's Arguments Regarding 42 C.F.R. § 405.1885(d) (Fraud or Similar
                Fault) Are Wrong As A Matter Of Law ...................................................................5

                1.      The Intermediary Is A "Party" for Purposes of 42 C.F.R. § 405.1885(d). ..5

                2.      The Word "Procure" in Section 405.1885(d) Does Not Preclude This
                        Court From Ordering the Secretary to Reopen Plaintiffs' Cost Reports. ..10

                3.      No "Prior Proceeding" Requirement Exists ...............................................11

                4.      The Hospitals Are Not Required To Demonstrate Reliance Or Any Other
                        Element of Common Law Fraud ................................................................12

                5.      Heckler v. Ringer is Inapposite .................................................................13

II.     The Record Demonstrates That There Are No Genuine Issues Of Material Fact, And That
        The Hospitals Are Entitled To Summary Judgment As A Matter Of Law .......................14

III.    In the Alternative, The Secretary's Motion for Summary Judgment Is Premature Because
        It Was Filed Before The Plaintiff Hospitals Had An Opportunity to Make Any
        Discovery ......................................................................................................................17

IV.     The Secretary's Statute of Limitations Argument Fails ..................................................20

Conclusion ................................................................................................................................20

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) .......................................................................................................16, 17

City of Rome v. United States,
  450 F. Supp. 378 (D.D.C. 1978) ..................................................................................17

Dickens v. Whole Foods Market Group, Inc.,
  Civ. A. No. 01-1054 2003 WL 21486821 (D.D.C. Mar.18, 2003) .............................................18

Exxon Corp. v. Federal Trade Commission,
  663 F.2d 120 (D.C. Cir. 1980) .............................................................................. 17-18

Heckler v. Ringer,
  466 U.S. 602 (1984) ...................................................................................................13, 14

In Re: Medicare Reimbursement Litigation,
  309 F. Supp. 2d 89 (D.D.C. 2004),
  aff'd, 414 F.3d 7 (D.C. Cir 2005) ................................................................... *passim*

Londrigan v. Federal Bureau of Investigation,
  670 F.2d 1164 (D.C. Cir. 1981) ..................................................................................17

Monmouth Med. Ctr. v. Thompson,
  257 F.3d 807 (D.C. Cir. 2001) .....................................................................................3

Rochester Methodist Hosp. v. Travelers Ins. Co.,
  728 F.2d 1006 (8th Cir. 1984) ...........................................................................8, 11, 16

Saint Vincent Health Ctr. v. Shalala,
  937 F. Supp. 496 (W.D. Pa. 1995),
  aff'd., 96 F.3d 1434 (3d Cir. 1996)..........................................................................8, 11

Stella v. Mineta,
  284 F.3d 135 (D.C. Cir. 2002) ....................................................................................18

Strang v. United States Arms Control & Disarmament Agency,
  864 F.2d 859 (D.C. Cir. 1989) ....................................................................................17

Thomas Jefferson Univ. v. Shalala,
  512 U.S. 504 (1994)......................................................................................................7

Williams v. Mordkofsky,
 901 F.2d 158 (D.C. Cir. 1990) ..............................................................................20


STATUTES, RULES, & REGULATIONS                                    Page(s)

Fed. R. Civ. P. 56(f) .........................................................................................17

41 C.F.R. § 405.1885(d) ................................................................................ *passim*

42 C.F.R. § 413.20(c) et. seq. .............................................................................10

39 Fed. Reg. 8,166 (Mar. 4, 1974) .......................................................................6

39 Fed. Reg. 34, 514 (Sept. 26, 1974) ................................................ 5, 6, 7, 10-11

67 Fed. Reg. 50,096 (Aug. 1, 2002) ......................................................................8


OTHER SOURCES                                                   Page(s)

Black's Law Dictionary, 6th Ed., (1990) ...........................................................8, 10

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

This case involves the reimbursement policies of two separate intermediaries—Associated Hospital Services ("Associated"), the intermediary that processed claims for Plaintiffs Tufts-New England Medical Center ("Tufts") and Mount Auburn Hospital ("Mount Auburn"), and Mutual of Omaha Insurance Company ("Mutual of Omaha"), the intermediary that processed claims for Plaintiff Fairview Hospital ("Fairview").  The record before this Court supports the Plaintiff Hospitals' position that both Associated and Mutual of Omaha maintained a policy that the UCP Tax was a non-allowable cost that could not be claimed by a hospital on its Medicare cost report.  As a result of this policy, the Hospitals did not claim the UCP Tax as an allowable cost for cost report years 1985 through 1999.  By the time the intermediaries corrected their policy—pursuant to a directive from CMS—the Hospitals had no opportunity to obtain an administrative remedy for the cost report years listed in their complaint.[1]

As set forth in more detail below, the Secretary's factual and legal arguments are without merit.  This Court should grant the Hospitals' motion for summary judgment and order the Secretary to reopen the cost report years at issue in their complaint pursuant to 42 C.F.R. § 405.1885(d) (fraud or similar fault).

---

[1] Those cost report years are as follows: Fairview:  1985-1996; Mount Auburn:  1985-1997; and Tufts:  1985-1992.  See the Hospitals' First Amended Complaint at ¶ 28.

# REPLY ARGUMENT

**I.      The Secretary's Legal Arguments Against Mandamus Are Without Merit.**

The Secretary's main argument, made both in opposition to the Hospitals' motion for summary judgment and in favor of his own motion, is that section 1885(d) relief for "fraud or similar fault" is unavailable to the Hospitals as a matter of law.  These are the same core issues and arguments currently being litigated in this Court in <u>Bradley Memorial et al. v. Leavitt</u>, Civil Action No. 1:04-cv-00416 (EGS), a case involving a tax equivalent to the UCP Tax.  The Hospitals in the present matter filed a motion seeking to stay the present matter until the Court decides <u>Bradley</u>.  All other pending cases involving the Massachusetts UCP Tax, which are identical to this case but simply have different docket numbers, have already been stayed.  The Secretary makes the same arguments in the present matter as he did in <u>Bradley</u>.  These arguments are without merit, and each will be addressed below.

**A.      The Secretary's Defense Regarding Exhaustion of Remedies is Without Merit. All of the Arguments Regarding Exhaustion Have Been Foreclosed Based Upon the Holdings in <u>Monmouth</u> and <u>In Re Medicare Reimbursement Litigation</u>.**

The Secretary argues that mandamus is not appropriate because the Hospitals have supposedly failed to exhaust their administrative remedies.[2]  The Hospitals, in their initial brief, analogized their situation to that faced by hospitals in <u>Monmouth Medical Center v. Thompson,</u> 257 F.3d 807 (D.C. Cir. 2001) and <u>In re: Medicare Reimbursement Litigation</u>, 414 F.3d 7 (D.C. Cir. 2005).  The Secretary, by way of response, has attempted to distinguish those cases from the present matter.

---

[2] <u>See</u> Def. Opposition to Pl. Motion for Summary Judgment and Reply in Support of His Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def. Opp.") at 9-16.

The Secretary claims that in both Monmouth and in In Re: Medicare Reimbursement Litigation, the plaintiff hospitals had "raised" the key issue when filing their cost reports or in subsequent appeals (i.e., the issue of whether eligible but unpaid Medicaid patient days should be included in the calculation of a hospital's Medicare Disproportionate Share Hospital or "DSH" adjustment).  The Secretary argues that the hospitals in these two cases, by "raising" the issue, had perfected their right to subsequent judicial review.[3]  In actuality, in both Monmouth and In re: Medicare Litigation, the hospitals did not perfect their right to judicial review under the Medicare statute. The Secretary's attempt to distinguish these cases fails and the Hospitals in the present matter are entitled to mandamus.

First, in Monmouth, the hospitals attempted to file administrative appeals and reopening requests with respect to the issue of unpaid Medicaid patient days.  The appeals were out of time and therefore did not perfect any right to judicial review.  Monmouth, 257 F.3d at 810-811.  As to the reopening requests, they did not give rise to a right of subsequent judicial review as a matter of law.  Id.  It was precisely because the hospitals in Monmouth had failed to perfect judicial review under the Medicare statute that mandamus was pursued by the hospitals and considered by the Court.  The DSH issue had not been "raised" by the hospitals in any way that mattered to the Court.  Id. at 815.

The Second Circuit Court's decision in In re: Medicare Reimbursement is equally instructive.  The hospitals in that case also never sought to have unpaid Medicaid days included in their DSH calculation when they filed their cost reports.  Moreover, unlike the plaintiffs in Monmouth, the plaintiff hospitals in that case did not file administrative appeals or timely reopening requests.  The DSH issue was simply not "raised" in any fashion by the hospitals.  The

---

[3] Def. Opp. at 9.

Court, however, nevertheless found that mandamus relief was appropriate. In re: Medicare Reimbursement, 414 F.3d at 11. In theory, the hospitals could have claimed the days on their cost reports when they filed them. Nevertheless, the Court permitted the plaintiff hospitals to obtain mandamus relief, holding, implicitly, that 42 C.F.R. § 1885(b) (the reopening provision at issue in that case for intermediary determinations that are inconsistent with applicable law) did not require the hospital to "raise" any particular DSH item on the cost report, did not require any prior submission of DSH data by either the hospital or the state, and did not require the subsequent submission of a reopening request in order to perfect a mandatory reopening under that provision. Id. Additionally, the Court noted that any reopening request would have been rejected or denied and was therefore futile. Id. at 11.

The facts in this case are no different. As a matter of simple mechanics, the Hospitals could have claimed the UCP Tax as an allowable cost. As explained in the Hospitals' initial brief, however, this would have been futile because the government had not yet announced a change in its reimbursement policy with respect to the UCP tax. This scenario is similar to the facts and holding in In Re: Medicare Reimbursement Litigation in which the Court held that the hospitals did not have to include unpaid Medicaid days in their cost reports in order to obtain relief under mandamus. With respect to the UCP tax, the change in policy did not occur until 2003. Because the government did not change the policy sooner, all of the Hospitals' administrative remedies, through no fault of their own, had expired for the years at issue in this case. The Hospitals, in accordance with the holdings in Monmouth and In re: Medicare Reimbursement Litigation, are not required to exercise futile remedies. The exhaustion requirement has therefore been satisfied in this case.

**B.    The Secretary's Arguments Regarding 42 C.F.R. § 405.1885(d) (Fraud Or Similar Fault) Are Wrong As A Matter Of Law.**

The mandatory reopening provision based upon "fraud or similar fault," 42 C.F.R. § 405.1885(d), requires that an intermediary's Notice of Program Reimbursement ("NPR") shall be reopened if "it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision." Id. It is undisputed that, if there is fraud or similar fault, no cost report year is beyond the provision's reach. The provision, on its face, applies to "any determination" and does not contain any time limit on its application as do the other reopening provisions. See id.

The Secretary's arguments against mandamus in this context are based upon the erroneous notions that: (i) the Secretary, CMS, and the intermediary are insulated from their own wrongful conduct under section 1885(d), (ii) an intermediary does not "procure" NPR's, and (iii) fraud or similar fault must be "established" in a prior judicial or administrative proceeding in order to be actionable under mandamus. Each argument is false and will be dealt with in turn.

**1.    The Intermediary is a "Party" for Purposes of 42 C.F.R. § 405.1885(d).**

In setting forth his tortured interpretation of section 1885(d) to this Court, the Secretary fails to mention that he specifically rejected regulatory language, during the promulgation of that regulation, that a reopening under section 1885(d) was limited solely to those instances in which a provider engaged in fraud or similar fault. See 39 Fed. Reg. 34,514 (September 26, 1974).[4] Section 1885(d), as first proposed by the Secretary, limited reopenings to only those circumstances where the provider engaged in fraud or similar fault:

---

[4] A copy of 39 Fed. Reg. 34,514 (September 26, 1974) is attached hereto as Exhibit "A."

> (d)    Notwithstanding the provisions of paragraph (a) of this section, an intermediary determination or hearing decision, a decision of the Board, or a decision of the Secretary shall be reopened and revised at any time <u>if it is established that such determination or decision was procured by fraud or similar fault of the provider</u>.

39 Fed. Reg. 8,166 (March 4, 1974) (emphasis added).[5]

During the notice and comment period, however, the Secretary received several comments criticizing the proposed language, based on the fact "that the language as proposed in § 405.1885(d) implied that fraud, as a basis for reopening a determination or decision, applied only unilaterally to providers." 39 Fed. Reg. 34,514 (September 26, 1974).  As a result, the Secretary modified the proposed language, inserting the words "any party," so as to make the provision apply to all actors and thereby compel a reopening of a determination or decision "any time it is established that said determination or decision was procured by fraud or similar fault of <u>any party</u>."  <u>Id.</u>  (emphasis added).  This expansive language was included in the final regulation which has not changed since 1974:

> (d)    Notwithstanding the provisions of paragraph (a) of this section, an intermediary determination or hearing decision, a decision of the Board, or a decision of the Secretary shall be reopened and revised at any time if <u>it is established that such determination or decision was procured by fraud or similar fault of any party to the determination or decision.</u>

<u>Id.</u> (emphasis added);  <u>see</u> <u>also</u> 42 C.F.R. § 405.1885(d).

Now that section 1885(d) is properly being used to call into question the conduct of one of the Secretary's agents, the Secretary has formulated an ad hoc interpretation of the regulation that attempts to explain away the regulatory history.  Specifically, the Secretary argues, without citing any authority, that the removal of the exclusionary language demonstrates that while

─────────────────

[5] A copy of 39 Fed. Reg. 8,166 (March 4, 1974) is attached hereto as Exhibit "B."

section 1885(d) "might" apply to actions of the intermediary if the intermediary's fraud or similar fault occurred at the administrative hearing stage, it cannot apply to the actions of the intermediary when the fraud or similar fault occurred at the time the intermediary issued a Notice of Program Reimbursement ("NPR").[6]

The Secretary's argument is baseless.  In the final rule, the Secretary did not, as he now argues, state that the intermediary was only a party under section 1885(d) when the fraud or similar fault arose in the context of an administrative hearing but not when the fraud or similar fault arose in the context of an intermediary decision.  Instead, as quoted above, the Secretary stated in the Federal Register that he had modified section 1885(d) "to provide for reopening a determination or decision at any time it is established that said determination or decision was procured by fraud or similar fault of any party."  39 Fed. Reg. 34,514 (September 26, 1974) (emphasis added).  This is exactly what the regulation now provides.  See 42 C.F.R. § 405.1885(d).  The Secretary cannot undo by way of a legal brief what he has done formally by way of promulgation.

The Secretary's present interpretation of section 1885(d) is both inconsistent with the regulation, and contrary to the clear intent of the Secretary at the time the regulation was promulgated in 1974.  The Secretary's interpretation is not entitled to deference.  See Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) ("[W]e must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.") (citation omitted).

---

[6] Def. Opp. at 20.

The removal of the exclusionary language in the final regulation cannot be reasonably interpreted as an attempt to keep that very exclusion. Indeed, no court has found the Secretary's argument on this point to be persuasive. The two federal courts that have considered the language of the final regulation have both found that it applied to intermediaries as well as to providers. Saint Vincent Health Ctr. v. Shalala, 937 F. Supp. 496, 506-07 (W.D. Pa. 1995), aff'd, 96 F.3d 1434 (3d Cir. 1996); Rochester Methodist Hosp. v. Travelers Ins. Co., 728 F.2d 1006, 1018 (8th Cir. 1984). The Secretary dismisses the discussion of the provision in each of these cases as "dicta." Although it is true that subsection (d) was not the basis upon which those cases were ultimately decided, it is also true that the court, in each case, considered the interpretation being urged by the Secretary in the present matter and then summarily rejected it. St. Vincent Health Ctr., 937 F. Supp. At 506; Rochester Methodist Hosp., 728 F.2d at 1018.

The Secretary was a named party in Saint Vincent Health Ctr., and the Secretary's agent was a named party in Rochester. If the Secretary truly disagreed with these court decisions, he has had 10 years to amend section 1885(d) to comport with his current "position." Indeed, the Secretary had a perfect opportunity to do so in 2002 when he promulgated comprehensive amendments to 42 C.F.R. § 1885 in response to the Monmouth decision. See 67 Fed. Reg. 50,096 (August 1, 2002). Instead, the Secretary did nothing and left the interpretation of the provision, as well its express terms, untouched.

The analysis of who is a "party" is simply not that difficult. When one's rights are impacted, and one's name appears in an operative document or in a proceeding, one is a party. Period. Black's Law Dictionary, 6th Ed. (1990). The Secretary, mindful that this is the default definition of the term "party" that pervades every corner of our legal system, realizes that in those instances in which he wishes to make the intermediary a non-party, he must do so with a

specific regulatory exclusion.  These regulatory provisions have been enumerated by both the Secretary and the Hospitals.[7]  The reopening regulation under subsection (d), however, is an instance in which the Secretary has not sought to limit the definition of the word "party," but instead liberally expanded it.  The Secretary's construction of subsection (d) asks the Court to discount the fact, that in all other instances in which the Secretary has sought to exclude the intermediary from the definition of who is a "party," he has done so through specific language.

Even this Court, in analyzing the reopening regulations in In re: Medicare Reimbursement Litigation, implicitly acknowledged that the intermediary is a party under section 1885(d):

> Section 405.1885(a) provides that either a hospital provider or the intermediary may move to reopen an NPR or Board Decision within three years of its issuance.  *See* 42 C.F.R. § 405.1885(a). This window of opportunity closes after these three years unless the movant establishes that such determination "was procured by fraud or similar fault of any party to the determination or decision."  42 C.F.R. § 405.1885(d).

In Re: Medicare Reimbursement Litigation, 309 F. Supp. 2d 89, 96-97 (D.C. Cir. 2001).  When examining the two sentences in the foregoing block quote, it is clear that the collective antecedent of the term "movant" is the "hospital provider or intermediary" as listed in the first sentence.  Thus, under this decision, one could infer that a hospital may seek a reopening under section 1885(d) based upon the fraud or similar fault of the intermediary.  See id.

Lastly, under the Court's holding in In re: Medicare Reimbursement Litigation, the reopening of the Hospital's NPR's in this matter would not be prejudicial to the public's interest in finality with respect to NPR's.  Id. at 99.  The Hospitals in the instant matter, like the plaintiffs

---

[7] Plaintiffs' Memorandum in Support of Opposition to Defendant's Motion to Dismiss at 10; Def. Opp. at 19-20.

in In re: Medicare Reimbursement, "are seeking a writ compelling the Secretary to do what he is mandated under federal law to do." Id. As this Court noted, "[t]here is no public interest in maintaining legally infirm NPR's," and "the Secretary's compliance with applicable law constitutes a separate, compelling public interest." Id. It follows that none of the Hospitals' arguments with respect to the application of section 1885(d) to intermediaries has been refuted.

> **2.** **The Word "Procure" in Section 405.1885(d) Does Not Preclude This Court From Ordering the Secretary to Reopen Plaintiffs' Cost Reports**

The Secretary argues that section 1885(d) (fraud or similar fault) does not apply to intermediaries because they do not "procure" NPR's.[8] The Secretary is incorrect for several reasons. First, intermediaries do in fact "procure" NPR's. Although the term "procure" is not defined by the regulations, it is not a term that is difficult to interpret. According to Black's Law Dictionary, "[p]rocure connotes action and means to cause, acquire, gain, get, obtain, bring about, [or] cause to be done." Black's Law Dictionary, 6th Ed. (1990). In the context of Medicare reimbursement, the hospital cannot be said to be the only entity that "procures" the NPR. Rather, the hospital submits a cost report to the intermediary to which the intermediary, after receiving the report and performing a comprehensive audit, makes numerous adjustments before issuing the NPR. 42 C.F.R. § 413.20(c) et. seq. Thus, the NPR is procured, "brought about" or "caused" by both the hospital and the intermediary.

Second, as explained above, the Secretary indicated during the promulgation process that the section was intended to apply to intermediaries. The comments he received from the regulated public criticized the language of section 1885(d) as it was originally proposed because it "implied that fraud, as a basis for reopening a determination or decision, applied only

---

[8] Def. Opp. at 21.

unilaterally to providers." 39 Fed. Reg. 34,514 (September 26, 1974). To remedy what he obviously felt was a mistake, the Secretary modified the language "to provide for reopening a determination or decision at any time it is established that said determination or decision was procured by fraud or similar fault of any party." Id. The Secretary did not adopt language—as he argues so vehemently to be the case—that would provide for reopening any time it is established that said <u>determination</u> was procured by fraud or similar fault of the <u>provider</u> and at any time it is established that said <u>hearing</u> was procured by fraud or similar fault of <u>any party</u>. The Secretary makes no such distinction in the final rule or the actual regulation, and the Secretary's baseless attempt to do so now should be rejected by this Court.

### 3.    No "Prior Proceeding" Requirement Exists.

The Secretary's argument, that a finding of "fraud or similar fault" must be entered in a prior proceeding in order to be "established,"[9] is false.    First, the express language of section 1885(d) does not require a prior proceeding in order to establish fraud or similar fault. Nor have any of the courts that have reviewed the provision elected to graft upon it the requirement that fraud or similar fault first be "established" in a prior proceeding.[10]  Importantly, the Secretary offers no decision, principle of statutory construction, or even rule of grammar, for that matter, that would support its construction of the provision.

The Secretary's recitation of the code section, in addition to being wrong, is also inconsistent. Putting "the shoe on the other foot," certainly the Secretary does not contend, in those instances in which subsection (d) is invoked against hospitals, that "fraud or similar fault"

---

[9] Def. Opp. at 22.

[10]  <u>Saint Vincent Health Ctr. v. Shalala</u>, 937 F. Supp. 496, 506-07 (W.D. Pa. 1995), <u>aff'd</u>, 96 F.3d 1434 (3d Cir. 1996);   <u>Rochester Methodist Hosp. v. Travelers Ins. Co.</u>, 728 F.2d 1006, 1018 (8th Cir. 1984).

must first be "established" against the hospital, as part of a prior court hearing or proceeding, before either CMS or the intermediary will proceed with a reopening. The notion that a different set of rules should apply when the issue is raised against an intermediary makes no sense.

Finally, the Secretary's position also contains an obvious logical flaw. Requiring a prior proceeding would mean that no tribunal could ever hear a subsection (d) claim on behalf of the intermediary or the hospital. If there were a requirement of a "prior proceeding," as urged by the Secretary, then no tribunal, administrative or judicial, could ever be the first tribunal to hear the case. Some tribunal must be the first to "establish" the similar fault. The Secretary's reading of the rule leaves no room for this and would require that the very first tribunal to hear the case would have to dismiss it, whether it is the Provider Reimbursement Review Board or the United States District Court, because there had been no "prior proceeding." At some point, some tribunal must be the first to hear the case. The Secretary's interpretation of the regulation would make it a nullity. His argument must therefore be rejected on this ground as well.

> **4.    The Hospitals Are Not Required To Demonstrate Reliance Or Any Other Element of Common Law Fraud**

The Secretary continues to argue, incorrectly, that the Hospitals are required to establish the elements of common law fraud, including reliance, in order to establish their claim under section 1885(d).[11] The Secretary's argument is off the mark because it fails to consider that the Hospitals' claim under section 1885(d) (fraud or similar fault) is for "similar fault," and is analogous to equitable fraud, a cause of action that does not require the plaintiff to establish the elements of common law fraud. The Hospitals' position on this issue is set forth at length in pages eight through ten of their moving memorandum, and, for the sake of brevity, will not be

---

[11] Def. Opp. at 22.

repeated here.  Suffice is to say that the Secretary's argument that the Hospitals have failed to meet the elements of common law fraud is of no significance, and should be disregarded by this Court.

### 5.    Heckler v. Ringer is Inapposite

The Secretary's erroneous construction of the law regarding mandamus becomes even more apparent when he argues that plaintiffs' mandamus claim is equivalent to the mandamus theory rejected in Heckler v. Ringer, 466 U.S. 602 (1984).  This is simply untrue.  The plaintiffs in Heckler were all seeking substantive relief, i.e., a declaration by the court that the surgery in that case was covered by Medicare.  Id. at 614.  As discussed above, the Hospitals in the present matter, whose claims are procedural in nature, seek an order compelling the Secretary to reopen the cost reports at issue based upon the fraud or similar fault of the intermediary.  Thus, the exhaustion analysis in Heckler, which focuses entirely on plaintiffs asking the judiciary to sit in judgment of substantive coverage determinations under Medicare, has no place in a discussion of whether the Hospitals in the present matter are entitled to mandamus.  As noted in the Hospitals' initial brief, there is no administrative mechanism by which a Hospital can compel the Secretary to order reopenings under section 1885(d) (fraud or similar fault).  That is for the judiciary alone in the context of mandamus.

Even assuming that an exhaustion analysis should be applied to the Hospitals' claims—which the Plaintiffs do not even for a moment believe to be the case—the holding in Heckler by no means precludes the Hospitals from obtaining mandamus relief.  In its holding regarding three of the plaintiffs, the Court unmistakably decided that there were administrative remedies available to these plaintiffs, and had those remedies been pursued, the plaintiffs would have obtained the desired relief:

> Respondents also argue that there would be a presumption against them as they pursue their administrative appeals because of the very existence of the Secretary's instructions and her formal ruling and thus that exhaustion would not fully vindicate their claims. The history of this litigation as recited to us by respondents belies that conclusion.  Indeed, according to respondents themselves, in every one of the 170 claims filed with ALJs between the time of the Secretary's instructions to her intermediaries and the filing of this lawsuit, before the formal ruling became effective, ALJs allowed recovery for BCBR claims.  . . . In promulgating the formal ruling, the Secretary took pains to exempt from the scope of the ruling individuals in respondents' position who may have had the surgery relying on the favorable ALJ rulings.  Although respondents would clearly prefer an immediate appeal to the District Court rather than the often lengthy administrative review process, exhaustion of administrative remedies is in no sense futile for these respondents, and they, therefore, must adhere to the administrative procedure which Congress has established for adjudicating their Medicare claims.

Id. at 619.  With respect to the other plaintiff, Ringer, the Court held that "[o]ur discussion of the unavailability of mandamus jurisdiction over the claims of the other three respondents is equally applicable . . . ." Id. at 620.

Obviously, the facts of the instant matter differ from those of Heckler.  The Plaintiff Hospitals in the present case have no administrative remedies available to vindicate their right to a mandatory reopening under section 1885(d).  None exist.  This is the fundamental difference between Heckler and Monmouth.  Based upon the actions of the intermediaries, the only remedy available to the hospitals is a judicial remedy in the form of mandamus pursuant to the holdings of Monmouth and Medicare Reimbursement Litigation.

## II. The Record Demonstrates That There Are No Genuine Issues Of Material Fact, And That The Hospitals Are Entitled To Summary Judgment As A Matter Of Law.

Based upon the record in the instant matter it cannot reasonably be disputed that the two intermediaries in this case, Associated and Mutual of Omaha, wrongfully maintained a statewide policy that the UCP Tax was a non-allowable cost that could not be claimed on a hospital's cost

- 14 -

report.  As a result, the Hospitals did not claim the tax as an allowable cost.  Associated, the

Intermediary that processed claims for Tufts and Mount Auburn, has even gone on record with

respect to its policy of non-reimbursement.  In what is an astounding admission, Associated

wrote to CMS on November 19, 2002, stating that it "had never considered the UCP as being

allowable under the Medicare Program."[12]

The Secretary attempts to downplay Associated's admission by arguing that Associated's

policy on the UCP Tax was never communicated to the hospitals.[13]  The Secretary's position,

however, that Associated never "did anything more than hold an opinion" as to the UCP Tax,[14]

is inconsistent with both Associated's 2002 letter as well as the statewide response to the policy

by the hospitals themselves.  In the 2002 letter, Associated never once suggested that the policy

of non-reimbursement was a "don't tell" policy that, for reasons yet to be identified by the

Secretary in his legal argument, was kept secret from the hospitals.  Equally compelling was the

hospital response.  If Associated had truly maintained its position in secrecy, many

Massachusetts hospitals, being none the wiser, would have undoubtedly claimed the UCP Tax as

an allowable cost.  Instead, in a uniform fashion, the Massachusetts hospitals followed the policy

and did not claim the tax.  The Secretary admits this fact.  Vincent Guarino, Director of Audit

and Reimbursement for Associated states in his declaration: "Historically, hospitals in

Massachusetts did not claim the tax assessment used to fund the Massachusetts [UCP] as a

reimbursable expense on their Medicare cost reports."[15]  It is an undisputed fact that Associated

---

[12]  See the November 19, 2002 letter from Robert Baroutas to Thomas Talbott (the "Baroutas Letter") at 1 (Def. Exhibit B at 5).

[13] See Def. Opp. at 8.

[14] Id.

[15] Def. Exhibit B at 1.

had a policy which considered the UCP Tax to be non-allowable.  It is also an undisputed fact that the hospitals followed that policy to their detriment.

Second, the record demonstrates that Mutual of Omaha, the Intermediary that processed Fairview's cost reports, maintained a statewide policy of non-reimbursement with respect to the UCP tax while at the same time reimbursing at least one Massachusetts hospital (not Fairview) for this cost.  Specifically, Fairview's August 2002 reopening request to Mutual of Omaha provides that although Fairview "had been under the impression that [its] gross liability to the . . . UCP was not [an] allowable cost," it was the hospital's "understanding that Mutual of Omaha ha[d] for several years reimbursed other Massachusetts hospitals for this cost."[16]  The Secretary did not deny this fact when the assertion was originally made by the hospital in its reopening request.  Furthermore, the Secretary has not denied this fact in the context of this litigation.  As explained above in the preceding point heading, under Rochester Methodist Hosp. v. Travelers Ins. Co, 728 F.2d 1006, 1008-09 (8th Cir. 1984), this "double standard" is appropriately the subject of relief under 1885(d) (fraud or similar fault).

A non-moving party such as the Secretary must establish more than the "mere existence of a scintilla of evidence" in support if its position.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Here, the Secretary has failed to submit any evidence that would suggest that the policy of non-reimbursement did not exist.  Indeed, such a showing is impossible in light of Associated's 2002 letter admitting the existence of that very policy.  Based on the factual record, the Secretary cannot dispute the existence if a policy of non-reimbursement and expect to be taken seriously.  The Hospitals, by pointing to the absence of evidence proffered by the

---

[16] See the August 28, 2002 letter from Darlene Rodowicz to Diane Haines (the "Rodowicz Letter") at 1 (Def. Exhibit A at 4).

government, are entitled to summary judgment.  Id. at 249-50.  Here, the Secretary has not

submitted any probative evidence to rebut the Hospitals' claims.  In accordance with the holding

in Liberty Lobby, the Hospitals' motion for summary judgment should be granted and the

Secretary's motion should be denied.

III.    **In the Alternative, The Secretary's Motion For Summary Judgment Is Premature
        Because It Was Filed Before The Plaintiff Hospitals Had An Opportunity to Make
        Any Discovery.**

The Hospitals contend that they are entitled to summary judgment as a matter of law, and

that the Secretary's motion for summary judgment should be denied.  Assuming, for the sake of

argument, however, that this Court, based upon the record before it, is inclined to deny summary

judgment in favor of the Hospitals, the Secretary's motion should either be denied outright or, at

the very least, continued.  In the alternative that the Hospitals' motion for summary judgment is

denied, the Hospitals request that this Court grant them a continuance during which the Hospitals

can engage in discovery in order to obtain information necessary to show an issue of material

fact in dispute.  See Fed. R. Civ. P.  56(f).

Ordinarily, "summary judgment motions [are] premature until all discovery has been

completed."  City of Rome v. United States, 450 F. Supp. 378, 384 (D.D.C. 1978).  Under Rule

56(f) of the Federal Rules of Civil Procedure, a court "may deny a motion for summary

judgment or order a continuance to permit discovery if the party opposing the motion adequately

explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."

Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir.

1989); Londrigan v. Federal Bureau of Investigation, 670 F.2d 1164 (D.C. Cir. 1981).  "[T]he

purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature

motion for summary judgment before the non-moving party has had the opportunity to make full

- 17 -

discovery." Dickens v. Whole Foods Market Group, Inc., Civ. A. No. 01-1054, 2003 WL

21486821, at n.5 (D.D.C. March 18, 2003)[17] (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326

(1986). The district court has discretion in determining whether it should permit additional

discovery before the motion for summary judgment is resolved. Stella v. Mineta, 284 F.3d 135,

147 (D.C. Cir. 2002). The nonmoving party has the burden of showing the trial court what facts

he hopes to discover that would create a triable issue and what reason justifies his inability to

produce them on the motion. Exxon Corp. v. FTC, 663 F.2d 120, 126-27 (D.C. Cir. 1980).

      Here, the Secretary has filed a motion for summary judgment before the parties were able

to engage in any discovery. In support of his motion, the Secretary argues that "[t]here is no

evidence that either intermediary ever told any plaintiff hospital that the tax was not an allowable

cost."[18] As explained above, in order to accept the Secretary's position, the Court would have to

believe that despite there being a letter from Associated, which specifically admits that

Associated maintained a policy of non-reimbursement with respect to the UCP Tax, Associated

never communicated that policy to the hospitals between 1985 and 2003. Tellingly, the

certifications submitted on behalf of the respective intermediaries do not deny that the

intermediaries told Massachusetts hospitals that the tax was a non-allowable cost.[19] The

Secretary then argues that he is entitled to summary judgment because the Plaintiffs have failed

to present "any evidence" that the intermediaries conveyed their policy of non-reimbursement to

the hospitals. Meanwhile, it is the Hospitals, not the Secretary, that have submitted competent

evidence in their favor.

      Based upon the evidence that is already contained in the record, the Hospitals should be

---

[17] A copy of this case is attached hereto as Exhibit "C".

[18] Def. Opp. at 8.

[19] See Def. Exhibit A at 1-2 and Def. Exhibit B at 1-3.

afforded the opportunity to at least engage in targeted discovery to collect additional evidence that the intermediaries maintained a policy of non-reimbursement, and that this policy was expressly conveyed to the Hospitals.[20]  This discovery would include depositions of Associated's and Mutual of Omaha's corporate designees, as well as the depositions of Vincent Guarino, the Director of Audit and Reimbursement for Associated's Lynnfield, Massachusetts office[21] and Thomas Bruce, Mutual of Omaha's Regional Audit Manager.[22]  Such limited discovery will allow the Plaintiff Hospitals to put forth triable issues of fact on the issue of the intermediaries' reimbursement policy, as well as how, and to what extent, that policy was conveyed to the hospitals.[23]

The Secretary should not be permitted to file a summary judgment arguing that the Hospitals have not come forward with sufficient evidence to defeat his motion for summary judgment when his intermediaries are the entities in possession of the necessary evidence.  If, therefore, this Court is inclined to deny the Hospitals' motion for summary judgment, the Hospitals, at the very least, should be granted a continuance in order to both permit the discovery set forth above to take place, and to provide the Hospitals with an opportunity to submit additional material facts to defeat the Secretary's motion.

---

[20] See Rule 56(f) Declaration of Steven Roosa, Esq. ("Roosa Dec.") at ¶ 7.

[21] See Def. Exhibit B at 1.

[22] See Def. Exhibit A at 1.

[23] See the Roosa Dec. at ¶ 9.

## IV.    The Secretary's Statute of Limitations Argument Fails.

The Secretary mentions in passing that the Hospitals' case has been brought beyond the statute of limitations.[24]  That argument should be rejected because the statute of limitations only begins to run once a plaintiff's claim has accrued.  A claim only accrues for purposes of the statute of limitations when a party is put on notice of the facts sufficient to bring suit.  Williams v. Mordkofsky, 901 F.2d 158, 162 (D.C. Cir. 1990).

In the present matter, the earliest point in time that the Hospitals were put on notice of a potential claim of "fraud or similar fault" under 42 C.F.R. § 405.1885(d) was when the intermediaries put the Hospitals on notice of their change in policy regarding reimbursement for the UCP Tax.  The earliest date that Fairview was put on notice of this claim was October 1, 2002 when Mutual of Omaha granted the hospital's reopening requests for 1997, 1998 and 1999.[25]  The earliest date that Tufts and Mount Auburn were put on notice was March 18, 2003, the date that Associated reversed its reimbursement policy.[26]  Thus, the Hospitals have filed suit well within the six year statute of limitations.[27]

## CONCLUSION

Based on all of the foregoing, the Hospitals' motion for summary judgment should be granted and the Secretary's motion to dismiss, or in the alternative, for summary judgment, should be denied.

---

[24] Def. Mem. 14, Def. Opp. at 18, n.7.

[25] See the letters from Jeffrey M. Grabowski to Darlene Rodowitz (the "Grabowski Letters") at 1 (Def. Exhibit A at 48-50).

[26] Ex. A attached to Plaintiff's Amended Complaint.

[27] The statute cannot begin to run before the date that the reimbursement policy changed.  It does not run from the date of the NPR's.  See In Re: Medicare Reimbursement, 309 F. Supp.2d at 99.  Beyond that, the reopening regulations themselves govern which fiscal years can be reopened (subsection (d) allows for reopening at any time).  The Secretary's statute of limitations argument, therefore, should be rejected.

Respectfully submitted,

        /s/ Jacqueline E. Bennett

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for the Plaintiffs

Of Counsel:

Murray J. Klein
DC Bar #492415
**REED SMITH LLP**
Princeton Forestall Village
136 Main Street, Suite 250
Princeton, NJ  08540
(609) 987-0050

Date: November 21, 2005