Not Reported in F.Supp.2d                                                                                         Page 1
Not Reported in F.Supp.2d, 2003 WL 21486821 (D.D.C.), 91 Fair Empl.Prac.Cas. (BNA) 1691
**(Cite as: 2003 WL 21486821 (D.D.C.))**

C

**Motions, Pleadings and Filings**

United States District Court,
District of Columbia.
Tracy DICKENS, Plaintiff,
v.
WHOLE FOODS MARKET GROUP, INC d/b/a Fresh
Fields/Whole Foods Market, Defendant.
**No. Civ.A. 01-1054(RMC).**

Filed May 15, 2001.
March 18, 2003.

William Sheldon Stancil, Washington, DC, for Tracy Dickens, plaintiff.

Thomas P. Dowd, Littler Mendelson, P.C., Washington, DC, for Fresh Fields Whole Food Market, defendant.

*MEMORANDUM OPINION*

COLLYER, J.

***1** Tracy Dickens has sued his former employer, Whole Foods Market Group, Inc., d/b/a Fresh Fields/Whole Foods Market ("Fresh Fields"), for defamation in connection with an investigation into allegations that Mr. Dickens had engaged in sexual harassment. [FN1] Fresh Fields moves for summary judgment, asserting a "common interest" privilege for the communications about the investigation and its results that are at issue. Because the alleged communications were shared only with Mr. Dickens and a limited number of others who shared a common interest in the enforcement of Fresh Fields' sexual harassment policy, and because Mr. Dickens has failed to produce any evidence that could support a jury finding of malice or excessive publication, the motion for summary judgment is granted.

> FN1. Mr. Dickens has abandoned a wrongful termination claim. Plaintiff's Memorandum in Support of Opposition to Motion for Summary Judgment at 2 ("Opp.").

Background

Mr. Dickens worked for approximately five years, from 1996 to March 28, 2001, at Defendant's Georgetown Fresh Fields Store. [FN2] On or about March 21, 2001, Mehret Ghebrezgher complained to the Customer Service Team Leader that Mr. Dickens had threatened her life and was harassing her. Two other store employees also submitted written statements indicating that Mr. Dickens had made a series of inappropriate remarks to them. [FN3] These complaints were reported to management, and the company's Human Resources Coordinator, David Gearhart, decided to conduct a formal investigation.

> FN2. Except where indicated, the facts come from Defendant's Motion for Summary Judgment ("Motion"), which is not challenged in these respects by Mr. Dickens.

> FN3. Given the nature of this action--for defamation in publicizing the results of the investigation and not the underlying allegations--the Court dispenses with the details of the alleged inappropriate conduct.

Mr. Dickens was notified on March 22, 2001, that certain co-workers had made complaints about his behavior and that he was suspended pending an investigation.

Mr. Gearhart conducted his investigation on Friday, March 23 and Monday, March 26, 2001. First he talked with Ms. Ghebrezgher and other complainants. He also talked to persons they identified as having some information. On March 23, he interviewed Mr. Dickens. Mr. Gearhart told Mr. Dickens that Mses. Ghebrezgher, Andra Sheppard and Therese Brannon-Colucci were the employees who had complained about him. Mr. Dickens denied all wrong-doing. He said that he and Ms. Ghebrezgher had previously had a personal relationship but that it had ended and he no longer wanted anything to do with her. Mr. Gearhart completed his investigation by speaking with persons identified by Mr. Dickens who knew something of the matter. In all, out of an employment complement of approximately 200, Mr. Gearhart interviewed nine employees from the Fresh Fields store. Mr. Gearhart instructed Mr. Dickens not to discuss the investigation with other employees and Mr. Dickens assumed that the same instruction was given to everyone.

The alleged defamation occurred thereafter, when Mr.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 21486821 (D.D.C.), 91 Fair Empl.Prac.Cas. (BNA) 1691
**(Cite as: 2003 WL 21486821 (D.D.C.))**

Gearhart notified Mr. Dickens and others that Mr. Dickens was terminated as a result of the investigation. Specifically, Mr. Gearhart reported to the company's Regional President, its Assistant Human Resources Director, its Georgetown Assistant Store Team Leader, and to Ms. Ghebrezgher that he had terminated Mr. Dickens. [FN4]

> FN4. Mr. Dickens alleges Mr. Gearhart's actions give rise to a cause of action for defamation because Mr. Gearhart "falsely told Plaintiff he (Plaintiff) was discharged for sexual harassment" and other employees learned of this false statement. For purposes of a motion for summary judgment, the Court will construe the facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Any disputed facts must be material, meaning facts that might affect the outcome of the claim under governing law. *Id.* at 248. While "[t]he Court accepts well-pleaded facts as true and construes the complaint liberally granting the petitioner the benefit of any reasonable inferences that can be derived from the facts alleged ... [i]t is not required, however, to accept inferences or legal conclusions that are cast as factual allegations." *United States v. BCCI Holdings (Lux.) S.A.,* 980 F.Supp. 21, 26 (D.D.C.1997) (citations omitted). Therefore, the Court assumes, without deciding, that the alleged statement was defamatory.

Mr. Dickens assumes everyone at the Georgetown Fresh Fields Market knows why he was fired because there "ain't no secrets in that store." Motion at 4. None of the employees has told Mr. Dickens that they know he was terminated because of employee complaints about sexual harassment. *Id.* Nonetheless, the Opposition states, without reference to any part of the record,

> **\*2** Said employee Gerhart [sic] falsely told Plaintiff he (Plaintiff) was discharged for sexual harassment. Said employee Gerhart [sic] had authority to make the statement he made to Plaintiff. Other employees knew of or learned of defendant's false statement concerning Plaintiff from defendant and understood it to be defamatory of Plaintiff. Defendant knew or should have known its statement concerning Plaintiff was false, made without reasonable grounds for belief in its truth, and without reasonably adequate investigation.

Opp. at 2. Mr. Dickens argues that Fresh Fields knew that he and Ms. Ghebrezgher were " 'boyfriend and girlfriend," ' Opp. at 1. Therefore, he asserts, without citation, the investigation should never have taken place given his relationship with Ms. Ghebrezgher.

Analysis

A privilege has been recognized for a statement, otherwise defamatory, made by a person who shares a common interest with the person to whom the statement is made. *Moss v. Stockard,* 580 A.2d 1011, 1024 (D.C.1990). This 'common interest' privilege is an absolute defense as to an action for defamation if the statement was made without malice or excessive publication. *Columbia First Bank v. Ferguson,* 665 A.2d 650, 655 (D.C.1995); *Moss,* 580 A.2d at 1024. Where the facts relating to publication are undisputed, the question of whether or not a statement is privileged is one of law for the court. *Roland v. d'Arazien,* 685 F.2d 653, 655 (D.C.Cir.1982); *Moss,* 580 A.2d at 1024. *Alade v. Borg-Warner Protective Services,* 28 F.Supp.2d 655, 656 (D.D.C.1998). Mr. Dickens asserts in brief that the facts relating to the publication of the alleged defamation are controverted ("[o]ther employees knew of or learned of defendant's false statement ....") but points to nothing in the record to support an inference that Fresh Fields is responsible for publication beyond the persons identified by Mr. Gearhart. In fact, Mr. Dickens told at least one other employee about the allegations against him (Motion at 4, citing deposition transcript at 63-64), and he has acknowledged that he just assumes everyone knows. By failing to identify any record evidence supporting his assertions, Mr. Dickens has simply reiterated the allegations of his pleadings. *Compare* Complaint ¶¶ 5-10 *to* Opposition at 2-3. This is legally insufficient in response to a motion for summary judgment and does not create a genuine issue of material fact. [FN5] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1996) ("Rule 56(e) ... requires the non-moving party to go beyond the pleadings.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 21486821 (D.D.C.), 91 Fair Empl.Prac.Cas. (BNA) 1691
**(Cite as: 2003 WL 21486821 (D.D.C.))**

FN5. In his Opposition, Mr. Dickens requested relief pursuant to Rule 56(f) and attached an affidavit stating "that due to my termination from employment by defendant, I do not have ready access to witnesses who can support my case or otherwise present by affidavit facts essential to my opposition." Affidavit of Tracy Dickens. To be entitled to relief under 56(f), Mr. Dickens had to indicate what facts he intended to discover and how those facts would create a triable issue sufficient to defeat a motion for summary judgment, which he did not do. *See* Carpenter v. Federal Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C.Cir.1999). In addition, Mr. Dickens's statement that he "do[es] not have ready access to witnesses" is an insufficient reason for not producing evidence beyond the pleadings in support of his opposition. Termination from his prior job in no way foreclosed Mr. Dickens from locating and contacting potential witnesses who worked at Fresh Fields. Moreover, the purpose of Rule 56(f) is to prevent "railroading" the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery. *See* Celotex, 477 U.S. at 326. This motion for summary judgment is not premature, as it was filed after discovery closed on March 20, 2002, before which time Mr. Dickens had the full opportunity to conduct any discovery he desired. For these reasons, the Court declines to grant Mr. Dickens relief under Fed. R. Civ. P. 56(f).

Therefore, the question of law before the Court is whether Fresh Fields enjoyed a common interest privilege to disclose the results of the investigation to the alleged harasser, three managers and the complainant and, if so, whether it has lost the privilege because it acted with malice or it excessively published the defamatory statement.

*Common interest privilege*
**\*3** Fresh Fields had an affirmative duty to investigate the allegations of sexual harassment by Mr. Dickens, to evaluate the information it received, and to act to correct any hostile work environment. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Having concluded that inappropriate conduct occurred, Fresh Fields also had a duty to communicate with the complainant so that she would know what corrective steps had been taken. Burlington Indus., 524 U.S. at 765; Faragher, 524 U.S. at 807-08. These mandatory communications inevitably entail sharing certain aspects of an investigation, often including the name(s) of those accused of inappropriate conduct, some reference to the type of conduct under investigation and, if a determination is made that inappropriate conduct occurred, what actions will be taken to avoid future incidents.

These types of communications are normally covered by the "common interest" privilege. A qualified privilege attaches to an otherwise defamatory statement if the statement is: "(1) made in good faith; (2) on a subject in which the party communicating it has an interest; (3) to a person with a corresponding interesting in hearing it." Columbia First Bank v. Ferguson, 665 A.2d 650, 655 (D.C.1995) (citations omitted); *see also Alade,* 28 F.Supp. at 656-67.

Mr. Dickens might overcome this privilege by showing either actual malice in the disclosures to other employees or excessive publication of a defamatory statement. "When a statement is privileged, the declarant will be presumed to have been motivated by pure motives in its publication ... and the plaintiff therefore has the burden of proving that the declarant acted with malice." Columbia First Bank, 665 A.2d. at 656 (internal citation omitted). Malice amounts to bad faith, or "the doing of an act without just cause or excuse, with such a conscious indifference or reckless disregard as to its results or effects upon the rights or feelings of others as to constitute ill will." Mosrie v. Trussell, 467 A.2d 475, 477 (D.C.1983). Malice can be shown by demonstrating that Fresh Fields did not have reasonable grounds to believe that the results of its investigation were true. Alade, 28 F.Supp.2d at 657.

In brief, Mr. Dickens argues vigorously that Fresh Fields "was determined to fire plaintiff even if it had to trump up false charges (as it, in fact, did)." Opp. at 2. He asserts that Fresh Fields published a defamatory statement "maliciously

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 4
Not Reported in F.Supp.2d, 2003 WL 21486821 (D.D.C.), 91 Fair Empl.Prac.Cas. (BNA) 1691
**(Cite as: 2003 WL 21486821 (D.D.C.))**

with knowledge of its falsity or with reckless disregard for the truth." *Id.* While he argues the right legal standard, Mr. Dickens provides no factual support for his argument that Fresh Fields acted with malice. To the contrary, he has admitted that Mr. Gearhart "could have believed he had proof" to support the conclusions of his investigation. Motion at 8 (citing Tr. 57 of Dickens's deposition). Therefore, Mr. Dickens has not met his burden of proving that Fresh Fields acted with malice.

**\*4** Mr. Dickens does not argue excessive publication and the Court would be hard pressed to find excessive publication given the limited number of persons to whom Mr. Gearhart spoke.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be entered if the pleadings ... and admissions on file ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Arguments of counsel do not substitute for admissible evidence that establishes a genuine issue of material fact. *Celotex Corp. v. Catreet,* 417 U.S. at 324. Mr. Dickens has failed to identify any issue of material fact that is disputed or that would affect a jury's conclusions. In all material respects, he has essentially agreed with the facts portrayed by Fresh Fields. [FN6]

> FN6. This "agreement" is demonstrated in two ways. First, Fresh Fields quotes liberally from Mr. Dickens's own deposition transcript. Second, Mr. Dickens's Opposition did not contest any of the factual statements set forth by Fresh Fields in support of its Motion.

*Conclusion*

Fresh Fields and Mr. Gearhart acted in good faith in investigating allegations of sexual harassment made by one of its employees, as it is required by law to do. Mr. Gearhart clearly had an interest in the communications at issue, as he was charged with investigating the allegations of harassment and inappropriate conduct. His communications regarding the results of the investigation were made only to those parties who had a common interest in the investigation-- namely Mr. Dickens, the complaining employee and Fresh Fields management. Since the allegedly defamatory communication was between only Mr. Gearhart and others who held a common interest, there is no evidentiary basis to find any malice in that communication, and there was no excessive publication, the Court will grant Defendant's motion for summary judgment.

A separate Order will accompany this Memorandum Opinion.

Not Reported in F.Supp.2d, 2003 WL 21486821 (D.D.C.), 91 Fair Empl.Prac.Cas. (BNA) 1691

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV01054 (Docket) (May. 15, 2001)

END OF DOCUMENT